Adam R. Alper (SBN 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
michael.devries@kirkland.com
Telephone: (213) 680-8400

Leslie M. Schmidt (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

*Attorneys for Plaintiffs Oracle America,
Inc., Oracle International Corporation,
and Textura Corporation*

[Additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORACLE AMERICA, INC, ORACLE INTERNATIONAL CORPORATION, and TEXTURA CORPORATION,<br><br>       Plaintiffs,<br><br>    v.<br><br>PROCORE TECHNOLOGIES, INC., PROCORE PAYMENT SERVICES, INC., AND MARK MARIANO,<br><br>       Defendants. | CASE NO. 3:24-cv-7457<br><br>**COMPLAINT FOR TRADE SECRET MISAPPROPRIATION AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Oracle America Inc., Oracle International Corporation, and Textura Corporation (unless specified otherwise, together "Oracle" or "Plaintiffs") allege against Defendants Procore Technologies, Inc., Procore Payment Services, Inc. (together, "Procore") and Mark Mariano ("Mariano") (Mariano and Procore together "Defendants") as follows:

## INTRODUCTION

1.      This case involves a theft of thousands of trade secrets that encompass Oracle's years of hard work and many millions of dollars in investment in industry-leading innovations for payment and compliance management solutions for construction companies, and in pioneering integrations with enterprise resource planning ("ERP") applications used by those companies. After his employment with Oracle ended, Mariano (a former senior employee at Oracle) absconded with thousands of Oracle's trade secret documents on two personal cloud accounts—his Google Drive, and his iCloud—and on two Oracle computers that he retained after leaving Oracle, to join a competitor in the space: Procore. These trade secret documents comprise confidential details regarding nearly every aspect of Oracle's technology and business for this industry, including computer source code, implementation plans, testing data, customer information, business opportunities, research and development plans, and competitive analysis—including detailed analysis of Procore's lack of suitable payment management solutions. These files are a roadmap to Oracle's success in the space.

2.      This theft was for use at, and the benefit of, Procore. After Mariano joined Procore, he transferred Oracle's trade secret documents to his Procore computer for use in connection with his work at Procore, which relates directly to the trade secret documents. With this information in hand, Procore (which was previously struggling in its own technology development related to the trade secrets) has been able to transform its business quickly to compete directly with Oracle in connection with the subject matter of the trade secret materials. In fact, shortly after Mariano joined Procore with Oracle's trade secret documents in hand, Procore finally announced the launch of its own competing platform to take on Oracle's leading technology, and then quickly released integrations like those that Oracle had previously released while Mariano was working on those technologies at Oracle.

3.      Oracle's leadership in this sophisticated technical field did not come for cheap or without hard work. Originally beginning as a startup in 1977 in Santa Clara, California—and

becoming the world's largest database management company by 1987—Oracle began to invest considerable expertise and creativity in developing cutting-edge technologies for a comprehensive billing, payment, lien waiver, and compliance management solution for construction projects, including ERP integrations. In addition to its own, extensive internal development activities, Oracle has engaged in several large acquisitions to grow its technology. In 2008, Oracle purchased Primavera Software, Inc., and it acquired Textura in 2016 for approximately $663 million. Textura, founded in 2004, is a leading provider of construction invoice and payment management cloud services, including its Textura Payment Management ("TPM") solution. With these acquisitions, Oracle became a leading provider in cloud-based solutions for project, cost, time, and risk management. Oracle's TPM is hugely successful in the industry, now having been used to manage subcontractor payments on construction projects valuing $1 trillion, including numerous projects for many clients in this District. Its substantial investments in research, development, and other forms of innovation require protection, and Oracle relies on its trade secrets to guard the intellectual property created by the ingenuity and industry of its employees.

4.     Mariano (who worked at Textura, and then Oracle after Textura was acquired in 2016) was a senior Oracle employee who led the functional team working on ERP integrations with Oracle's TPM. He managed the integration of SAP, Viewpoint Vista, Sage 300 CRE, Oracle E-Business Suite, JD Edwards EnterpriseOne, Yardi Voyager, and CMIC with TPM—several of which Mariano would later work on integrating for Procore. His duties also included supporting sales and implementation teams as a subject matter expert for integrating a client's ERP with TPM, managing partner relationships, and managing a team of technical consultants assigned to handle integration support tasks. As the functional lead, he was privy to proprietary Oracle source code, technical documents and design ideas, was exposed to Oracle's confidential product planning, and was part of Oracle's extensive research efforts for solutions. And Mariano worked closely with Oracle's customers on their implementations and integrations, using Oracle's proprietary technology and innovations during that process. And while that knowledge alone provides unmeasurable value to Procore, Mariano did not leave with only his knowledge, but possessed thousands of Oracle trade secret files after leaving Oracle.

5.    Like Oracle, Procore offers a payment management solution and ERP integrations, but Procore's story is not one of innovation. Procore was unable to release a full payment management solution (including a full suite of integrations) on its own, or rightly acquire the technology it needed. Recognizing this problem, Procore hired Mariano to work on developing its platform (including integrations) using Oracle's trade secret documents. Specifically, Mariano's last day at Oracle was October 29, 2021, at some point after which he joined Procore, taking a position as Procore's Director of Integration Product Services. In this position, Mariano was tasked with building technologies that would directly compete with the same technologies he worked on while at Oracle, and was given responsibilities nearly identical to those at Oracle, including with respect to the development related to the integration of Procore's yet-to-be-released construction payment software with various ERPs. Indeed, Mariano's work at Procore is directly related to his work at Oracle, where (as at Oracle) he has similarly worked on Procore's ERP integrations with CMIC, Sage 300, Yardi, Vista, among others—which are implementations that Procore announced and released after it hired Mariano.

6.    Defendants knew that the Oracle materials retained by Mariano and used at Procore without Oracle's permission were confidential and replete with Oracle's trade secrets. Since July 2023, Oracle has attempted to resolve this matter through discussions with Procore and Mariano, and their respective counsel. But Oracle has since learned that both before and after those discussions commenced, Defendants concealed key aspects of their wrongful conduct from Oracle, to ensure that the theft would not be discovered until years later. Despite Oracle's extensive efforts to ensure that its trade secret information is not improperly accessed, acquired, or misused, including numerous contractual and technological measures Oracle deploys to protect its trade secret information as set forth herein, Defendants took steps to prevent discovery of their theft.

7.    For example, Mariano retained two Oracle-provided (and owned) laptops containing numerous Oracle files well into his employment with Procore. When Oracle discovered in 2022 that these laptops had not been returned, Mariano initially told Oracle that he no longer had the laptops—despite having powered on and factory reset his Oracle-provided MacBook just months earlier.

8.    Moreover, after Oracle approached Procore on these issues, Defendants refused to provide fulsome information concerning the full scope of access and use of Oracle materials at

Procore, and made incorrect and/or at best highly misleading representations concerning Procore's acquisition and use of Oracle trade secrets, including by denying in August 2023 that Oracle files had been found on the Procore laptop used by Mariano during Procore's investigation of that device. It was only when pressed, following additional forensic inspection by Oracle, that Procore recently (less than a month ago) finally revealed that in fact Oracle files had been discovered by Procore on the Procore laptop used by Mariano, over a year earlier. Yet even then, Procore refused to allow Oracle to forensically inspect that laptop, or to access other highly relevant forensic information requested by Oracle—an unreasonable refusal given Oracle's stated willingness to enter into an industry-standard forensic inspection protocol that would fully protect any legitimate interests raised by Procore, and which Mariano's counsel had already agreed to.

