QUINN EMANUEL URQUHART & SULLIVAN, LLP
Michael B. Carlinsky (admitted *pro hac vice*)
michaelcarlinsky@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

David A. Nelson (admitted *pro hac vice*)
davenelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

*Attorneys for Defendant Mark Mariano*

(A complete list of counsel appears in the signature block)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ORACLE AMERICA, INC., ORACLE INTERNATIONAL CORPORATION, and TEXTURA CORPORATION,

Plaintiffs,

v.

PROCORE TECHNOLOGIES, INC., PROCORE PAYMENT SERVICES, INC., AND MARK MARIANO,

Defendants.

Case No. 4:24-cv-07457-JST

**DEFENDANT MARK MARIANO'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS PENDING ARBITRATION OR ALTERNATIVE MOTION TO DISMISS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**DECLARATION OF MARK MARIANO**

**[PROPOSED] ORDER**

Date: February 6, 2025
Time: 2:00 p.m.
Location: Courtroom 6
Judge: Honorable Jon S. Tigar

**ORAL ARGUMENT REQUESTED**

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendant Mark Mariano, by and through his attorneys will, and hereby does, move for an order:

(1) Compelling Oracle America, Inc., Oracle International Corporation, and Textura Corporation (collectively, "Plaintiffs") to arbitrate the claims asserted against Mr. Mariano in the above-captioned action;

(2) Staying this action pending arbitration; or

(3) In the alternative, dismissing Plaintiffs' cause of action under the Defend Trade Secrets Act (DTSA) against Mr. Mariano.

Mr. Mariano also respectfully requests that the Court stay all discovery and case scheduling deadlines pending the resolution of this Motion.

This Motion is made on the grounds that a valid and binding arbitration agreement exists and requires that (i) Plaintiffs arbitrate their claims against Mr. Mariano and (ii) any question of arbitrability be resolved by arbitration. The Court should stay the case and send the claims Plaintiffs have asserted against Mr. Mariano to arbitration. Because Plaintiffs must arbitrate the claims against Mr. Mariano, the Court should stay all deadlines while it considers this Motion. In the alternative the Court should dismiss Plaintiffs' DTSA claim against Mr. Mariano for failure to state a claim pursuant to Rule 12(b)(6).

Mr. Mariano's Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Mark Mariano and exhibits attached thereto, all pleadings and records on file, those matters of which the Court may take judicial notice, and any such other argument or evidence presented at or before the hearing.

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT .....1

II. FACTUAL BACKGROUND .....3

A. Mr. Mariano Previously Works At Textura, Which Oracle Purchased In 2016 .....3

B. Upon Arrival At Oracle, Mr. Mariano Signs The "Proprietary Information Agreement" And The "Employment Agreement & Mutual Agreement To Arbitrate" Oracle Presented Him .....3

C. Over A Year After He Joins Procore, Oracle's Counsel Contacts Mr. Mariano Regarding His Employment At Oracle, And The Subject Matter Of This Lawsuit, And Resends Him A Copy Of The Arbitration Agreement .....5

D. Plaintiffs File This Lawsuit, Which Is Expressly Covered By The Arbitration Agreement .....6

III. LEGAL STANDARD .....7

IV. ARGUMENT .....8

A. Plaintiffs' Claims Against Mr. Mariano Must Be Sent To Arbitration .....8

1. An Arbitration Agreement Exists, And It Is Valid And Binding .....9

2. Plaintiffs And Mr. Mariano Delegated The Question Of Arbitrability To The Arbitrator And Therefore The Court Need Not Address Questions Of Scope .....10

3. Should The Court Determine That It Must Decide The Issue Of Arbitrability Itself, It Would Find That Plaintiffs' Claims Against Mr. Mariano Fall Within The Scope Of The Arbitration Agreement .....12

4. The Arbitration Agreement Governs Over The PIA .....13

5. Any Alleged Ambiguities In The Arbitration Agreement And PIA, Which Were Presented To Mr. Mariano As Adhesion Contracts, Must Be Construed Against Oracle .....16

B. Plaintiffs' Claims Against Mr. Mariano Should Be Stayed Pending Arbitration .....17

C. Alternatively, The Court Should Dismiss The Defend Trade Secrets Act Claim Against Mr. Mariano For Failure To State A Claim .....17

1. Plaintiffs Fail To Allege Trade Secrets With Required Particularity .....18

2. Plaintiffs Fail To Allege Misappropriation By Mr. Mariano .....24

V. CONCLUSION .....25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alkutkar v. Bumble Inc.*,
2022 WL 4112360 (N.D. Cal. Sept. 8, 2022) ........ 7, 11, 12

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ........ 18, 19, 22

*Anderson v. Pitney Bowes, Inc.*,
2005 WL 1048700 (N.D. Cal. May 4, 2005) ........ 8

*Apple Inc. v. Rivos, Inc.*,
2023 WL 5183034 (N.D. Cal. Aug. 11, 2023) ........ 24

*Autodesk, Inc. v. ZWCAD Software Co.*,
2015 WL 2265479 (N.D. Cal. May 13, 2015) ........ 21

*In re BAM Trading Servs. Inc. Sec. Litig.*,
2024 WL 2520432 (N.D. Cal. May 14, 2024) ........ 12

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
2018 WL 2298500 (N.D. Cal. May 21, 2018) ........ 20, 21

*Brennan v. Opus Bank*,
796 F. 3d 1125 (9th Cir. 2015) ........ 10, 12

*Chee v. Tesla Inc.*,
2024 WL 1898434 (N.D. Cal. Apr. 30, 2024) ........ 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ........ 7

*Cisco Sys., Inc. v. Chung*,
2020 WL 4505509 (N.D. Cal. Aug. 5, 2020) ........ 23

*Cisco Sys., Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ........ 23

*CleanFish, LLC v. Sims*,
2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ........ 8, 18, 21, 22, 23

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ........ 13, 14

*Cornejo v. Spenger's Fresh Fish Grotto*,
2010 WL 1980236 (N.D. Cal. May 17, 2010) ........ 16

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) .......... 17

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .......... 7

*Dike v. Zara USA, Inc.*,
672 F. Supp. 3d 822 (N.D. Cal. 2023) .......... 16

*Dillion v. BET Information Sys, Inc.*,
2019 WL 12338059 (N.D. Cal. Feb. 19, 2019) (Tigar, J.) .......... 15

*Fiorentine v. Marvell Semiconductor Inc.*,
2024 WL 3012805 (N.D. Cal. June 14, 2024) .......... 9, 13

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) .......... 10

*GENFIT S.A. v. CymaBay Therapeutics Inc.*,
2022 WL 195650 (N.D. Cal. Jan. 21, 2022) .......... 18, 23

*Gerlach v. Tickmark Inc.*,
2021 WL 3191692 (N.D. Cal. July 28, 2021) .......... 11

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 8, 10

*Hindsman v. Gen. Motors LLC*,
2018 WL 2463113 (N.D. Cal. June 1, 2018) .......... 17

*Holl v. United Parcel Serv., Inc.*,
2017 WL 11520143 (N.D. Cal. Sept. 18, 2017) .......... 4

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) .......... 17

*Kaplan v. Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) .......... 15

*Khoros, LLC v. Lenovo (United States), Inc.*,
2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) .......... 21

*Lamont v. Conner*,
2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) .......... 18

*Les Concierges, Inc. v. Robeson*,
2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) .......... 25

*Little v. City of Seattle*,
863 F.2d 681 (9th Cir. 1988) .......... 17

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .......... 21

*Lopes v. Oracle America, Inc.*,
2022 WL 4281354 (N.D. Cal. Sept. 15, 2022) .......... 11

*Luong v. Super Micro Computer, Inc.*,
2024 WL 4681605 (N.D. Cal. Nov. 4, 2024) .......... 10

*Ly v. Tesla, Inc.*,
2024 WL 4894297 (N.D. Cal. Nov. 25, 2024) .......... 9, 13

*Mahamedi IP L., LLP v. Paradice & Li, LLP*,
2017 WL 2727874 (N.D. Cal. Feb. 14, 2017) .......... 17

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 1, 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .......... 7