9.      Procore's brazen misappropriation and theft of trade secrets, combined with its lack of candor and refusal to provide critical information requested by Oracle as part of Oracle's effort to resolve this matter short of litigation, left Oracle no viable choice but to file this lawsuit. Procore did not attempt to compete fairly with Oracle; rather than develop its own technology, Procore took a short-cut by using Oracle's trade secret innovations. Such conduct risks legitimate investments in technology and harms innovation. Simply put, Procore's conduct must be stopped.

## THE PARTIES

10.      Plaintiff Oracle America, Inc. ("Oracle America") is a Delaware Corporation with a principal place of business located at 500 Oracle Parkway, Redwood Shores, California. Oracle America develops and licenses certain intellectual property, including related to Oracle's Textura Payment Management and ERP integrations for customers since the acquisition of Textura in 2016, and provides related support, consulting, and services related to these offering to its customers, including numerous customers relating to a multitude of ongoing construction projects in this District.

11.      Plaintiff Oracle International Corporation ("Oracle International") is a California corporation with a principal place of business located at 500 Oracle Parkway, Redwood Shores, California. Oracle International owns and holds all interest, right, and title to the intellectual property developed by Oracle America and the right to bring claims regarding that intellectual property, including trade secrets at issue in this lawsuit.

12.     Plaintiff Textura Corporation ("Textura") is a Delaware Corporation with a principal place of business located at 500 Oracle Parkway, Redwood Shores, California. Textura owns and licenses certain intellectual property (including trade secrets) related to the Textura Payment Management and ERP integrations developed prior to its acquisition by Oracle in 2016.

13.     Defendant Procore Technologies, Inc. is a Delaware corporation with a principal place of business located at 6309 Carpinteria Ave, Carpinteria, California. Procore Technologies conducts substantial business operations and has customer and partner relationships within the Northern District of California, as well as around the United States, to whom it offers and supplies the offerings at issue in this lawsuit.

14.     Defendant Procore Payment Services, Inc. is a Delaware corporation with a principal place of business located at 6309 Carpinteria Ave, Carpinteria, California. Procore Payment Services alone and/or in conjunction with Procore Technologies, Inc. conducts substantial business operations and has customer and partner relationships within the Northern District of California, as well as around the United States, to whom it offers and supplies the offerings at issue in this lawsuit.

15.     Defendant Mariano is an adult individual who, upon information and belief, resides in Grayslake, Illinois.

## JURISDICTION

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises out of the violation of a federal law, the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.*

17.     This Court also has supplemental jurisdiction over any asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claim derive from a common nucleus of operative facts.

18.     This Court has personal jurisdiction over Defendants. This Court has general personal jurisdiction over Procore including because Procore's principal place of business is in Carpinteria, California. This Court also has personal jurisdiction over Procore based on Procore's purposeful availment of and connections with California, including those that relate directly to and form the basis of trade secret misappropriation claims described in this Complaint, including involvement by

Mariano (a Procore employee who submitted to jurisdiction in this District), offering and supplying the offerings at issue in this lawsuit in this District, and further because the trade secrets at issue in this case are managed from Oracle America's headquarters in Redwood City, California, and are owned by Oracle International (and for trade secrets created before the 2016 acquisition by Oracle, Textura), which are also headquartered in Redwood City, and which entities, based in this District, are harmed by the misappropriation addressed in this Complaint. Procore further has related connections with the Northern District of California including by directing activities here, such as having partnerships with San Francisco entities, including the Bay Area Headquarters Authority. Procore has conducted and does conduct business within this judicial district.

19.     Procore, directly or through intermediaries, makes, distributes, offers for sale or license, sells or licenses, or advertises its products and services in the United States, the State of California, and the Northern District of California.

20.     This Court also has personal jurisdiction over Mariano. Mariano's Proprietary Information Agreement with Oracle expressly provides that Mariano submits to and consents to the jurisdiction of this Court. *See* Ex. 1 § 14.

21.     Based on Defendants' conduct, it was wholly foreseeable that they would be bound and subject to a suit in the Northern District of California.

## **VENUE**

22.     Venue is proper in this Court under the venue selection clause of Mariano's Proprietary Information Agreement as well as 28 U.S.C. § 1391(b)(2) and/or (b)(3).

23.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action is situated in this District, and also because a substantial part of the events or omissions giving rise to the claim occurred in this District. Specifically, Oracle America (by whom Mariano was previously employed), Oracle International, and Textura Corporation are headquartered in this District. The trade secrets at issue in this case are managed from Oracle America's headquarters in Redwood City, California, and are owned by Oracle International (and for trade secrets created before the 2016 acquisition by Oracle, Textura), which are also headquartered in Redwood City; those entities, based in this District, are harmed by the misappropriation addressed in

this Complaint. The actual economic, competitive, and other harm to Oracle occurred and was felt, and continues to occur and be felt, in this District, by reason of Procore's and Mariano's conduct. Specifically, Defendants have misappropriated Oracle trade secrets that are owned in, managed in, and accessible through Oracle's computer facilities in this District, and used those trade secrets at Procore in connection with developing technologies that Procore sells, licenses, or advertises to customers and through partners in this District.

24.     In addition, Mariano's Proprietary Information Agreement with Oracle expressly references confidential, proprietary, and trade secret information of Oracle America Inc. (headquartered in this District), and expressly provides that Mariano consents to venue in the Northern District of California. Under the terms of the Proprietary Information Agreement, Mariano agreed with the following provision: "I agree that any legal action or proceeding involving Oracle which is in any way connected with this agreement may be instituted in federal court in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California. I agree to submit to the jurisdiction of, and agree that venue is proper in, the aforesaid courts in any such legal action or proceeding." Ex. 1 § 14. Additionally, as described herein, Mariano improperly retained, disclosed, and used Oracle's confidential, proprietary, and trade secret information in breach of his Proprietary Information Agreement in connection with his employment by Procore, in furtherance of his Procore job responsibilities and for Procore's benefit. Similarly, Procore improperly acquired and used Oracle's confidential, proprietary, and trade secret information subject to the Proprietary Information Agreement.

25.     To the extent any Defendant successfully argues that 28 U.S.C. § 1391(b)(2) does not apply in this District, venue is also proper under 28 U.S.C. § 1391(b)(3), including because Defendants are subject to personal jurisdiction in the Northern District of California as set forth above, and venue is proper in this District at least pursuant to Mariano's Proprietary Information Agreement with Oracle.

26.     Based on Defendants' conduct, it was wholly foreseeable that they would be subject to a suit in the Northern District of California.

**DIVISIONAL ASSIGNMENT**

27.     This is an action for trade secret misappropriation, where a substantial part of the events or omissions which give rise to the claims have taken place in and where a substantial part of the property that is subject to the action is situated in San Mateo County, and Oracle and Mariano's Proprietary Information Agreement expressly states that claims may be instituted in San Francisco pursuant to Civil L.R. 3-2(c)–(e). *See* Ex. 1 § 14. Thus, pursuant to Civil L.R. 3-2, this action should be assigned to the San Francisco Division.

**ADDITIONAL FACTUAL ALLEGATIONS**

**A.     Oracle's Trade Secret Technologies Are Critical to Its Business and Success**

28.     Oracle provides solutions that address enterprise information technology (IT) needs for companies, and these reliable and high-quality solutions are the result of significant time and resources. Oracle invests heavily to support its engineering and business teams' creation of industry leading technologies and related products and services, and it relies on its trade secrets to guard the intellectual property created by its investment in the ingenuity and industry of its employees. In fact, since 2012, Oracle has invested over $80 billion in research and development, including on technologies relating to its construction management product offerings. One area of significant investment for Oracle has been in construction management technologies.