*Natl. Specialty Pharm., LLC v. Padhye*,
2024 WL 2206336 (N.D. Cal. May 16, 2024) .......... 19

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) .......... 8

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .......... 17

*Norsat Int'l, Inc. v. B.I.P. Corp.*,
2014 WL 2453034 (S.D. Cal. May 30, 2014) .......... 24

*P2i Ltd. v. Favored Tech USA Corp.*,
2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) .......... 18

*Papasan v. Allain*,
478 U.S. 265 (1986) .......... 3

*Pellerin v. Honeywell Intern., Inc.*,
877 F. Supp. 2d 983 (S.D. Cal 2012) .......... 25

*Power Integrations, Inc. v. De Lara*,
2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) .......... 24

*Oracle America, Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) .......... 11

*Race Winning Brands, Inc. v. Gearhart*,
2023 WL 4681539 (C.D. Cal. Apr. 21, 2023)........................................................... 19

*Richter v. Oracle Am., Inc.*,
2023 WL 1420722 (N.D. Cal. Jan. 31, 2023) ........................................................... 12

*RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*,
2023 WL 8936690 (N.D. Cal. Dec. 26, 2023) ........................................................... 22

*Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*,
2023 WL 3150076 (C.D. Cal. Mar. 30, 2023) ........................................................... 14

*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024)........................................................................................ 16

*Serafin v. Balco Properties Ltd., LLC*,
235 Cal. App. 4th 165 (Cal. App. 1st Dist. 2015)........................................................ 10

*Shierkatz Rllp v. Square, Inc.*,
2015 WL 9258082 (N.D. Cal. Dec. 17, 2015) (Tigar, J.) ........................................... 10

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999)............................................................................................ 9

*Space Data Corp. v. X*,
2017 WL 5013363, (N.D. Cal. Feb. 16, 2017)........................................... 18, 19, 23

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)............................................................................................ 8

*Stiener v. Apple Comp., Inc.*,
2007 WL 4219388 (N.D. Cal. Nov. 29, 2007).............................................................. 17

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022), *aff'd,* 602 U.S. 143 (2024) ........................................ 15

*Synopsys, Inc. v. ATopTech, Inc.*,
2013 WL 5770542 (N.D. Cal. Oct. 24, 2013)................................................................ 21

*Teradata Corp. v. SAP SE*,
2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ............................................................. 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2011 WL 2650689 (N.D. Cal. July 6, 2011)................................................................. 15

*UCAR Tech. (USA) Inc. v. Yan Li*,
2017 WL 6405620 (N.D. Cal. Dec. 15, 2017) ............................................................. 25

*Vendavo, Inc. v. Price f(x) AG*,
2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ............................................................. 20

*Verge Media Cos., Inc. v. Maccini*,
2011 WL 13220726 (C.D. Cal. Oct. 17, 2011) .......... 15

*Via Techs., Inc. v. Asus Computer Int'l*,
2016 WL 1056139 (N.D. Cal. Mar. 17, 2016) .......... 20

*WalkMe Ltd. v. Whatfix, Inc.*,
2024 WL 1221960 (N.D. Cal. Mar. 21, 2024) .......... 22

*Whalen v. Facebook, Inc.*,
2022 WL 19934419 (N.D. Cal. Apr. 11, 2022) (Tigar, J.) .......... 8

*Yoon v. Applied Underwriters, Inc.*,
2021 WL 4318321 (C.D. Cal. Mar. 12, 2021) .......... 15

**Statutes / Rules**

9 U.S.C. § 1 .......... 7

9 U.S.C. § 3 .......... 2, 8

9 U.S.C. §§ 3–4 .......... 17

California Civil Code § 1642 .......... 9, 14

Federal Rule of Civil Procedure 12(b)(6) .......... 2, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Oracle America, Inc., Oracle International Corporation (collectively, "Oracle"), and Textura Corporation ("Textura" and collectively with Oracle, "Plaintiffs") bring claims against Mr. Mariano for violation of the Defend Trade Secrets Act ("DTSA") and breach of contract. As an initial matter, this Court need not even reach the fatal pleading deficiencies in Plaintiffs' claims against Mr. Mariano because they cannot proceed in court: Plaintiffs' claims against Mr. Mariano are subject to a binding arbitration agreement. Plaintiffs should be compelled to arbitration and this case stayed pending its resolution.

Plaintiffs cannot avoid arbitration. Mr. Mariano worked for Oracle from 2016 to 2021. As a condition of his employment, and without any opportunity for negotiation, Oracle required that he enter into two agreements as part of an "Acquired Employee Offer Packet." Plaintiffs' Complaint only mentions the first of these agreements, the Proprietary Information Agreement ("PIA") (Dkt. 1-1), and ignores the second agreement relevant to this motion, and dispositive of this action, the Employment Agreement & Mutual Agreement to Arbitrate ("Arbitration Agreement"). The Arbitration Agreement (i) mandates the arbitration of "any existing or future dispute or claim arising out of or related to [Mr. Mariano's] Oracle employment," (ii) delegates questions of arbitrability to arbitration, and (iii) contains an integration clause that supersedes all prior agreements.

Having forced Mr. Mariano to enter into the Arbitration Agreement, Plaintiffs cannot avoid its application. Plaintiffs tried to circumvent the Arbitration Agreement by omitting it from the Complaint and focusing instead on the PIA, claiming its permissive forum selection clause provides this Court with venue and jurisdiction. But as the Ninth Circuit Court of Appeals and numerous other courts have held, a permissive forum selection clause does not "conflict with or undermine [an arbitration] agreement's unambiguous statement identifying arbitrable claims...." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). Even if a conflict did exist, the Arbitration Agreement "contains the complete agreement between Oracle and [Mr. Mariano] regarding the subject of arbitration and alternative dispute resolution" and "supersedes any and all prior written ... agreements," which in this case includes the PIA. It therefore controls. Even assuming

*arguendo* there was some ambiguity regarding the Arbitration Agreement or PIA, because both were contracts of adhesion imposed on Mr. Mariano as unnegotiable conditions of his employment, they must be interpreted in Mr. Mariano's favor.

Because the Arbitration Agreement's validity and binding nature are indisputable, and because the Arbitration Agreement delegates questions of arbitrability to the arbitrator, compelling arbitration is warranted. Accordingly, pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, Plaintiffs' claims against Mr. Mariano must be stayed pending arbitration. The Court should additionally stay all deadlines during the consideration of this Motion.

Alternatively, if arbitration is not compelled and the claims against Mr. Mariano are not stayed, the Court should dismiss the asserted DTSA claim against Mr. Mariano pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Oracle's DTSA claim against Mr. Mariano should be dismissed because even though Oracle boldly asserts that "[t]his case involves a theft of thousands of trade secrets," Compl. ¶ 1, the Complaint fails to adequately plead a single trade secret, much less Mr. Mariano's misappropriation. Courts in this District routinely dismiss complaints containing far more specific details about the alleged trade secrets at issue and how or whether they were misappropriated.

Plaintiffs' trade secret claim should fail because as it relates to the allegations of the trade secrets themselves, the Complaint alleges (1) the "trade secrets" in broad, categorical terms, (2) fails to distinguish the alleged trade secret information from matters of general knowledge, and (3) fails to plead any facts that any alleged trade secret has independent economic value. Because Plaintiffs have failed to adequately plead even a single trade secret, that claim should be dismissed.

Plaintiffs' trade secret claim against Mr. Mariano also fails because Plaintiffs have failed to allege misappropriation by Mr. Mariano—inadvertently retaining limited material and working for a competitor (even if both true) without more are insufficient as a matter of law to support a DTSA claim. Unable to point to any actual misappropriation by Mr. Mariano, Oracle's Complaint goes for broke by attempting to rely on the inevitable disclosure doctrine, which has been rejected in California.

The Court should compel arbitration of Plaintiffs' claims against Mr. Mariano and stay the case, or alternatively, Plaintiffs' trade secret claim against Mr. Mariano should be dismissed for failure to state a claim.

## II. FACTUAL BACKGROUND[1]

### A. Mr. Mariano Previously Works At Textura, Which Oracle Purchased In 2016

From 2012 until 2016, Mr. Mariano was employed by Textura, which operated a payment management platform for the construction industry. *See* Declaration of Mark Mariano ("Mariano Dec.") ¶ 4. Mr. Mariano started with Textura as a Senior Business Analyst and later became a Manager of Client Services. *Id*.