29.     As a result of these substantial investments and years of innovation, significant aspects of Oracle's offerings are highly confidential and maintained in strict confidence as trade secrets to protect the substantial investment made to develop them. This confidential information derives considerable value from not being publicly known outside of Oracle, because of the competitive advantages, among other things, that the trade secrets confer on Oracle from both a technological and business perspective.

30.     Oracle has long invested in being a leader in the construction management product space. In late 2008, Oracle acquired Primavera Software, Inc. "a leading provider of Project Portfolio Management (PPM) solutions," to accelerate Oracle's momentum in delivering mission-critical operational applications. Ex. 2. Primavera's PPM software helped companies propose, prioritize, and select project investments and plan, manage, and control complex projects and project portfolios.

Oracle's addition of Primavera to its applications and software infrastructure allowed Oracle to provide the first comprehensive project portfolio management solution to help companies allocate resources, reduce costs, meet delivery dates, and ultimately make better business decisions all by using real-time data. Oracle Enterprise PPM is tailored to project-intensive industries, including engineering and construction, aerospace and defense, utilities, oil and gas, manufacturing, and professional services. Since Oracle's acquisition of Primavera, Oracle has continued to invest in its construction management products both with internal R&D investment as well as acquisitions, including Aconex in 2017 for approximately $1.2 billion. *See* Ex. 2; Ex. 3.

31.     Another of Oracle's investments is in its Textura Payment Management ("TPM") offering. In 2016, Oracle acquired Textura, a leading provider of construction invoice and payment management cloud services, for approximately $663 million. *See* Ex. 4.  With this acquisition, Oracle integrated Textura's leading construction contracts and payment management cloud services into Oracle's engineering and construction industry cloud platform. And since 2016, Oracle has continued to invest both time and resources to develop new integrations and other offerings for its TPM platform.

32.     Oracle TPM is a cutting-edge, industry-leading cloud-based platform that automates and streamlines the construction payment process, which enables cost and time savings and reduced errors and risk on payment applications, compliance, lien waiver management, and payments. Oracle's TPM standardizes and provides secure payment management workflows with respect to:

- Payment: "Expedite[s] payments using ACH while reducing costs and administrative burden" and "[r]educe[s] payment status inquiries with system visibility and automated notifications."

- Invoicing: Automatically generates invoice documents that are "linked to each contract's schedule of values" and "[e]ach document is signed electronically using an integration with DocuSign."

- Compliance: "Collect electronically signed invoices, lien waivers, sworn statements, and unconditional lien waivers" and "[c]onfigure additional compliance documents and compliance requirements to ensure all project requirements are met."

- Approvals: "Accelerate invoice review and the generation of payment applications with highly configurable and secure approval workflows and automated notifications."

- Owner billing: Eliminates "dual data entry" by rolling up "subcontractor invoices into the general contractor's owner billing."

33.    Oracle's TPM also provides effective compliance and lien waiver management, timely electronic payments, collaboration in a shared environment, and comprehensive reporting and analytics.

34.    Oracle's TPM solution also provides for seamless integration with customer ERP (enterprise resource planning) software, which helps businesses manage their core processes and data. Oracle advertises that its solution "integrates with most major accounting systems to ensure a seamless flow of data across your key financial systems to optimize payment processes. The integration automates data exchange and eliminates the manual import/export of information between systems for contracts, change orders, compliance status, invoices, payments, and draw documents."

35.    A diagram illustrating how Oracle TPM conceptually can interface with a customer's ERP System (such as an accounting system) is shown below:



Figure 2: Oracle Textura Payment Management Connects with your ERP System.

36.    Oracle generates and owns trade secrets related to its TPM technologies, including the proprietary integrations between TPM and customer ERP Systems that have been developed over the course of years by Oracle engineers. Proprietary information that Oracle considers trade secrets regarding TPM and the integration (interface) with a customer's ERP System includes, for example, according to Oracle's Employee Proprietary Information Agreement ("PIA"):

(a)    all software, hardware and other technology developed or licensed by or for Oracle or licensed to Oracle by a third party, and any documentation, research, development, technical or engineering information, know-how, tools, data, designs, diagrams, drawings, schematics, sketches or other visual representations, passwords and other computer information, plans, projects,

manuals, formulas, algorithms, subroutines, and product specifications relating to such software, hardware or other technology; the term "software" as used in this paragraph refers to software in various stages of development or any product thereof and includes without limitation the literal elements of a program (source code, object code or otherwise), its audiovisual components (menus, screens, structure and organization), any human or machine readable form of the program, and any writing or medium in which the program or the information therein is stored, written or described, including without limitation diagrams, flow charts, designs, drawings, templates, specifications, models, data, bug reports and customer information;

(b)    Oracle's marketing and sales plans or forecasts; pricing or other sales-related information; product development plans; acquisition plans; competitive analyses; benchmark test results; supplier and purchasing information; budgets and nonpublic financial information; licenses; contracts and all related documents; nonpublic customer, partner and vendor information, including without limitation customer analyses and lists; and information regarding other Oracle employees, including without limitation employees' skills, technical knowledge and compensation and organizational charts;

(c)    all information which Oracle has a legal obligation to treat as confidential or which Oracle treats as proprietary or designates as confidential or for internal use only, whether or not owned or developed by Oracle (for example, information Oracle receives from a third party customer, partner or potential acquisition target).

Ex. 1 § 1. Oracle has invested a tremendous amount of time and resources into the proprietary technologies and related materials it has generated for TPM, including proprietary ERP integrations.

37.    Oracle's trade secrets include certain Oracle materials that Oracle has discovered that Mariano possessed well after terminating his employment with Oracle, including on his personal Google drive and iCloud accounts, on two Oracle computers that Mariano kept after his termination from Oracle, and on the Procore computer Mariano used in connection with and furtherance of his work at Procore. These Oracle trade secret materials, for instance, include confidential Oracle computer source code, as well as confidential Oracle documents relating to Oracle's TPM and ERP integrations (the process of connection to a client's enterprise resource software), such as: (1) confidential and proprietary source code computer files, including python source code files and SQL database files related to specific ERP adapters developed by Oracle engineers; (2) confidential test plans, project plans, and implementation plans developed by Oracle engineers associated with integrations with various ERPs for specific Oracle client implementations; (3) confidential files reflecting Oracle client information, revenue projections, and other internal strategy documents related

to Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents and presentations detailing the design and implementation of various Oracle ERP integrations.

38.     The Oracle trade secret materials that Oracle discovered were unlawfully maintained at Procore and by Mariano are the result of years of technological development and business acumen, are kept strictly confidential by Oracle, and are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature. Oracle's efforts and investments to develop this information and technology over the years has resulted in substantial trade secrets that, together with other Oracle intellectual property, have made Oracle a market leader. For these reasons, and others, Oracle's TPM and ERP integration technologies and the secret design, testing, and implementation of its proprietary features and processes that made their way to Procore for use at Procore in support of its business are highly valuable assets belonging to Oracle.