In 2016, Oracle acquired Textura. *Id*. ¶ 5. After the acquisition, Mr. Mariano became an employee of Oracle where he worked in customer sales as a Manager of Client Services. *Id*.

### B. Upon Arrival At Oracle, Mr. Mariano Signs The "Proprietary Information Agreement" And The "Employment Agreement & Mutual Agreement To Arbitrate" Oracle Presented Him

After Oracle acquired Textura, it presented Mr. Mariano with an offer to join Oracle as a Manager of Client Services. Mariano Dec. Ex 1. The offer was contingent on Mr. Mariano signing and returning two agreements in an "Acquired Employee Offer Packet": the Arbitration Agreement and PIA. *Id.* Mr. Mariano was not given any opportunity to negotiate either agreement's terms. Mariano Dec. ¶¶ 8–9. Indeed, Oracle explicitly specified that it "c[ould not] accept [Mr. Mariano's PIA or Arbitration Agreement] if they ha[d] writing on them other than [Mr. Mariano's] signature and the date, or [] ha[d] been otherwise altered or amended." Mariano Dec. Ex. 1, at 2.

On July 5, 2016, without any chance of negotiation, Mr. Mariano signed the PIA. Mariano Dec. ¶ 8; Dkt. 1-1. The PIA "sets forth" Mr. Mariano's "responsibilities and obligations concerning confidential, proprietary and trade secret information[.]" Dkt. 1-1, at 2.

[1] Because a court must accept as true the allegations in a complaint, Mr. Mariano merely recites the Complaint's allegations without confirming or controverting their veracity. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[F]or the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true.").

The PIA contains a permissive forum selection clause establishing proper venue for actions arising in connection with the agreement. The clause states:

> I agree that any legal action or proceeding involving Oracle which is in any way connected with this agreement may be instituted in federal court in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County California. I agree to submit to the jurisdiction of, and agree that venue is proper in, the aforesaid courts in any such legal action or proceeding.

*Id*. ¶ 14. Oracle is defined as "Oracle Corporation, its subsidiaries (including but not limited to Oracle America, Inc.) and its affiliates." *Id*. at 2. The PIA does not contain an integration clause. *See id*.

On July 15, 2016, Mr. Mariano signed the Employment Agreement & Mutual Agreement to Arbitrate (again, the "Arbitration Agreement"). Mariano Dec. ¶ 9, Ex. 2.[2] The Arbitration Agreement was presented to Mr. Mariano at the same time as the PIA and as part of the same Acquired Employee Offer Packet. Mariano Dec. Ex. 1. As with the PIA, the Arbitration Agreement was presented to Mr. Mariano without occasion to negotiate any of the terms in the agreement. Mariano Dec. ¶¶ 8–9, Ex. 1, at 2. The Arbitration Agreement is between Mr. Mariano and "Oracle," again defined in the PIA to include "Oracle Corporation, its subsidiaries (including but not limited to Oracle America, Inc.) and its affiliates" (*i.e.*, all three plaintiffs in this case). *Id*. Ex. 2; Dkt. 1-1, at 2.

Although not mentioned or even acknowledged in the Complaint, the Arbitration Agreement has a section entitled "Mutual Agreement to Arbitrate," which is mandatory and broad in scope, and states:

> You and Oracle understand and agree that **any existing or future dispute or claim arising out of or related to your Oracle employment**, or the termination of that employment, **will be resolved by final and binding arbitration and that no other**

---

[2] The Court may consider the Arbitration Agreement in connection with Defendants' Motion. "On a motion to compel arbitration, the Court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Holl v. United Parcel Serv., Inc.*, 2017 WL 11520143, at *1 n.2 (N.D. Cal. Sept. 18, 2017) (citation and quotations omitted). The Arbitration Agreement, Plaintiffs' own document, is of uncontested validity. Indeed, Plaintiffs attached the Arbitration Agreement to correspondence they sent to Mr. Mariano regarding their allegations in the instant case. Mariano Dec. ¶ 14.

> **forum for dispute resolution will be available to either party**, except as to those claims identified below. The decision of the arbitrator shall be final and binding on both you and Oracle and it shall be enforceable by any court having proper jurisdiction.

Mariano Dec. Ex. 2, at 2 (emphases added). The section also incorporates the rules of the Judicial Arbitration & Mediation Services ("JAMS") and American Arbitration Association ("AAA"):

> The arbitration proceedings shall be conducted pursuant to the Federal Arbitration Act, and in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association or the Employment Arbitration Rules and Procedures adopted by Judicial Arbitration & Mediation Services ("JAMS"). The arbitrator will have all the powers a judge would have in dealing with any question or dispute that may arise before, during and after the arbitration.

*Id*. Both JAMS' and AAA's rules delegate questions of arbitrability to the arbitrator. *See* AAA Employment Rule 6(a); JAMS Employment Rule 11(b); *infra* § IV.A.2.

The Arbitration Agreement lists three narrow exceptions of claims that are not covered:

> 1. Claims under Title VII of the Civil Rights Act of 1964 or any tort related to or arising out of sexual assault or harassment, including assault and battery, intentional infliction of emotional distress, false imprisonment, or negligent hiring, supervision, or retention,
> 2. Claims for benefits under the workers' compensation, unemployment insurance and state disability insurance laws, and
> 3. Claims by you or by Oracle for temporary restraining orders or preliminary injunctions ("temporary equitable relief") in cases in which such temporary equitable relief would be otherwise authorized by law. In such cases where temporary equitable relief is sought, the trial on the merits of the action will occur in front of, and will be decided by, the arbitrator, who will have the same ability to order legal or equitable remedies as could a court of general jurisdiction.

Mariano Dec. Ex. 2, at 2.

Finally, the Arbitration Agreement has a broad integration clause, which states: "This Arbitration Agreement contains the complete agreement between Oracle and you regarding the subject of arbitration and alternate dispute resolution, and supersedes any and all prior written, oral, or other types of representations and agreements between Oracle and you, if any." *Id*. at 3.

### C. Over A Year After He Joins Procore, Oracle's Counsel Contacts Mr. Mariano Regarding His Employment At Oracle, And The Subject Matter Of This Lawsuit, And Resends Him A Copy Of The Arbitration Agreement

While at Oracle, Mr. Mariano began seeking out new employment opportunities in mid-September 2021. Mariano Dec. ¶ 11. Mr. Mariano worked at Oracle until October 29, 2021. *Id*.

Mr. Mariano's first day at Procore was on or about November 1, 2021. *Id.* ¶ 12.

In December 2022, more than a year after Mr. Mariano left Oracle, Oracle contacted him for the first time about certain Oracle-issued devices it believed that he had not returned. *Id.* ¶ 13. That same month, Mr. Mariano promptly returned two laptops to Oracle. *Id.*

Seven months later, on July 13, 2023, Mr. Mariano received a letter from Oracle's counsel via email. Mariano Dec. ¶ 14, Ex. 3. The letter stated that it was sent to address "concerns" regarding Mr. Mariano's "handling of Oracle proprietary information" in connection with his departure from Oracle. *Id.* Ex. 3, at 1. Oracle's counsel attached copies of the 2016 offer letter, PIA, and Arbitration Agreement to the July 13, 2023 letter. *Id.* Ex. 3.

### D. Plaintiffs File This Lawsuit, Which Is Expressly Covered By The Arbitration Agreement

Procore and Mr. Mariano worked in good faith for more than a year to address Oracle's concerns about its alleged proprietary information. Compl. ¶ 71.

Among other things, Mr. Mariano voluntarily submitted both his personal iCloud and Google Drive accounts to Plaintiffs for forensic examination. *Id.* ¶¶ 52, 60. Plaintiffs were able to review their contents, as well as their usage history—namely, whether the accounts and devices were used to transfer files to any other device or account. *Id.* ¶¶ 52, 60, 63.