**B.     Oracle Diligently Protects Its Confidential Trade Secrets**

39.     The measures that Oracle takes to protect the secrecy of its confidential and proprietary trade secret information are extensive. Oracle has acted reasonably and diligently to protect the secrecy of its trade secret and confidential information, including by the following measures:

- Requiring employees to sign Proprietary Information Agreements, which details the confidentiality and non-disclosure obligations of Oracle employees;

- Providing Separation Packets to departing employees that reaffirm employees' confidentiality, non-disclosure, and return of property obligations upon termination of employment;

- Providing written policies to employees, which detail employees' confidentiality, non-disclosure, and proper use of Oracle's confidential and proprietary information;

- Providing non-disclosure / confidentiality agreements to Oracle customers and other third-parties before providing access to Oracle's trade secrets including, by way of example, aspects of its software necessary for integrations;

- Using database exchange and collaboration systems such as Jira and Confluence, which allow permission assignment ("who can see what" and tracking "who changed what, when and why"); and

- Maintaining high password and technical standards for access to and security of its trade secrets.

40.    For example, Oracle's Employee Handbook provides guidance for employees to ensure that Oracle's confidential and proprietary information remains protected. Oracle employees are provided and trained on this Handbook. The Handbook also explicitly references the Proprietary Information Agreement, which employees are required to sign upon hire, including Mariano as set forth below. According to the Handbook, the Proprietary Information Agreement identifies an obligation to protect company confidential information that continues after the termination of employment with Oracle.

41.    As another example, Oracle's Code of Ethics and Business Conduct also provides guidance for employees, including obligations to protect Oracle's intellectual property. Oracle employees are provided and trained on the Code of Ethics. The Code of Ethics provides examples of confidential information, including source code, marketing and sales plans, competitive analyses, product development plans, and pricing, among others. The Code of Ethics explicitly identifies Oracle's intellectual property, which include trade secrets, as among Oracle's most important assets. The Code of Ethics further explains that employees are responsible for protecting Oracle's intellectual property rights, including by complying with Oracle's policies and procedures regarding protecting intellectual property and maintaining the confidentiality of Oracle's proprietary information and trade secrets. The Code of Ethics further states that the employee's obligation to protect Oracle's intellectual property rights continues after the employee leaves Oracle.

42.    Oracle's Information Protection Policy identifies Oracle's confidential information as a valuable asset and that protecting both Oracle's confidential information and the confidential information of customers and third parties is vital to Oracle's business. The policy sets forth Oracle's requirements for handling confidential information. For example, the policy explains the employee's obligation to protect Oracle's confidential information by not using, disclosing, transferring or publishing such information except as necessary in the course of business or as directed by Oracle. Here too, this policy identifies that the obligation to protect Oracle's confidential information

continues after the employee leaves Oracle. Additionally, this policy prohibits the use of third-party data storage or technology / application hosting services unless a prior exception has been given.

43.    As another example, Oracle employees are also required to sign an Employee Proprietary Information Agreement ("PIA"), which, among other things, states that employees will, "[a]t all times, both during and after my employment with my Employer, . . . hold Proprietary Information in confidence," "will not by any means transfer, publish, disclose or report Proprietary Information directly or indirectly, except such disclosure to other Oracle employees or authorized third parties as may be necessary in the ordinary course of performing [an employee's] duties," and "will not use Proprietary Information except in the course of performing [the employee's] duties for [his or her] Employer." Ex. 1.

44.    The Employee PIA further requires that upon termination, an employee will:

(a) immediately deliver to my Employer or its designee, and will not keep in my possession, recreate or deliver to anyone else, all materials (in any tangible or electronic form) and property belonging to Oracle including without limitation documents, software, storage devices (including without limitation external hard drives, discs, flash drives, and tapes), records, data (including without limitation customer, supplier and vendor data that I created, modified or otherwise accessed during my term of employment), notes and correspondence and copies or reproductions thereof whether or not developed by me during the course of my employment with my Employer, hardware (including without limitation laptops and other computers), pagers, Oracle Social Media Accounts (as defined in Oracle's Social Media Participation policy), terminals, telephones, badges, business cards, handbooks, policy manuals, software manuals and telephone directories;

(b) immediately deliver to my Employer or its designee the account details and authentication information for any accounts I established or utilized as part of my employment with Oracle, including without limitation any cloud storage or Oracle Social Media Accounts; and

(c) immediately cease using and/or accessing any and all Oracle accounts, including without limitation email, voicemail, video and/or audio conference accounts, Social Media, and other computer and network systems or accounts.

Ex. 1.

45.    The Proprietary Information Agreement further requires employees to agree that it "may be amended and modified only by written agreement between myself and Oracle's General Counsel" and employees agree "not enter into any agreement, written or oral, that conflicts with the provisions of this agreement." Ex. 1. Mariano signed the PIA on July 5, 2016.  *Id.*

46.     Oracle also provides separation information to departing employees, including Mariano. For example, employees voluntarily leaving are provided with a Voluntary Separation Packet, which reminds employees in this packet of their obligations under the Employee Proprietary Information Agreement. This Voluntary Separation Packet also specifies that exiting employees must return all Oracle equipment upon their separation and provides instructions on how to return Oracle equipment. It further spells out the employee's obligation to return to Oracle all property belonging to Oracle, which includes documents, software, hardware, laptops, discs, records, data, notes, correspondence and any copies of any of those items. It emphasizes that departing employees need to immediately return all Oracle property in their possession to their manager. Mariano received this packet when he departed Oracle.

**C.     Procore Needed Oracle's Confidential Trade Secrets to Compete**

47.     Like Oracle, Procore offers construction management solutions, but did not have its own fully integrated solution like Oracle. Procore, however, recognized the success of Oracle's integrated solutions, and determined that it needed such solutions to compete with Oracle, but it did not develop those solely from within. For example, in at least 2020, Procore recognized that "[t]he market for [its] products [was] highly competitive and rapidly changing" because Procore's products compete with "aggregated construction management products, including those offered by Oracle (including through its acquisitions of Primavera Systems, Aconex, and Textura)." Ex. 5 at 21. Procore also noted that "[w]ith the introduction of new products, technologies, and market entrants in the construction management software industry, [it] expect[d] competition to intensify in the future" and further that "many of [its] actual and potential competitors benefit from ***competitive advantages over [Procore], such as*** better name recognition, longer operating histories, larger marketing budgets, existing or more established relationships, ***greater third-party integration***, access to larger customer bases, and greater financial, technical, pricing and marketing strategies, and other resources." *Id.* (emphasis added). According to Procore, "[s]ome of [its] competitors may make acquisitions or enter into strategic relationships with third parties to offer a broader range of products than [Procore] d[id]." *Id.* And Procore emphasized that "[w]ithin the construction industry, ***integration of third-party***

*applications with [its] platform and presence in the App Marketplace are increasingly seen as requirements for adoption and usage by [it]s customer base.*" *Id.* at 98 (emphasis added).

48.     Unlike Oracle, Procore struggled to launch a full suite of technologies related to a payment management platform, including ERP integration offerings, and needed Oracle's trade secrets in order to compete. Procore hired Mariano and placed him in the analogous position he was in at Oracle, giving him the senior position of "Director of Product, ERP," where he conducted substantially the same integrations-related development work he did while at Oracle, possessing (on the Procore computer he used) and using Oracle's proprietary and confidential trade secrets for the benefit of Procore. Following Procore's hiring of Mariano, Procore shortly thereafter announced the release of certain technologies (including integration-related technologies) and the acquisition of customers directly related to Mariano's work at Oracle, as described herein. As alleged herein, however, Procore did not develop these technologies on its own. Instead, it targeted Oracle from the inside, through its personnel—namely, by recruiting Mariano, who took thousands of confidential Oracle trade secret materials with him to Procore, in connection with Procore's development of products intended to compete with Oracle.