Despite Defendants' extensive cooperation, Plaintiffs remained unsatisfied, and on October 25, 2024, just a few days shy of the three-year anniversary of Mr. Mariano's departure from Oracle, Plaintiffs hastily filed this suit. Plaintiffs bring claims against Procore and Mr. Mariano for violations of the DTSA and against Mr. Mariano for breach of the PIA. *Id.* ¶¶ 73, 93 *et seq.*

While Plaintiffs allege Procore and Mr. Mariano misappropriated their trade secrets, they do not provide any particularized descriptions of the trade secrets at issue. Instead, in a single paragraph, Plaintiffs vaguely refer to unidentified "confidential Oracle computer source code" and four broad categories of "confidential Oracle documents relating to Oracle's TPM and ERP integrations (the process of connection to a client's enterprise resource software)":

> (1) confidential and proprietary source code computer files, including python source code files and SQL database files related to specific ERP adapters developed by Oracle engineers; (2) confidential test plans, project plans, and implementation plans

> developed by Oracle engineers associated with integrations with various ERPs for specific Oracle client implementations; (3) confidential files reflecting Oracle client information, revenue projections, and other internal strategy documents related to Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents and presentations detailing the design and implementation of various Oracle ERP integrations.

*Id.* ¶ 37. Plaintiffs' discussion regarding the files purportedly retained by Mr. Mariano merely re-hashes these broad descriptions with conclusory assertions of their confidential nature and importance to Plaintiffs. *Id.* ¶¶ 53-57. The only other information Plaintiffs provide to identify their alleged trade secrets are certain file names, including a purportedly non-exhaustive list of 20 files on Mr. Mariano's iCloud—without any description of what they are—that Plaintiffs contend contain trade secrets. *Id.* ¶¶ 53-57, 60, 63-64. Again, however, Plaintiffs offer no specifics on these files aside from their MD5 Hash and one of four vague descriptors: "Source Code," "Customer List and Opportunities," "Research And Development Plans," and "Software Integration Plans." *Id.* ¶ 64.

## III. LEGAL STANDARD

"Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act ('FAA'), Title 9 U.S.C. §§ 1, *et. seq.*, may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration." *Alkutkar v. Bumble Inc.*, 2022 WL 4112360, at *4 (N.D. Cal. Sept. 8, 2022) (citation omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The court's role under the FAA "is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both answers are "yes," arbitration must be compelled. *Id.*

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Whalen v. Facebook, Inc.*, 2022 WL

19934419, at *1 (N.D. Cal. Apr. 11, 2022) (Tigar, J.) (noting "liberal federal policy favoring arbitration" (citation omitted)). If the parties to an arbitration agreement delegate to the arbitrator the question of whether the agreement covers the asserted claims, the court must enforce the terms of the agreement and send the arbitrability question to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019).

Under the FAA, the court must stay an action upon motion by one of the parties after finding that the claims can be referred to arbitration. Section 3 of the FAA provides:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

9 U.S.C. § 3. "If the issues in a case are within the reach of the Agreement, the court must, upon request by either party, grant a stay of the action pending arbitration." *Anderson v. Pitney Bowes, Inc.*, 2005 WL 1048700, at *2 (N.D. Cal. May 4, 2005) (citation and quotations omitted).

Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted[.]" Dismissal is available when a complaint fails to state a cognizable legal theory or fails to allege sufficient facts under a cognizable legal theory. *Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480, 487 (9th Cir. 2019). The court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

On a motion to dismiss a claim under the DTSA, "the burden is on Plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (quotation omitted).

## IV. ARGUMENT

### A. Plaintiffs' Claims Against Mr. Mariano Must Be Sent To Arbitration

"The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175

F.3d 716, 719 (9th Cir. 1999). "[T]he district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms." *Id.* at 720.

Here, a written arbitration agreement exists, governs over the PIA's permissive forum selection clause, and delegates questions of arbitrability to the arbitrator. Even if there were some ambiguity regarding the Arbitration Agreement or PIA, it must be resolved in Mr. Mariano's favor as both were contracts of adhesion. The Court should compel arbitration.

**1. An Arbitration Agreement Exists, And It Is Valid And Binding**

Mr. Mariano was presented with the Arbitration Agreement as part of his employment package to start at Oracle. Mariano Dec. ¶ 7. He signed the Arbitration Agreement on July 15, 2016. Mariano Dec. Ex. 2, at 3. Oracle is defined in the accompanying PIA as covering all three Plaintiffs in this case: "Oracle Corporation, its subsidiaries (including but not limited to Oracle America, Inc.) and its affiliates." Dkt. 1-1, at 2; *see also* Dkt. 5 (Plaintiffs' Certification of Interested Entities noting that Oracle Corporation is "parent and 100% owner of Plaintiffs Oracle America Inc., Oracle International Corporation, and Textura Corporation[.]"); *Ly v. Tesla, Inc.*, 2024 WL 4894297, at *8 (N.D. Cal. Nov. 25, 2024) (holding the arbitration agreement and nondisclosure agreement may properly be "considered together" under Cal. Civ. Code § 1642); *see also Fiorentine v. Marvell Semiconductor Inc.*, 2024 WL 3012805, at *6 (N.D. Cal. June 14, 2024) ("As the Arbitration Agreement and the [employee confidentiality agreement], along with other documents, constitute the terms of Fiorentine's employment with MSI, said writings must be interpreted 'together[.]'"); Cal. Civ. Code § 1642.

The Arbitration Agreement's validity and binding nature is beyond dispute. Plaintiffs have indicated they may raise the fact that their offer letter asked Mr. Mariano to "[p]lease return the signed documents ... no later than July 5, 2016," which was 10 days before the Arbitration Agreement's execution. Mariano Dec. Ex. 1, at 2; Ex. 2, at 3. This red herring may be readily dismissed. Nothing about the offer letter's polite request indicates that Oracle's offer of employment under the Arbitration Agreement expired on July 5, 2016. Even if it did, Plaintiffs cannot dispute that they nevertheless accepted it. After all, in addition to mandating arbitration, the "*Employment Agreement* & Mutual Agreement to Arbitrate" proceeded to govern Mr. Mariano's

employment for the next five years he worked at Oracle. *See* Mariano Dec. ¶¶ 9–10 (emphasis added); *see, e.g.*, *Luong v. Super Micro Computer, Inc.*, 2024 WL 4681605, at *1–2 (N.D. Cal. Nov. 4, 2024) (compelling arbitration in case where employee signed offer letter and acknowledgment form with arbitration agreement two days after offer letter's stated deadline). Indeed, Plaintiffs further ratified the Arbitration Agreement's enforceability (and relevance to this dispute) by attaching it to their pre-litigation demand letter to Mr. Mariano on July 2023. Mariano Dec. Ex. 3; *see Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (Cal. App. 1st Dist. 2015) (employer ratified and is bound by arbitration agreement it "authored" and "printed on [its] letterhead").

### 2. Plaintiffs And Mr. Mariano Delegated The Question Of Arbitrability To The Arbitrator And Therefore The Court Need Not Address Questions Of Scope

"[If] a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69.

Because the Arbitration Agreement exists and has not been superseded, questions about its scope, including whether or how it applies to the claims against Mr. Mariano, must be resolved in arbitration pursuant to the Arbitration Agreement's terms. *Id.* ("[A] court may not decide an arbitrability question that the parties have delegated to an arbitrator.").