49.     In his role at Textura from 2012 until Oracle's acquisition of Textura in 2016, and then at Oracle (employed by Oracle America) until his last day at Oracle on October 29, 2021, Mariano had a front row seat to Textura's and Oracle's technical development of TPM, including related ERP integrations, and confidential business strategic plans. Mariano led the functional team for TPM ERP integrations while at Oracle, serving as a subject matter expert in that area, and through his role worked closely with Oracle's proprietary information regarding the TPM offerings and ERP integration technologies. He was also a product manager for TexturaLink, which is a middleware application used to connect TPM's APIs with ERP packages, and managed the integrations of SAP, Viewpoint Vista, Sage 300 CRE, Oracle E-Business Suite, JD Edwards EnterpriseOne, Yardi Voyager, and CMIC with TPM.

50.     By way of example, while at Oracle, Mariano was a Sales Consulting Senior Manager responsible for the integration platform used with Oracle's TPM cloud-based application. Mariano had access to confidential Oracle materials concerning Oracle's integrations and implementations of

the TPM offerings. In his role, Mariano worked closely with Oracle's customers to implement the Oracle integration technologies, assist with troubleshooting, and serving as a liaison with Oracle's development team. He helped close some of Oracle's largest deals for Textura Payment Management offerings, played a key role in driving clients to implementation quickly, and was an integral part of setting business strategy. Mariano also managed testing efforts with the development team and trained the customer service and development teams. Some of his projects included being responsible for the integration work stream, which provided a competitive edge over competition that allowed Oracle to gain market share, such as through architecting new integration packages.

51.    Unbeknownst to Oracle, long after he left Oracle, Mariano improperly possessed thousands of Oracle's confidential, proprietary materials on his personal cloud accounts (his personal Google Drive and iCloud accounts), in addition to on two Oracle computers (an Oracle PC and an Oracle MacBook laptop) that he kept long after leaving Oracle. Oracle discovered this theft, including its extent, only after learning of Procore's rapid launch of competing technology after hiring Mariano, and requesting that Mariano return the Oracle computers in his possession. This allowed Oracle to conduct a forensic analysis of the Oracle devices and later aspects of Mariano's personal cloud accounts, which ultimately revealed that, while at Procore, Mariano had acquired, retained, accessed, and used Oracle's trade secret information in connection with and furtherance of his employment at Procore. Specific examples of Procore and Mariano's misappropriation of Oracle trade secrets, discovered by Oracle to-date, are set forth herein.

52.    iCloud. Oracle's forensic inspection of Mariano's personal iCloud account revealed that Mariano maintained hundreds of Oracle files, including Oracle trade secret files such as confidential Oracle source code, on that account at least through July 2023.  Oracle also learned from Procore's counsel that Oracle materials on Mariano's personal iCloud account were discovered on Mariano's Procore-issued laptop at least as of the summer of 2023, nearly two years after Mariano went to work for Procore. And the Oracle materials on Mariano's iCloud that were copied over to Mariano's Procore-issued laptop include highly sensitive confidential and proprietary trade secret files and documents concerning Oracle's TPM solution, ERP integrations, customer-specific implementations, and detailed client information.

53. For example, those files include specific .zip files entitled "TexturaCloud.zip" and "TexturaSPs.zip," which include over 50 proprietary and confidential Oracle SQL source code files (together with log files) developed by Oracle engineers and related to implementing Oracle's TPM Viewpoint Adapter. These confidential Oracle code files are confidentially deployed at a customer-site to enable integration with Oracle TPM, and only pursuant to non-disclosure agreements with those at the customer to whom disclosure is necessary. These confidential code files, developed through substantial effort of Oracle engineers, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given the competitive advantage that Oracle has as a result of the Oracle-developed integration technologies embodied these files.

54. Those files also include confidential Oracle python source code files developed by Oracle engineers and related to Oracle's TPM adapter, including specific Oracle source code modules entitled "dao.py" and "compliances.py." These files are confidential Oracle computer source code that implements important confidential functionality relating to Oracle's ERP integrations. These confidential code files, developed through substantial effort of Oracle engineers, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given the competitive advantage that Oracle has as a result of the Oracle-developed integration technologies embodied these files.

55. Those files also include a number of specific Oracle files detailing Oracle's confidential client information related to Oracle's TPM and related ERP integration offerings, including the ERP used and revenue information associated and forecasted for each of various particular identified Oracle clients, including in confidential Oracle files entitled "Copy of Client Services Resource Requirement Analysis_v4.xlsx" and "Clients by ERP.xlsx." These files are maintained internal to Oracle and are highly confidential. These confidential files, developed internally by Oracle employees, are also critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given that Oracle's strategic, product development, and business objectives in the TPM and related integration space would be compromised and harmed by virtue of a competitor in this space having access to these files.

56.     Those files also include specific proprietary and confidential test plans, install plans, and implementation plan files, including specific integration-related Oracle files entitled "Viewpoint Test Plan.xlsx," "Copy of Sage 300 TexturaLink Test Plan.xlsx," and "Sage Client – TexturaLink Install 2.xlsx."  These confidential integration-related files, developed through substantial effort of Oracle employees, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given the competitive advantage that Oracle has as a result of the Oracle-developed integration technologies disclosed in these files.

57.     These files also include trade secret integration materials concerning confidential details regarding Oracle's integrations with specific customers and prospective customers, including files entitled "[] Support Aug 2019.pptx" and "[] Power User Guide.pptx." These confidential integration-related files, developed through substantial effort of Oracle employees, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given the competitive advantage that Oracle has as a result of the Oracle-developed integration technologies disclosed in these files.

58.     As alleged herein, numerous trade secret Oracle files relating to key strategic Oracle customers and prospective customers, as well as Oracle's integration technologies (including source code files directly implementing those technologies), were found on a Procore computer used by Mariano as well as on Mariano's personal cloud accounts, well after Mariano joined Procore. These trade secret files and documents are and contain numerous highly confidential and proprietary details concerning Oracle's integration technologies, roadmap and strategies with those customers and prospective customers which are extremely valuable to Oracle and detrimental to Oracle in the hands of a competitor. And not only were these files present on and accessible from Mariano's personal cloud accounts long after he went to work at Procore, but as alleged above, Oracle also recently learned that these files were also transferred to and found on Mariano's Procore laptop at least nearly two years after Mariano started working on competing products at Procore, in furtherance of his job responsibilities and within the scope of his employment. And since Mariano has joined Procore, Procore has announced the release of a number of technology offerings directly related to these trade

secret materials, while Mariano (on behalf of Procore) has publicly touted Procore's release of new integration technologies, as alleged herein.

59.    Procore and Mariano's malfeasance is further reflected in Procore's announcement, on or about six months after Mariano joined Procore, of how they were able to win business from one construction company. While the details of Oracle's trade secrets are not disclosed in this announcement, Procore makes it clear that a reason it was able to obtain this business is related to its use of them, stating "***Procore's*** ease of use and ***range of integrations***, alongside its ability to consolidate point solutions and create efficiencies for everyone on a single platform, will provide [the customer] with greater visibility across its projects - ensuring consistency, enhancing quality and supporting sustainable working practices. The high-level of transparency [the customer] will gain also allows the company's data to be redelivered as intelligent insight which can drive improvements in everything from project progress, to supply chain developments as well as safety and performance."