Here, the Arbitration Agreement incorporates the JAMS and AAA rules, *see* Mariano Dec. Ex. 2, at 2, which courts routinely find is "clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th Cir. 2015) (holding incorporation of AAA rules delegated arbitrability); *see, e.g.*, *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1198–201 (9th Cir. 2024) (similar); *Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, at *6 (N.D. Cal. Dec. 17, 2015) (Tigar, J.) ("Because the Arbitration Provision provides that '[a]ll Disputes shall be resolved finally and exclusively by binding individual arbitration ... administered by [the AAA or JAMS] according to this provision and the applicable arbitration rules for that forum,' and both the applicable AAA and JAMS rules provide that the arbitrator shall decide arbitrability, the Court concludes that the incorporation of the AAA or JAMS

rules constitutes clear and unmistakable evidence that [the] parties agreed to arbitrate arbitrability." (citation and quotations omitted)).[3]

In fact, Oracle has already had courts in this Circuit find similar Oracle arbitration agreements delegated the question of arbitrability to an arbitrator. In *Oracle America, Inc. v. Myriad Group A.G.*, the Ninth Circuit held that Oracle's Community Source License delegated arbitrability by incorporating the United Nations Commission on International Trade Law (UNCITRAL) rules, which as the Ninth Circuit noted are "almost identical" in relevant part to the AAA rules incorporated here. 724 F.3d 1069, 1074–75 (9th Cir. 2013). In doing so, the Ninth Circuit emphasized that "[v]irtually every circuit" has found that the "incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Id.* at 1074–75. It further held that even though the arbitration clause contained a "carve-out" provision providing courts with "exclusive" jurisdiction over disputes involving intellectual property rights or arising out of a specific license agreement, those excepted claims also, "by definition," were claims "arising out of or relating to" the source license, as stated in the arbitration clause. *Id.* at 1075–76. Thus, the Ninth Circuit held, questions of arbitrability had "clearly and unmistakably" been delegated to the arbitrator by incorporation of the UNCITRAL rules and questions about whether claims fall within the carve-out provisions must be arbitrated. *Id.* at 1075–77.

Similarly, in *Lopes v. Oracle America, Inc.*, Oracle moved to compel arbitration in an employment suit brought in this District by a former employee. 2022 WL 4281354, at *1 (N.D. Cal. Sept. 15, 2022). The court agreed with Oracle and compelled arbitration, holding that "[t]he American Arbitration Association ('AAA') rules, which were incorporated in the Arbitration Clause at issue here, are usually applied as a clear and unmistakable delegation to the arbitrator to decide questions related to the scope of the arbitration agreement." *Lopes*, 2022 WL 4281354, at *5 n.1.

---

[3] *See also Gerlach v. Tickmark Inc.*, 2021 WL 3191692, at *4–5 (N.D. Cal. July 28, 2021) (same, AAA rules); *Alkutkar*, 2022 WL 4112360, at *8 n.2 (N.D. Cal. Sept. 8, 2022) (same, JAMS rules); *Singh v. Payward, Inc.*, 2023 WL 5420943, at **7–9 (N.D. Cal. Aug. 22, 2023) (same, JAMS rules).

Particularly relevant to this Motion, Oracle argued in still another action in this District that its own arbitration agreement, which incorporated JAMS rules, delegated the question of whether claims related to Oracle's PIA were arbitrable to the arbitrator. As Oracle asserted:

> To the extent Plaintiff argues that the PIA provides an independent basis for her to litigate her arbitration claims in this Court, she is wrong. If there are any issues relating to the PIA, it relates to the parties' discovery dispute, the subject of which is clearly within the Arbitrator's authority. ***Whether the arbitration agreement covers claims by the PIA is also within the arbitrator's authority to decide***.

*See Richter v. Oracle America, Inc.*, Defendant Oracle America, Inc.'s Motion to Dismiss Plaintiff's Complaint or in the Alternative, to Compel Plaintiff's Claims to Arbitration, Case No. 5:22-cv-04795, Dkt. 23, at 16, (N.D. Cal. Sept. 26, 2022) (emphasis added); *see also Richter v. Oracle Am., Inc.*, 2023 WL 1420722, at *4 (N.D. Cal. Jan. 31, 2023) (granting Oracle's motion to dismiss on other grounds).

* * *

Because a valid arbitration agreement binding Plaintiffs and Mr. Mariano indisputably exists, and because the question of arbitrability of this dispute was delegated to the arbitrator, the Court need go no further and should compel arbitration of the claims against Mr. Mariano. *See Brennan*, 796 F.3d at 1132 ("[A] court must enforce an agreement that ... delegates arbitrability questions to the arbitrator...."); *In re BAM Trading Servs. Inc. Sec. Litig.*, 2024 WL 2520432, at *5 (N.D. Cal. May 14, 2024) (compelling arbitration because incorporation of AAA rules is "clear and unmistakable evidence" that parties delegated the question of arbitrability to arbitrator).

### 3. Should The Court Determine That It Must Decide The Issue Of Arbitrability Itself, It Would Find That Plaintiffs' Claims Against Mr. Mariano Fall Within The Scope Of The Arbitration Agreement

Even if the Court were to decide the issue of arbitrability itself, instead of delegating the question to the arbitrator as the Arbitration Agreement requires, the result is no different. "The FAA requires the court to compel arbitration of issues covered by the arbitration agreement." *Alkutkar*, 2022 WL 4112360, at *4 (citation omitted).

Plaintiffs' claims fall well within the Arbitration Agreement's broad scope. As plainly stated in the Arbitration Agreement, it broadly covers "any existing or future dispute or claim arising out of or related to [Mr. Mariano's] Oracle employment[.]" Mariano Dec. Ex. 2, at 2. The only claims

excluded from the Arbitration Agreement's far-ranging reach are claims for discrimination, harassment, workers' compensation, and temporary equitable relief, none of which are at issue here. *Id*. The Complaint against Mr. Mariano alleges that "[a]fter his employment with Oracle ended," Mr. Mariano "absconded with ... Oracle's trade secret documents...." Compl. ¶ 1. The claims unquestionably "arise" out of Mr. Mariano's employment with Oracle.

Even Plaintiffs' prior actions in this District appear to concede that their claims against Mr. Mariano are covered by the Arbitration Agreement. *See supra* § IV.A.2. Although Plaintiffs now omit any reference to the Arbitration Agreement in their Complaint, when they first contacted Mr. Mariano about the issues underlying their claims, they sent Mr. Mariano a copy of the Arbitration Agreement. *See* Mariano Dec. Ex. 3. Plaintiffs' claims against Mr. Mariano must be compelled to arbitration.

**4. The Arbitration Agreement Governs Over The PIA**

Based on meet and confer discussions, Defendants anticipate that Plaintiffs in Opposition may attempt to argue the PIA's permissive forum selection clause somehow undercuts the binding nature of the Arbitration Agreement. Not so.

At the outset, because the Arbitration Agreement delegates arbitrability, the Court need not reach the question of a conflict. *See supra* § IV.A.2. In an attempt to avoid clear-cut delegation, Plaintiffs have suggested they intend to argue the Supreme Court's holding in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) indicates otherwise. They are mistaken. *Coinbase* involved two separate agreements, a general User Agreement to cover Coinbase's service and a later Official Rules agreement to govern a Coinbase sweepstake. *Id.* at 146. The earlier User Agreement mandated arbitration and delegated questions of arbitrability, and the later Official Rules provided for "sole jurisdiction" in California Courts. *Id.* at 146–47. Faced with these two potentially conflicting agreements, the Court held that instead of delegating arbitrability at the outset, first "a court must decide which contract governs" as "hold[ing] otherwise would ... impermissibly elevate a delegation provision over other forms of contract." *Id.* at 152 (cleaned up). Here, both agreements were required components of Mr. Mariano's "Acquired Employee Offer Packet," *see* Mariano Dec. Ex. 1, and "may properly be considered together." *Ly*, 2024 WL 4894297, at *8; *Fiorentine*, 2024 WL

3012805, at *6; Cal. Civ. Code § 1642. Given that they are part of the same employment package, as the Court noted in *Coinbase*, "where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration." 602 U.S. at 152.

Even if the Court were to consider the interplay between the Arbitration Agreement's mandate and the PIA's forum selection clause, there is no conflict. The Arbitration Agreement requires arbitration of "any existing or future dispute or claim arising out of or related to [Mr. Mariano's] Oracle employment" except for certain specified claims not relevant to this Action. Mariano Dec. Ex. 2, at 2. The PIA merely provides that "any legal action or proceeding involving Oracle ... may be instituted in federal court in San Francisco or San Jose, California[,]" and that Mr. Mariano agrees to the venue and jurisdiction there. Dkt. 1-1 ¶ 14. The use of the words "'legal suit, action, or proceeding' in the forum-selection provision[], instead of the broader terms 'dispute, controversy, or claim' indicate that the forum-selection provision[] appl[ies] '*if* the parties litigate, not that litigation is required.'" *Roma Mikha, Inc. v. S. Glazer's Wine & Spirits, LLC*, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023) (citation omitted). Essentially, "the provisions work in tandem: the arbitration provision[] designate[s] the procedure for resolving disputes, i.e., arbitration, and the forum-selection provision[] designate[s] the venue of litigation should any become necessary," *id.* (internal quotations omitted), such as in the cases that were explicitly carved out of the Arbitration Agreement's mandate. Mariano Dec. Ex. 2, at 2. "[N]umerous state and federal courts have similarly harmonized forum-selection and arbitration provisions." *Roma*, 2023 WL 3150076, at *6 (listing cases).