60.    <u>Google Drive</u>. Oracle's forensic inspection of Mariano's personal Google Drive account revealed that hundreds of Oracle files, including Oracle trade secret files, were on that account at least through July 2023, and that Mariano modified Oracle material contained on his personal Google drive while he was employed at Procore, including on November 12, 2021.  The Oracle materials on his Google drive include highly sensitive confidential and proprietary files concerning Oracle's TPM solution, ERP integration, and client-specific integration. For example, the drive contained various OneNote files detailing confidential aspects of Oracle's ERP integrations, including "CMIC R12 Testing.one (5-4-2020).one." It also contained design and implementation of Oracle ERP integrations including a file entitled "CEGBU – Integrating through the Subcontract.pptx," which also provides highly sensitive details concerning Oracle's competitive analysis, and notes technological deficiencies that presented Procore with a competitive disadvantage prior to Mariano's joining Procore. Critically, after Mariano joined Procore, consistent with access and use of Oracle trade secret materials at Procore, Procore added integration features reflecting use of these trade secret files.

61.    <u>Oracle PC</u>. Mariano also took his Oracle-issued PC with him to Procore. The Oracle PC contained thousands of Oracle trade secret files, including highly confidential and proprietary Oracle source code files, including SQL database files related to specific ERP adapters; python source

code files related to Oracle's TPM adapter; confidential test plans, project plans, and implementation plans associated with various ERPs for specific Oracle client implementations; confidential files reflecting specific Oracle client information related to TPM and its ERP integrations; and internal documents and presentations detailing the design and implementation of various Oracle ERP integrations. Critically, during Oracle's discussions with Mariano prior to filing this suit, in December 2022, Mariano initially denied still having the Oracle computers in his possession, though he later changed his story and sent back the Oracle PC (and MacBook, as described below) to Oracle. A forensic examination of the Oracle PC revealed that Mariano had powered on the Oracle PC while he was employed at Procore, and as described below, that he had also powered on the Oracle MacBook just months before denying that he still had Oracle computers in his possession.

62. <u>Oracle MacBook</u>. As with the Oracle-issued PC, when Oracle realized that Mariano had not sent back his Oracle-issued MacBook, Oracle asked for its immediate return in December 2022. Though Mariano initially denied having the Oracle MacBook in his possession at that time, a subsequent forensic examination of the Oracle MacBook revealed that Mariano had powered on and performed a "factory reset" of the computer well into his employment at Procore (including in August 2022, over nine months after Mariano started working for Procore), which effectively purged all forensic data and content from the device, obscuring what had been done with the device before the reset. However, despite Mariano's attempt to wipe all data and content from the device, the forensic inspection also revealed that Mariano powered on the Oracle MacBook again at least as late as October 22, 2022. Prior to the factory reset, Oracle files on the Oracle MacBook included at least the Oracle files found on Mariano's personal iCloud drive and personal Google drive. As discussed above, these materials include highly sensitive confidential and proprietary information including highly confidential source code files, including python and SQL database files related to specific ERP adapters; confidential test plans, project plans, and implementation plans associated with various ERPs for specific Oracle client implementations; confidential files reflecting Oracle client lists; and confidential internal documents and presentation detailing the design and implementation of various Oracle ERP Integrations.

63.   <u>Mariano's Procore-issued MacBook</u>. Mariano transferred confidential Oracle trade secret files to the Procore laptop he used in connection with his work, including at least the Oracle files discovered on his personal iCloud Drive described above, including the integration-related Python and SQL source code files described above and other confidential Oracle integration files described above (such as "TexturaCloud.zip," "TexturaSPs.zip," "dao.py," "compliances.py," "Copy of Client Services Resource Requirement Analysis_v4.xlsx," and "Clients by ERP.xlsx."). Those files relate directly to the ERP integrations that Mariano works on for Procore, and Procore used those files, including in connection with and furtherance of Mariano's work for Procore, including in connection with ERP integrations released by Procore after Mariano started working to Procore. Despite Oracle's request, and despite recently acknowledging that Oracle files were found by Procore on Mariano's Procore-issued laptop, Procore refused to allow Oracle to forensically inspect Mariano's Procore-issued laptop, even though Oracle offered to enter into an industry-standard forensic inspection protocol that would fully protect any legitimate interests raised by Procore, and which Mariano's counsel had already agreed to. Oracle's forensic inspection has also revealed that Mariano uses his Procore-issued laptop to log into a personal cloud account that, as described above, contains a substantial number of Oracle confidential and trade secret files. And Mariano transferred Oracle files from his iCloud account to his Procore laptop during and in furtherance of his work at Procore.

64.   Mariano's iCloud account (as well as the Procore computer used by Mariano in connection with his work, as alleged above) contains numerous Oracle trade secret files, such as the following:

| File MD5 Hash[1] | Description |
|---|---|
| C3ED67AA349848BCBA1EA075CE8F357C | Source Code ("compliances.py") |
| 8DF74133B396F55BD8732137DA9D0284 | Source Code ("dao.py") |
| 0F44F7A150C9B81FFAE1FC5709436D83 | Customer List and Opportunities ("Copy of Client Services Resource Requirements Analysis_v4.xlsx") |

---

[1]   An MD5 hash is a unique number that can be derived from all computer files that acts as a thumbprint.

| 1DC9724496E986C97F5B98C754903DE6 | Research And Development Plans ("TLC Phase 2 Items.xlsx") |
|---|---|
| 2BFF59D1D5C4726CF0559E0D39F9E4FA | Research And Development Plans ("Tpm vs Connected Cost.pptx") |
| 4A54C3DD5522C88808AC15D3EFA22084 | Research And Development Plans ("Tpm as Project Controls.pptx") |
| 05A0D90D191E18E0589C2B77D3BAE3E6 | Software Integration Plans |
| 6F839CCB131152E162B62AF9243D9162 | Software Integration Plans |
| 7EC1CC03135E32DA3FCB135AF4EA37FA | Software Integration Plans ("SAP Textura Integration Test Checklist.xlsx") |
| 8DCAE226193E95346DF9C755F6D9DCB6 | Software Integration Plans ("Sage Client – TexturaLink Install.xlsx") |
| 69DCA30B32ECEACCA914D368E18624A3 | Research And Development Plans ("TPM Integration Touchpoints.pptx") |
| 627F66F9AD6AFE4F80C9A7CEEA5805E1 | Customer List and Opportunities ("Fy21 rev by ERP.xlsx") |
| 185655DE5B0275A415D17399267552EA | Customer List and Opportunities ("Clients by ERP.xlsx") |
| 49442054CFAA0BC578EAF5C9EF7E6FBA | Software Integration Plans |
| A7EBAD5D3F85002405ED74F0ABEE6577 | Software Integration Plans ("2020 Integration Incidents Report.xlsx") |
| A2366D4B3A56E99C491B5919F8CC756D | Software Integration Plans |
| B2DF8954EF756B2C4E70DD5095C5C5D4 | Research And Development Plans |
| B25FBBFC4B1B5422561C542C751B86EF | Software Integration Plans |
| CC26FB507EE56EB4C437785B5E6D379B | Research And Development Plans ("Project Control Functionality Comparison.xlsx") |
| CDD91E28C9A1138E8BD3C1E217D9AD1D | Software Integration Plans ("Summit Integration Flows.pptx") |

65.     These confidential integration-related files, developed through substantial effort of Oracle employees, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature, given the competitive advantage that Oracle has as a result of the Oracle-developed integration technologies disclosed in these files.

66.     Procore's use and benefit of the Oracle trade secrets is further evidenced by Procore's actions in the marketplace. It was only after Mariano joined Procore and accessed and transferred Oracle's trade secret files to his Procore computer while working at Procore that Procore announced its release of a competing TPM solution: Procore Pay. Since Mariano went to work for Procore in late 2021, Procore has also announced the release of several ERP integrations, including ERP integrations with Sage 100, Sage 300, CMIC, Vista, Yardi, and NetSuite for Procore Pay. Given the overlapping

technical fields and responsibilities between Oracle's integration offerings and Procore's subsequent integration announcements, together with the surreptitious theft of Oracle's trade secrets (which Defendants attempted to conceal), and the rapid announcement of these new technologies shortly after Mariano joined Procore, these announcements further evidence Procore's use of Oracle trade secret materials.