The Ninth Circuit's decision in *Mohamed v. Uber Technologies*, 848 F.3d 1201 (9th Cir. 2016) is instructive. In *Mohamed*, the court compelled arbitration despite an even broader venue provision, which granted San Francisco courts "exclusive jurisdiction" over "any disputes, actions, claims or causes of action." *Id.* at 1209. The court reasoned that the venue provision did not "conflict with or undermine the [arbitration] agreement's unambiguous statement identifying arbitrable claims" because it was "intended ... to identify the venue for any other claims that were not covered by the arbitration agreement." *Id.* In applying *Mohamed*, this Court has likewise

refused to find that similar "exclusive jurisdiction" provisions rendered an arbitrability-delegating arbitration provision ambiguous, noting they act as a "catch-all rather than creat[e] a conflict...." *Dillion v. BET Information Sys, Inc.*, 2019 WL 12338059, at *4–5 (N.D. Cal. Feb. 19, 2019) (Tigar, J.).

Finally, even if there were a conflict between the PIA and Arbitration Agreement, the Arbitration Agreement plainly controls. Here, the Arbitration Agreement expressly provides that it "contains the complete agreement between Oracle and you regarding the subject of arbitration and alternate dispute resolution, and supersedes any and all prior written, oral, or other types of representations and agreements between Oracle and you, if any." Mariano Dec. Ex 2, at 3. The "broad language of the arbitration agreement, combined with the explicit statement that [the agreement was] the final, integrated contract between the parties, indicates that the intent of the parties, at the time of the contract's conclusion, was to submit all disputes relating to the contractual relationship ... to binding arbitration." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *6 (N.D. Cal. July 6, 2011); *see also Kaplan v. Athletic Media Co.*, 705 F. Supp. 3d 992, 1002–03 (N.D. Cal. 2023) (new terms of service, which included an arbitration agreement, superseded prior terms and compelled the case to arbitration); *see also Verge Media Cos., Inc. v. Maccini*, 2011 WL 13220726, at *5–13 (C.D. Cal. Oct. 17, 2011) (sending claims to arbitration due to broad employment agreement arbitration clause in case involving interpretation of two agreements, one permitting cases to be brought in court and the other mandating arbitration); *Yoon v. Applied Underwriters, Inc.*, 2021 WL 4318321, at *2–3 (C.D. Cal. Mar. 12, 2021) (holding that agreement with integration clause stating that it "supersedes" all prior agreements was the binding agreement in employment case involving three separate arbitration agreements signed by employee). Further, the Arbitration Agreement provides that it "supersedes any and all prior written ... agreements between Oracle and [Mr. Mariano]," which is of particular relevance given that it was executed 10 days after the PIA. Mariano Dec. ¶¶ 8–9, Ex. 2, at 3; *see Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) ("The general rule is that...the latter contract prevails to the extent they are inconsistent."), *aff'd*, 602 U.S. 143 (2024).

**5. Any Alleged Ambiguities In The Arbitration Agreement And PIA, Which Were Presented To Mr. Mariano As Adhesion Contracts, Must Be Construed Against Oracle**

There are no ambiguities regarding the Arbitration Agreement's validity, that it governs over the PIA, its delegation of the arbitrability question to the arbitrator, or even its scope and whether it covers Plaintiffs' claims against Mr. Mariano (should the Court decide even to address the last issue). Even assuming *arguendo* ambiguities do exist, both the Arbitration Agreement and the PIA are contracts of adhesion and must be interpreted against Plaintiffs.

Under California law, agreements that are required as a condition of employment and for which an employee is not provided any opportunity to negotiate the terms are contracts of adhesion. *See, e.g.*, *Cornejo v. Spenger's Fresh Fish Grotto*, 2010 WL 1980236, at *6 (N.D. Cal. May 17, 2010) (arbitration agreement required as a "condition of employment ... with no opportunity to negotiate any of the terms" was a "contract of adhesion"); *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) ("A contract of adhesion is a standardized contract [that is] imposed and drafted by the party of superior bargaining strength and gives the subscribing party only the opportunity to adhere to the contract or reject it." (citation and quotations omitted)).[4] Plaintiffs cannot dispute that the Arbitration Agreement and the PIA are contracts of adhesion. Mr. Mariano's offer to join Oracle was expressly contingent upon his signing of both agreements and he was expressly told he could not alter them:

> In order to accept this offer and begin working for Oracle, please sign and return the Employment Agreement and Mutual Agreement to Arbitrate and the Proprietary Information Agreement which you will find in the Acquired Employee Offer Packet ... ***Please note that we cannot accept your documents if they have*** writing on them other than your signature and the date, or that have ***been*** otherwise altered or ***amended***. We appreciate your assistance in this regard.

Mariano Dec. Ex 1 (emphases added).

---

[4] *See also Dike v. Zara USA, Inc.*, 672 F. Supp. 3d 822, 829 (N.D. Cal. 2023) ("A term or contract of adhesion indicates a standardized provision or agreement which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (citation and quotations omitted)); *Chee v. Tesla Inc.*, 2024 WL 1898434, at *3 (N.D. Cal. Apr. 30, 2024) (holding contract that employer presented to employee "on a take-it-or-leave-it basis with no opt-out provision" was a "contract of adhesion").

Because both agreements are contracts of adhesion, any ambiguities in or questions about the agreements and whether arbitration is required here must be interpreted against Plaintiffs. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) ("The rule that any ambiguities caused by the draftsman of the contract must be resolved against that party applies with peculiar force in the case of the contract of adhesion."); *see also Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *5 (N.D. Cal. June 1, 2018) ("In contracts of adhesion, ambiguities are resolved against the drafter."). As such, the claims against Mr. Mariano must be sent to arbitration.

**B. Plaintiffs' Claims Against Mr. Mariano Should Be Stayed Pending Arbitration**

Because Plaintiffs must arbitrate their claims against Mr. Mariano, the FAA requires that the claims against him be stayed pending resolution of the underlying arbitration. *See* 9 U.S.C. §§ 3–4; *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 938 (N.D. Cal. 2023) ("The FAA 'requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement.'" (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014))).

The Court should also stay discovery and other case deadlines while this Motion is pending, for the sake of judicial economy and efficiency for the parties. Staying the case, including discovery, until it is determined whether Plaintiffs' claims against Mr. Mariano are arbitrable "furthers the goal of efficiency for the court and litigants." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Courts in this District routinely stay discovery when a motion to compel arbitration is pending. *See, e.g., Stiener v. Apple Comp., Inc.*, 2007 WL 4219388, at *1 (N.D. Cal. Nov. 29, 2007) ("In the interests of conserving the resources of the parties, a short stay of the initial scheduling obligations and discovery pending the determination of the motion to compel arbitration is therefore prudent."); *Mahamedi IP L., LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *2 (N.D. Cal. Feb. 14, 2017) (granting in part motion to stay discovery until ruling on motion to compel arbitration).

**C. Alternatively, The Court Should Dismiss The Defend Trade Secrets Act Claim Against Mr. Mariano For Failure To State A Claim**

To state a DTSA claim, a plaintiff must allege: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the

plaintiff." *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *3 (N.D. Cal. Sept. 24, 2024) (citation omitted). Here, Plaintiffs' DTSA claim fails for two independent reasons. First, Plaintiffs fail to allege any trade secrets with the required particularity and detail. Second, Plaintiffs fail to allege any non-conclusory facts establishing that Procore misappropriated any trade secret.