67.    Moreover, Mariano's LinkedIn confirms that the Integration work he was doing at Oracle as well as the contents of the Oracle trade secret files described above are directly related to Mariano's work at Procore, writing in a post that "Yes, there are a ton of partner built integrations, but we have out of the box integrations with more ERPs than any other application in the industry. (CMIC, Sage 100, Sage 300, Sage Intacct, Acumatica, Yardi, MRI, Quickbooks, Spectrum, Vista, Xero, MYOB Advanced, with a bunch more coming soon). *The ERP integration team is full of industry folks that have worked with, or for, all of these ERPs before joining Procore*." Ex. 6 (emphasis added). In the same post, Mariano touted the upcoming release of Procore's competing product, Procore Pay: "Stay tuned for this one, all I can say is that Procore Pay is real and it's spectacular!"

68.    Mariano also posted about Procore's "Groundbreak" in New Orleans in late 2022, and wrote "Or if you want to talk about how [Procore Pay] will integrate with your ERP I can fill you in with all the details! *We are excited to be building it out* for Sage 300, CMIC, Vista, Acumatica, Sage Intacct, Yardi, Quickbooks, Xero, Sage 100, JD Edwards, NetSuite, *with more to come!*" Ex. 6 (emphasis added). Mariano's LinkedIn also touted "new" Integration features for ERPs that Procore was working on following Mariano joining Procore that Mariano previously worked on at Oracle and to which the Oracle trade secrets relate, such as the Viewpoint Vista Integration. Ex. 6.

69.    It took Oracle many years, and an acquisition of an entire company for hundreds of millions of dollars, to develop the TPM and integration technologies reflected in the trade secrets. In contrast, Procore was able to release its competing solutions (including the newly released ERP integration technologies described above) shortly after Mariano joined Procore, and in some instances, in a matter of months (far less time that it took Oracle to develop the integration-related technologies embodied in the Oracle trade secrets). Indeed, Mariano himself discussed Procore's future payment solution just six months after he joined Procore, and Procore was able to overtake Oracle with respect

to certain customers in that time frame, as alleged herein. Despite it taking Oracle many years to have these same integrations, it took Procore a far shorter time, further evidencing possession and use of the Oracle trade secrets.

70.    At all relevant times, Procore knew that Mariano had been employed by Oracle as well as the nature of his work and responsibilities as an Oracle employee. Procore knew (including through at least Mariano) and also should have known that Mariano had kept and transferred Oracle's trade secrets his Procore-issued computer at least through the summer of 2023, and that Mariano retained numerous Oracle trade secret materials on his personal cloud accounts. Yet, Procore acquired, used, and disclosed Oracle's trade secrets including by possessing Oracle trade secrets on a Procore computer and allowing Mariano to possess and use Oracle's trade secrets to rapidly develop and release Procore's competing offerings and business strategies. In addition, the misappropriation occurred after Mariano was hired by Procore, as previously discussed, and was in furtherance of and within the scope of Mariano's employment by Procore, such as in support of developing integration-related technologies for Procore Pay and other Procore offerings.

71.    And despite Oracle spending over a year discussing this matter with Procore's (and also Mariano's separate) counsel, during which time Oracle identified and attempted to ascertain the full scope of the problem and to protect its trade secrets without litigation, Procore repeatedly took the position that it investigated and concluded that Mariano did not use or access any information "proprietary to Oracle," and only after a long period of evasiveness, recently admitted (at the beginning of October 2024) that in fact it had found Oracle materials on at least one Procore laptop used by Mariano far earlier in the process.

72.    Procore refuses to provide additional information reasonably requested by Oracle— including a forensic image of the Procore-issued laptop, as well as other key forensic information sources. Given Procore's lack of transparency over the past year, when responding to Oracle's direct questions about what happened, and refusal to openly provide fulsome discovery into the computers and other materials related to this matter, Oracle has been unable to unearth the key facts concerning Procore's involvement alleged herein until this very month.

## COUNT I

**Trade Secret Misappropriation Under**
**The Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b), 1839 et seq.**
**(Against All Defendants)**

73.     Oracle re-alleges and incorporates by reference the allegations above as though fully set forth herein.

74.     Oracle (including as described in the "Parties" section above) is the owner of certain valuable trade secrets in and relating to its Textura Payment Management solution including its proprietary integrations with its Enterprise Resource Planning (ERP), as those trade secrets are specifically described above. These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on Oracle, and Oracle has spent significant time and money developing such confidential information and trade secrets. These trade secret and confidential information, as described above, constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3).

75.     The above detailed confidential trade secrets that Defendants acquired, accessed, disclosed and used derive independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by Oracle's competitors, including Procore, or to other persons or entities who might obtain economic value from their disclosure or use.

76.     At all times relevant herein, Oracle has taken the above-described reasonable measures to protect the secrecy of its trade secret and confidential information, including that which Defendants have misappropriated, including by requiring confidentiality agreements to be signed by any party granted access to Oracle's trade secrets, agreements to not keep property belonging to Oracle including documents, software, storage devices, and hardware (including without limitation laptops and other computes), and in accordance with the other measures to maintain secrecy described in detail above.

77.     Oracle afforded Mariano access to and use of Oracle's confidential information and trade secrets which Mariano had a duty to maintain as confidential under the terms of his Proprietary Information Agreement with Oracle, in which he expressly acknowledged and confirmed the confidential nature of these secrets.

78.    As stated above, Oracle's trade secret and confidential information relates to products or services used, sold, purchased, or transported, or intended for use, sale, purchase, or transport, across the United States (including Oracle's TPM offering, and its related integrations, which is offered and supplied to customers throughout the United States, including numerous customers for numerous construction projects in this District) and throughout the world.

79.    Defendants acquired, accessed, disclosed and used Oracle's trade secret and confidential information by improper means, without Oracle's express or implied consent, and in violation of the Proprietary Information Agreement described above.

80.    Defendants actually misappropriated Oracle's trade secrets and confidential information to benefit themselves, and to allow Procore to unfairly compete against and harm Oracle by acquiring and using Oracle's trade secrets, including in this District. Defendants improperly acquired Oracle's trade secrets and have since improperly used and disclosed those trade secrets, including to influence the development and release of technologies offered by Procore (including in connection with its Procore Pay offering and related ERP integrations) to compete with Oracle's offerings (including TPM and its related ERP integrations). Misappropriation of this type of information undermines Oracle's competitive position in the market for these offerings. Further, after his last day at Oracle, on October 29, 2021, Mariano unlawfully kept extensive confidential Oracle trade secrets which he has used and disclosed at Procore in the course of his employment, as described in detail above.

81.    Defendants knew or had reason to know at the time they acquired, accessed, disclosed and used Oracle's trade secret and confidential information that this information is confidential and was acquired and maintained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use, including by virtue of the Proprietary Information Agreement. Defendants further knew or had reason to know that this information was developed or acquired by Oracle at great expense and effort. Defendants further knew or had reason to know that Oracle maintains this information as confidential and this information is not generally available to the public or Oracle's competitors such that having this information would provide significant benefit to a competitor seeking to compete with Oracle.