**1. Plaintiffs Fail To Allege Trade Secrets With Required Particularity**

"To prove that Plaintiff[s are] the owner[s] of a trade secret, [they] 'need not spell out the details of the trade secret,' but must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'" *CleanFish*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020). Further, a plaintiff must detail "how any individual component [trade secret] part ..., standing on its own, has any independent economic value ... different from the value that [plaintiff] attaches to its [product] as a whole." *GENFIT S.A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21, 2022). "On a motion to dismiss, the burden is on Plaintiff[s] to identify protectable trade secrets and '[show] that they exist.'" *CleanFish*, 2020 WL 4732192, at 3 (citation omitted).[5]

Despite alleging "thousands" of trade secrets are at issue, Compl. ¶ 1, Plaintiffs' complaint does not adequately plead any. Instead, Plaintiffs allege four broad categories of purportedly confidential information. *Id.* ¶ 37. The allegations are insufficient as a matter of law because the alleged trade secrets are broad categories that Plaintiffs have failed to separate from matters of general knowledge. Plaintiffs also have failed to allege the independent economic value of any trade secret. Accordingly, dismissal is appropriate.

[5] *See also Lamont v. Conner*, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion to dismiss where "Plaintiff's description of his trade secrets … are not plead[ed] with sufficient particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019) (same); *Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (same); *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same).

(a) <u>Plaintiffs' Broad Categories And Vague Descriptions Of Alleged Trade Secrets Are Insufficient As A Matter Of Law</u>

Plaintiffs fail to identify any alleged trade secrets with the specificity required to survive a motion to dismiss. Indeed, Plaintiffs only allege that their trade secrets pertain to confidential information within one of four broad categories:

> (1) confidential and proprietary source code computer files, including python source code files and SQL database files related to specific ERP adapters developed by Oracle engineers; (2) confidential test plans, project plans, and implementation plans developed by Oracle engineers associated with integrations with various ERPs for specific Oracle client implementations; (3) confidential files reflecting Oracle client information, revenue projections, and other internal strategy documents related to Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents and presentations detailing the design and implementation of various Oracle ERP integrations.

Compl. ¶ 37.

These allegations fail as a matter of law. "'[C]atchall' categories of the kinds of trade secrets that might be at issue" "do not clearly refer to tangible trade secrets as required." *Natl. Specialty Pharm., LLC v. Padhye*, 2024 WL 2206336, at *4 (N.D. Cal. May 16, 2024) ). These alleged trade secrets are at once improperly categorical and open-ended. For example, as alleged, they would include every file related to an open-ended set of ERP adapters; test plans, project plans, and implementations plans related to any client project; any client, revenue, or strategy documents "related to Oracle's TPM and ERP integrations"; and perhaps any and all Oracle internal design and implementation documents and presentations for unidentified ERP integrations. Courts have repeatedly held that such generalized categories are inadequate at the pleading stage. *See, e.g.*, *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("[H]igh-level overview of ... purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the propagation of radio signals from stratospheric balloon-based transreceivers'" did not satisfy Rule 8 pleading standards); *Natl. Specialty Pharm.*, 2024 WL 2206336, at *4 ("'[C]atchall' categories of the *kinds* of trade secrets that might be at issue" "do not clearly refer to tangible trade secrets as required."); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023) (Plaintiff alleges "generic list[s] of categories of various types of information and a high-level overview of [their] purported trade secrets," but this level of general[it]y is insufficient to adequately

identify a trade secret….”); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144-46 (2019) (dismissing far more detailed trade secret allegations than here for "resembl[ing] ... broad categories of information [rather] than ... specific descriptions" and requiring the Plaintiff "allege with greater specificity the types of trade secrets that were misappropriated and the exact technology to which they pertain."); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (Allegations setting out "purported trade secrets in broad, categorical terms" that are merely "descriptive of the types of information that generally *may* qualify as protectable trade secrets" do not state a claim); *Via Techs., Inc. v. Asus Computer Int'l*, 2016 WL 1056139, at *3 (N.D. Cal. Mar. 17, 2016) ("[T]he disclosure claims that *all* of VIA's analog and digital schematics are trade secrets in their entirety ... the disclosure gives Defendants—and the court—practically no guidance on precisely what VIA claims as its trade secrets."); *Becton, Dickinson and Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (dismissing open-ended categorical trade secret identification).

The Court's analysis in *Becton* is instructive. In *Becton*, a trade secret case related to medical technology software, the plaintiff alleged defendants "downloaded one or more categories of [trade secret] information," including "design review templates," "fluidics design files," and "source code files." *Id.* at *3. Plaintiff even went further to provide "examples of confidential and proprietary information related to [the product] and other [similar products]." *Id.* The court still found them insufficient, noting the categories were "too broadly stated to identify the trade secrets on which Becton's claims are based," and that plaintiff's provided examples failed to narrow the trade secrets, in part because they encompassed files unrelated to the product at issue. *Id.* at *3.

Such is the case here. Beginning at paragraph 53 of their Complaint, Plaintiffs include references to a few file names purportedly to provide detail regarding the four categories of asserted trade secrets. Compl. ¶ 52 (referencing the same four "trade secret files and documents concerning Oracle's TPM solution, ERP integrations, customer-specific implementations, and detailed client information"). This information does not help Plaintiffs' cause.

Even where the Complaint purports to list certain .zip files, source code modules, and files by name, Compl. ¶¶ 53-57, 60, 63-64, there is no detail on what they are, and such information is

insufficient to provide "reasonable notice of the issues which must be met at the time of trial [or] reasonable guidance in ascertaining the scope of appropriate discovery." *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *5–6 (N.D. Cal. Oct. 24, 2013) (quotations and citation omitted).[6] Plaintiffs' file names are naked and lack reference to any part of the files or code or the alleged trade secrets, algorithms or functionality they contain. Accordingly, they may be readily dismissed. *See, e.g., Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016) ("[I]dentifying documents alone would not be an adequate substitute for detailed identification of the trade secrets therein, since review of the documents may not inform Defendants as to what precisely Plaintiff is asserting is a trade secret."); *Khoros, LLC v. Lenovo (United States), Inc.*, 2020 WL 12655516, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing source code allegations as inadequate because it was unclear "whether this source code merely means the code behind Khoros's software, behind a part of its software, or something else. Sometimes, Khoros appears to connect this source code to the database model specifically. . . . Sometimes, though, it treats them as separate.").

Finally, to the extent paragraphs 53–57, 60, and 63–64 purport to be exemplary details of the four broad trade secret categories above, or even if they do not, they confirm that Plaintiffs' trade secrets are impermissibly open-ended and that Oracle has failed to delineate their boundaries. Compl. ¶¶ 53 ("For example, those files include"); 54 ("Those files also include"); 55–57 (same); 60 ("For example"); 63 ("including at least"); 64 ("numerous Oracle trade secret files, such as the following"). *CleanFish*, 2020 WL 4732192, at *3 (dismissing trade secret claim for relying on non-limiting examples); *Becton*, 2018 WL 2298500, at *3 ("[A] number of the categories are preceded by the phrases 'such files included' and 'such as,' thereby further expanding the scope of the allegations in which the categories are contained.").

[6] The cases where source code references have been found to be sufficient involved the plaintiff, in addition to listing the source code name, also alleging "the code's associated algorithms, and its architecture," something Plaintiffs have not done here. *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015).

(b) Plaintiffs Fail To Distinguish Any Trade Secrets From Matters Of General Knowledge

Even setting aside the facial deficiency of Plaintiffs' categorical trade secret descriptions, Plaintiffs still fail to "describe the subject matter of [their] trade secret[s] with sufficient particularity to separate [them] from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *CleanFish*, 2020 WL 4732192, at *3 (citation omitted); *see also AlterG, Inc.*, 388 F. Supp. 3d at 1145 (dismissing trade secret claim on same grounds).