82.     Procore improperly acquired and participated in disclosure and use of Oracle's trade secrets including by virtue of Mariano's transfer of confidential Oracle information to a Procore laptop used by Mariano for use in connection with and to benefit Mariano's work at Procore, including in connection with creating and releasing its competitive products. Further, in his role at Procore, Mariano has used and disclosed Oracle's trade secrets within the course and scope of his employment at Procore. Defendants have benefited and will continue to benefit from that use including by continuing to design and implement Procore's new products with the benefit of Oracle's trade secrets.

83.     Procore and Oracle are competitors in the construction management software solutions space.

84.     Mariano is an agent of Procore, and his misappropriation of Oracle's trade secrets occurred, and is occurring, during the course and within the scope of his employment at Procore. Mariano's improper actions, including transferring Oracle's trade secret information to Procore's equipment, and using such Oracle information in his competitive role at Procore, occurred within the scope of his employment at Procore and was, at least in part, for the benefit of Procore to give Procore an unfair advantage in competing against Oracle. Procore is therefore at least vicariously liable for Mariano's misappropriation of Oracle's trade secrets, in addition to being directly liable for its own improper acquisition, use, and disclosure of Oracle's trade secrets as alleged herein.

85.     At no time has Oracle consented to the Defendants' improper acquisition, disclosure, or use of Oracle's trade secrets for any reasons unrelated to Mariano's employment with Oracle.

86.     Thus, Defendants have engaged in the actual and threatened misappropriation of Oracle's confidential information in violation of the DTSA.

87.     Defendants' actions, as set forth herein, constitute "misappropriation" within the meaning of 18 U.S.C. § 1839(5).

88.     Defendants are retaining and using Oracle's trade secret and confidential information to compete with and/or otherwise harm Oracle. As alleged herein, Defendants committed numerous acts in furtherance of its misappropriation in the United States and in this District, including misappropriating trade secrets that it obtained and/or originated from this District with knowledge and intent to harm Oracle in this District, as well as attempting to sell and/or selling (and/or facilitating

selling) products in the U.S. and this District that were influenced by and otherwise benefit from Defendants' theft.

89.     Defendants' misappropriation has proximately caused damage to Oracle, including but not limited to loss of profits, goodwill, competitive advantage and business opportunities—for which Oracle is seeking damages.

90.     Defendants have been unjustly enriched as a further proximate result of its misappropriation of Oracle's trade secret and confidential information—for which Oracle also is seeking damages.

91.     Defendants' actions in misappropriating Oracle's trade secret and confidential information were willful, fraudulent, malicious, and was done with the intent to injure and oppress Oracle and improve Defendants' own economic opportunities, thereby justifying an award of punitive damages against Defendants pursuant to 18 U.S.C. § 1836(b)(3)(C) and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

92.     Oracle is also entitled to injunctive relief to protect its confidential information and trade secrets by 1) enjoining Defendants from further possessing, using or disclosing Oracle's trade secret and confidential information; 2) enjoining Defendants from altering or deleting Oracle's trade secret and confidential information, or any related evidence; and 3) requiring Procore to turn over any and all copies of Oracle's trade secret and confidential information to Oracle.

## COUNT II
### Breach of Contract
### (Against Mariano)

93.     Oracle incorporates and re-alleges every allegation above as if fully set forth herein.

94.     Mariano voluntarily entered the Proprietary Information Agreement with Oracle. *See* Ex. 1.

95.     The Proprietary Information Agreement is valid, binding, and enforceable.

96.     The Proprietary Information Agreement is supported by adequate legal consideration.

97.     Oracle adequately performed as required under the Proprietary Information Agreement.

98.     Under the terms of the Proprietary Information Agreement, Mariano agreed that "[a]t all times, both during and after my employment with my Employer, … [I will] hold Proprietary

Information in confidence." Ex. 1. Mariano further agreed that he will not "by any means transfer, publish, disclose or report Proprietary Information directly or indirectly, except such disclosure to other Oracle employees or authorized third parties as may be necessary in the ordinary course of performing [an employee's] duties," and will not "use Proprietary Information except in the course of performing [the employee's] duties for [his or her] Employer." *Id.*

99.    Under the terms of the Proprietary Information Agreement, Mariano agreed that he will not "keep in my possession, recreate or deliver to anyone else, all materials (in any tangible or electronic form) and property belonging to Oracle including without limitation documents, software, storage devices (including without limitation external hard drives, discs, flash drives, and tapes), records, data (including without limitation customer, supplier and vendor data that I created, modified or otherwise accessed during my term of employment), notes and correspondence and copies or reproductions thereof whether or not developed by me during the course of my employment with my Employer, hardware (including without limitation laptops and other computers), pagers, Oracle Social Media Accounts (as defined in Oracle's Social Media Participation policy), terminals, telephones, badges, business cards, handbooks, policy manuals, software manuals and telephone directories." *Id.*

100.    Under the terms of the Proprietary Information Agreement, Mariano further agreed that he would "immediately cease using and/or accessing any and all Oracle accounts, including without limitation email, voicemail, video and/or audio conference accounts, Social Media, and other computer and network systems or accounts."

101.    Oracle reminded Mariano of his obligations under the Proprietary Information Agreement upon his separation from Oracle, including by sending him the Voluntary Separation Packet.

102.    Mariano materially breached the Proprietary Information Agreement by not holding Oracle's Proprietary Information in confidence and by transferring, publishing, disclosing, or reporting Oracle's Proprietary Information not generally known outside of Oracle and using such information outside the course of performing his duties for Oracle and other than for the sole benefit of Oracle.

103.    Mariano materially breached the Proprietary Information Agreement by keeping in his possession materials and property belonging to Oracle, including by keeping Oracle's trade secret documents in his Google Drive and iCloud Drive accounts and by retaining his Oracle-provided laptops, and by transferring Oracle files to his Procore-issued laptop.

104.    As a proximate result of Mariano's actions, Oracle has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

105.    Oracle is entitled to damages, permanent injunctive relief against further breaches of the Proprietary Information Agreement.

### JURY DEMAND

106.    Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. P. 38, Oracle requests trial by jury for all causes of action, claims, or issues in this action that are so triable.

### PRAYER FOR RELIEF

WHEREFORE, Oracle prays for as follows:

107.    For judgment in Oracle's favor and against the Defendants on all causes of action alleged herein against them;

108.    Award Oracle damages in an amount to be determined at trial, including without limitation, Oracle's lost revenues and profits, and any unjust enrichment, restitution, or disgorgement, breach of contract damages, plus a reasonable royalty to the extent permitted under the law;

109.    Award permanent injunction against Defendants, requiring Defendants to return all stolen information and documents (and all material derivative from such information) to Plaintiffs and enjoining Defendants from further misappropriating or using Oracle's trade secrets, and other such injunctive relief as is proper;

110.    Award Oracle punitive and exemplary damages in an amount to be determined at trial;

111.    Award Oracle pre-judgment and post-judgment interest, attorneys' fees and costs, and other expenses incurred in this action; and

112.    For such other and further relief as the Court may deem to be just and proper.

DATED:  October 25, 2024

Respectfully submitted,

*/s/ Adam R. Alper*

Adam R. Alper (SBN 196834)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
Ingrid M. Petersen (SBN 313927)
Kendra A. Delaney (SBN 339102)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
michael.devries@kirkland.com
ingrid.petersen@kirkland.com
kendra.delaney@kirkland.com
Telephone: (213) 680-8400

Leslie M. Schmidt (*pro hac vice* forthcoming)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

Sarah B. Mikosz (SBN 329255)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, California 90067
sarah.mikosz@kirkland.com
Telephone: (310) 552-4200

*Attorneys for Plaintiffs Oracle*
*America, Inc., Oracle International*
*Corporation, and Textura Corporation*