The alleged trade secrets at issue relate to Plaintiffs' payment software, TPM, which Plaintiffs admit has been publicly sold since at least 2016. *Id.* ¶ 3. Plaintiffs make no effort to identify the boundaries of which aspects of TPM are public and which are not, and the Complaint's boilerplate recitation of zip files, source code modules, and files provides no further relevant information. Compl. ¶¶ 60. Based on the allegations in the Complaint, one is left guessing what portion of these alleged "source code computer files," "test plans," "project plans," "internal strategy documents," and "presentations" are distinct from information that is generally known. Compl ¶ 37. In fact, although Plaintiffs list alleged "Oracle trade secret files," such as in paragraph 64 of the Complaint, they provide no details about what these files are or why and how they are proprietary beyond vague two, three, and four word descriptors: "Source Code," "Customer List and Opportunities," "Research and Development Plans," and "Software Integration Plans." *CleanFish*, 2020 WL 4732192, at *3 (dismissing trade secret claim, finding that plaintiff failed to distinguish alleged customer list "from matters of general knowledge" even where the complaint included additional detail that the list contained "key contacts, supplier and client identities with direct telephone numbers, addresses, service areas, internal substantial analyses of customers' product preferences, units purchased, buying patterns" and other items).

In sum, Plaintiffs' allegations of four categorical trade secrets "do[] not describe trade secrets with sufficient particularity to separate them from anything." *RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023); *see also WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 1221960, at *4 (N.D. Cal. Mar. 21, 2024) (dismissing trade secret claims that were "not sufficient to separate matters of general knowledge in the trade or of special

knowledge of those persons ... skilled in the trade from non-public information."). Because Plaintiffs' broad categorial descriptions and mere references to file names make it impossible to tell what information is and is not public, Plaintiffs have failed to meet their "burden ... to identify protectable trade secrets and show that they exist." *CleanFish, LLC*, 2020 WL 4732192, at *3; *Space Data Corp.*, 2017 WL 5013363 at *2 ("[P]laintiff must describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade" (internal quotation omitted)). Dismissal is appropriate.

(c) Plaintiffs Fail To Plead Facts Establishing The Independent Economic Value Of Any Alleged Trade Secrets

Plaintiffs' trade secret cause of action further fails because with respect to the alleged trade secrets, they have failed to "adequately allege how any individual component part ..., standing on its own, has any independent economic value ... different from the value that [Plaintiffs] attach[] to its [software] as a whole." *GENFIT*, 2022 WL 195650, at *3 (dismissing DTSA claim where plaintiff had not alleged whether "each component" part was "itself economically valuable"); *compare* Complaint ¶¶ 37 (failing to discuss alleged independent economic value of any particular alleged trade secret category); 58 (unidentified trade secrets are "extremely valuable to Oracle"); 53–57, 65 (repeating conclusory statement that "confidential" files developed by Oracle are "critical to [its] success in the marketplace" because of their competitive value); 74–75 (conclusory allegations of value).

Unsurprisingly, given their reliance on describing their trade secrets through broad categories and vague descriptors, Plaintiffs say nothing about the economic value of the particular trade secret information at issue. Plaintiffs' failure to specifically tie the alleged secrets to plausible allegations of independent economic value is another ground for dismissal. *See GENFIT*, 2022 WL 195650, at *3; *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1053 (N.D. Cal. 2020); *see also Cisco Sys., Inc. v. Chung*, 2020 WL 4505509, at *6 (N.D. Cal. Aug. 5, 2020) ("While plaintiff does allege that its 'misappropriated source code' reflects engineers development efforts, including 'testing and debugging,' ... plaintiff neglects any explanation about how its source code for debugging a user interface itself maintains independent economic value.").

**2. Plaintiffs Fail To Allege Misappropriation By Mr. Mariano**

In addition to not adequately identifying trade secrets, the Complaint fails to plausibly allege any misappropriation by Mr. Mariano. Plaintiffs' misappropriation claim is premised on its vague allegation that Mr. Mariano had (but has since returned) two Oracle-issued laptops, and that certain Oracle files were uploaded to Mr. Mariano's personal accounts where they were "copied over" to Mariano's Procore laptop. Compl. ¶¶ 51-52, 58, 63. This is insufficient.

At the outset, "allegations that former employees ... failed to return lawfully acquired information are insufficient by themselves to establish misappropriation ... under the DTSA." *Apple Inc. v. Rivos, Inc.*, 2023 WL 5183034, at *7 (N.D. Cal. Aug. 11, 2023); *see also Norsat Int'l, Inc. v. B.I.P. Corp.*, 2014 WL 2453034, at *6 (S.D. Cal. May 30, 2014) ("[P]ossession of trade secrets by a departing employee is not sufficient to establish misappropriation or show injury.").

Despite extensive (and voluntarily provided) pre-litigation discovery into Mr. Mariano's returned devices and personal accounts, Compl. ¶¶ 52, 60-62, the Complaint fails to allege any specific facts indicating Mr. Mariano transferred or used any of Plaintiffs' material, as opposed to it being the incidental result of automatic cloud syncing. The only actions Plaintiffs allege Mr. Mariano took with regard to Oracle computers (not any particular trade secrets) are (i) "modif[y]" unspecified purported Oracle material at some point after departing Plaintiffs, "including on November 12, 2021" (Compl. ¶ 60); (ii) perform a "factory reset" of a purported Oracle MacBook in August 2022—four months before Oracle even reached out for the first time to request its return) (*id.* ¶ 62); and (iii) power on the ***already reset*** MacBook two months later (*id.*).

These do not suggest anything more than Mr. Mariano's incidental possession, and "mere possession ... does not support an inference that [defendant] has disclosed or used the information[.]" *Apple Inc.*, 2023 WL 5183034, at *7; *see also Power Integrations, Inc. v. De Lara*, 2020 WL 1467406, at *19 (S.D. Cal. Mar. 26, 2020) ("Both state and federal courts in California have held that a plaintiff must prove more than a defendant's mere possession of trade secrets."). Plaintiffs' failure to allege facts that Mr. Mariano used any alleged trade secrets, such as to develop any Procore products, or otherwise, warrants dismissal.

(a) Plaintiffs Cannot Rely On The Inevitable Disclosure Doctrine To Allege Misappropriation By Mr. Mariano

Lacking evidence that Mr. Mariano used Plaintiffs' trade secrets or that Defendants' products are based on any of Plaintiffs' inadequately pleaded trade secret information, Plaintiffs ask the Court improperly to infer misappropriation merely because Mr. Mariano's role at Procore is similar to his old job at Procore. Compl. ¶¶ 5 ("Mariano's work at Procore is directly related to his work at Oracle"), 49 (alleging Mr. Mariano had "front row seat" to Plaintiffs' development of payment software).

This is an improper attempt by Oracle to save its trade secret claim against Mr. Mariano by relying on the inevitable disclosure doctrine. It has no place under California law and should be rejected: "[A] threat of misappropriation cannot, as a matter of California law, be inferred from the fact [defendant], upon voluntarily terminating his employment ... immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties...." *Les Concierges, Inc. v. Robeson*, 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("California does not recognize the 'inevitable disclosure doctrine,' under which an employee may be enjoined by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." (quotations omitted)); *UCAR Tech. (USA) Inc. v. Yan Li*, 2017 WL 6405620, at *3 (N.D. Cal. Dec. 15, 2017) ("California courts have resoundingly rejected claims based on the 'inevitable disclosure' theory."); *see also Pellerin v. Honeywell Intern., Inc.*, 877 F. Supp. 2d 983, 989-90 (S.D. Cal 2012) ("alleging mere possession of trade secrets is not enough" and noting "California does not recognize the 'inevitable disclosure doctrine'" (citations omitted)).

## V. CONCLUSION

Mr. Mariano respectfully requests that the Court compel arbitration of Plaintiffs' claims against him and stay this case and all discovery and deadlines pending arbitration. In the alternative, Mr. Mariano respectfully requests that the Court dismiss the DTSA claim against him for failure to state a claim upon which relief can be granted.

DATED: December 20, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Michael B. Carlinsky

Michael B. Carlinsky (admitted *pro hac vice*)
michaelcarlinsky@quinnemanuel.com
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
Fax: (212) 849-7000

David A. Nelson (admitted *pro hac vice*)
davenelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Fax: (312) 705-7401

David Elihu (Bar No. 303043)
davidelihu@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100

Jodie Cheng (Bar No. 292330)
jodiecheng@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Fax: (415) 875-6700

*Attorneys for Defendant Mark Mariano*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 20th day of December 2024, all counsel of record who are deemed to have consented to electronic services are being served with a copy of this Document via email.

*/s/ Michael B. Carlinsky*