1    QUINN EMANUEL URQUHART &
     SULLIVAN, LLP
2    Michael B. Carlinsky (admitted *pro hac vice*)
     michaelcarlinsky@quinnemanuel.com
3    295 5th Avenue
     New York, NY 10016
4    Telephone:  (212) 849-7000
     Facsimile:  (212) 849-7100
5
     David A. Nelson (admitted *pro hac vice*)
6    davenelson@quinnemanuel.com
     191 N. Wacker Drive, Suite 2700
7    Chicago, IL 60606
     Telephone:  (312) 705-7400
8    Facsimile:  (312) 705-7401

9    Attorneys for *Defendants Procore*
     *Technologies, Inc. and Procore Payment*
10   *Services, Inc.*

11   (A complete list of counsel appears in the
     signature block)
12
                      UNITED STATES DISTRICT COURT
13
                     NORTHERN DISTRICT OF CALIFORNIA
14
                             OAKLAND DIVISION
15
     ORACLE AMERICA, INC., ORACLE          Case No. 4:24-cv-07457-JST
16   INTERNATIONAL CORPORATION, and
     TEXTURA CORPORATION,                  **PROCORE DEFENDANTS' NOTICE OF**
17                                         **MOTION AND MOTION TO STAY**
               Plaintiffs,                 **PENDING ARBITRATION OF CLAIMS**
18                                         **AGAINST MR. MARIANO OR**
           vs.                             **ALTERNATIVE MOTION TO DISMISS**
19
     PROCORE TECHNOLOGIES, INC.,           **MEMORANDUM OF POINTS AND**
20   PROCORE PAYMENT SERVICES, INC.,       **AUTHORITIES IN SUPPORT THEREOF**
     AND MARK MARIANO,
21                                         **[PROPOSED] ORDER**
               Defendants.
22

23

24                                         Date:      February 6, 2025
                                           Time:      2:00 p.m.
25                                         Location: Courtroom 6
                                           Judge: Honorable Jon S. Tigar
26
                                           **ORAL ARGUMENT REQUESTED**
27

28

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 6, 2025, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 6 at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Defendants Procore Technologies, Inc. and Procore Payment Services, Inc. (collectively "Procore"), by and through their attorneys will, and hereby do, move for an order:

(1) Staying the action in its entirety pending the resolution of arbitration between Plaintiffs and Defendant Mark Mariano; or

(2) In the alternative, dismissing the action in its entirety with respect to Procore for Plaintiffs' failure to state a claim against Procore in its Complaint.

Procore also respectfully requests that the Court stay all discovery and case scheduling deadlines pending the resolution of this Motion.

This Motion is made on the grounds that, as set forth in more detail in Mr. Mariano's motion to compel arbitration, a valid and binding arbitration agreement exists and requires that Plaintiffs arbitrate their claims against Mr. Mariano. Because Plaintiffs' lone claim against Procore depends on their claims against Mr. Mariano, the Court should stay this case while it sends the claims against Mr. Mariano to arbitration. Because the claims against Mr. Mariano must be arbitrated and should not be entertained in federal court, the Court should stay all case deadlines while it considers this Motion. In the alternative, the Court should dismiss Plaintiffs' claim under the Defend Trade Secrets Act (DTSA) against Procore for failure to state a claim pursuant to Rule 12(b)(6).

Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, all pleadings and records on file, those matters of which the Court may take judicial notice, and any such other argument or evidence presented at or before the hearing.

1

## <u>TABLE OF CONTENTS</u>

2                                                                                           <u>Page</u>

3   I.     PRELIMINARY STATEMENT ................................................................................1

4   II.    FACTUAL BACKGROUND ...............................................................................3

5          A.     The Parties .............................................................................................3

6                 1.     Procore ........................................................................................3

7                 2.     Oracle ..........................................................................................4

8                 3.     Mr. Mariano ...............................................................................5

9          B.     Plaintiffs File This Litigation ...............................................................5

10  III.   LEGAL STANDARD ..........................................................................................6

11  IV.    ARGUMENT .......................................................................................................7

12         A.     The Claims Against Procore Should Be Stayed Pending Arbitration ......................7

13                1.     Plaintiffs Would Not Suffer Damage If The Stay Is Granted ......................7

14                2.     Procore Would Face Hardship And Inequity If The Stay Is Denied.............8

15                3.     A Stay Would Promote The Orderly Course Of Justice ...............................9

16         B.     Alternatively, the Court Should Dismiss The Defend Trade Secrets
                  Claim Against Procore For Failure To State A Claim ...............................................10
17

18                1.     Plaintiffs Fail To Allege Trade Secrets With Required Particularity...........10

19                       (a)    Plaintiffs' Broad Categories And Vague Descriptions Of
                                Alleged Trade Secrets Are Insufficient As A Matter Of Law.........11

20                       (b)    Plaintiffs Fail To Distinguish Any Trade Secrets From
                                Matters Of General Knowledge ........................................................14
21

22                       (c)    Plaintiffs Fail To Plead Facts Establishing The Independent
                                Economic Value Of Any Alleged Trade Secrets ..............................16

23                2.     Plaintiffs Fail To Allege Misappropriation By Procore .............................17

24                       (a)    Plaintiffs Have Failed To Allege Any Acts Of
                                Misappropriation By Procore .........................................................17
25

26                       (b)    Plaintiffs Cannot Rely On The Inevitable Disclosure
                                Doctrine To Allege Misappropriation By Procore ..........................18

27  V.     CONCLUSION ..................................................................................................19

28

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

*Aliphcom v. Fitbit, Inc.*,
   154 F. Supp. 3d 933 (N.D. Cal. 2015) .................................................................................. 7

*AlterG, Inc. v. Boost Treadmills LLC*,
   388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................. 11, 12, 14

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................................................ 8

*Autodesk, Inc. v. ZWCAD Software Co.*,
   2015 WL 2265479 (N.D. Cal. May 13, 2015) .................................................................... 13

*Be in, Inc. v. Google, Inc.*,
   2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ...................................................................... 17

*Becton, Dickinson and Co. v. Cytek Biosciences Inc.*,
   2018 WL 2298500 (N.D. Cal. May 21, 2018) ......................................................... 12, 13, 14

*BrowserCam, Inc. v. Gomez, Inc.*,
   2009 WL 210513 (N.D. Cal. Jan. 27, 2009) ........................................................................ 6

*Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*,
   2019 WL 11499334 (N.D. Cal. Nov. 13, 2019) .................................................................... 3

*Carr v. AutoNation Inc.*,
   2018 WL 288018 (E.D. Cal. Jan. 4, 2018) ........................................................................ 17

*Cisco Sys., Inc. v. Chung*,
   2020 WL 4505509 (N.D. Cal. Aug. 5, 2020) ..................................................................... 16

*Cisco Sys., Inc. v. Chung*,
   462 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................................................. 16

*CleanFish, LLC v. Sims*,
   2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ....................................................... 6, 11, 14, 15

*Galderma Labs. L.P. v. Revance Therapeutics, Inc.*,
   2024 WL 3008860 (C.D. Cal. 2024) .................................................................................. 18

*GENFIT S.A. v. CymaBay Therapeutics Inc.*,
   2022 WL 195650 (N.D. Cal. Jan. 21, 2022) ............................................................... 11, 16

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................................. 6

*Globespan, Inc. v. O'Neill,*
    151 F. Supp. 2d 1229 (C.D. Cal. 2001) ................................................................. 17

*J. Gallagher & Co. v. Tarantino,*
    498 F. Supp. 3d 1155 (N.D. Cal. 2020) ................................................................. 17

*Khoros, LLC v. Lenovo (United States), Inc.,*
    2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ....................................................... 14

*Lamont v. Conner,*
    2019 WL 1369928 (N.D. Cal. Mar. 26, 2019) ....................................................... 11

*Les Concierges, Inc. v. Robeson,*
    2009 WL 1138561 (N.D. Cal. Apr. 27, 2009) ....................................................... 18

*Leyva v. Certified Grocers of California, Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ................................................................................... 8

*Loop AI Labs Inc. v. Gatti,*
    195 F. Supp. 3d 1107 (N.D. Cal. 2016) ................................................................. 13

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.,*
    2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) ..................................................... 16

*Meyer v. Glenmoor Homes, Inc.,*
    246 Cal. App. 2d 242 (1966) ................................................................................. 17

*Natl. Specialty Pharm., LLC v. Padhye,*
    2024 WL 2206336 (N.D. Cal. May 16, 2024) ....................................................... 12

*Navigation Holdings, LLC v. Molavi,*
    445 F. Supp. 3d 69 (N.D. Cal. 2020) .............................................................. 17, 18

*Nayab v. Cap. One Bank (USA), N.A.,*
    942 F.3d 480 (9th Cir. 2019) ................................................................................... 6

*P2i Ltd. v. Favored Tech USA Corp.,*
    2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ..................................................... 10

*Pandolfi v. Aviagames Inc.,*
    2024 WL 4951258 (N.D. Cal. Dec. 3, 2024) ......................................................... 6

*Papasan v. Allain,*
    478 U.S. 265 (1986) ................................................................................................. 3

*Pellerin v. Honeywell Intern., Inc.,*
    877 F. Supp. 2d 983 (S.D. Cal 2012) ................................................................... 19

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,*
    133 Cal. App. 4th 658 (2005) ................................................................................ 17

*Race Winning Brands, Inc. v. Gearhart*,
   2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ........................................................... 12

*RoadRunner Recycling, Inc. v. Recycle Track Sys., Inc.*,
   2023 WL 8936690 (N.D. Cal. Dec. 26, 2023) ........................................................ 15

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017) ........................................... 11, 12, 15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .................................................................................... 6

*SST Millennium LLC v. Mission St. Dev. LLC*,
   2019 WL 2342277 (N.D. Cal. June 3, 2019) ................................................ 7, 9, 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................................................................................. 8

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ........................................................ 13

*Teradata Corp. v. SAP SE*,
   2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ....................................................... 11

*UCAR Tech. (USA) Inc. v. Yan Li*,
   2017 WL 6405620 (N.D. Cal. Dec. 15, 2017) ....................................................... 19

*Vance v. Google LLC*,
   2021 WL 534363 (N.D. Cal. Feb. 12, 2021) ................................................. 8, 9, 10

*Vendavo, Inc. v. Price f(x) AG*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ....................................................... 12

*Via Techs., Inc. v. Asus Computer Int'l*,
   2016 WL 1056139 (N.D. Cal. Mar. 17, 2016) ....................................................... 12

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
   2024 WL 1260573 (N.D. Cal. 2024) ...................................................................... 18

*WalkMe Ltd. v. Whatfix, Inc.*,
   2024 WL 1221960 (N.D. Cal. Mar. 21, 2024) ....................................................... 15

*Xsolla (USA), Inc. v. Aghanim Inc.*,
   2024 WL 41396105 (C.D. Cal. Sept. 10, 2024) .................................................... 18

*Zamudio v. Aerotek, Inc*,
   2024 WL 863715 (E.D. Cal. Feb. 28, 2024) ........................................................... 8

1

**<u>Statutes / Rules</u>**

2

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 2, 6

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    PRELIMINARY STATEMENT

As set forth in Mr. Mariano's accompanying motion, Oracle America, Inc., Oracle International Corporation (collectively, "Oracle"), and Textura Corporation ("Textura" and collectively with Oracle, "Plaintiffs") have brought claims in court against their former employee in direct contravention of an arbitration agreement that applies to Plaintiffs' claims against Mr. Mariano in this case.

Oracle has also asserted a single claim under the Defend Trade Secrets Act ("DTSA") against Defendants Procore Technologies, Inc. and Procore Payment Services, Inc. (collectively "Procore"), Mr. Mariano's current employer and its subsidiary. Because this claim depends wholly on Oracle's claims against Mr. Mariano, the Court should stay this case pending resolution of the inevitable arbitration of Oracle's claims against Mr. Mariano.

This Court has discretion to stay the non-arbitrable claim against Procore pending arbitration of the related claims against Mr. Mariano. The factors the Court should consider in evaluating whether the claim against Procore should be stayed are (1) the possible harm from granting a stay; (2) the hardship or inequity to a party if required to litigate; and (3) how a stay would affect the orderly course of justice, including whether a stay will simplify or complicate issues in the pending litigation. All three of these factors support a stay of the claim against Procore pending arbitration.

*First*, Oracle will not be harmed if this litigation is stayed. As is evident from the Complaint, Oracle's allegations against Procore hinge on its allegations that Mr. Mariano was in possession of Oracle trade secrets, disclosed them to Procore, and that Procore improperly used such trade secrets. The arbitration Oracle agreed to pursue with Mr. Mariano likely will conclude within a reasonable time and not cause undue delay. Indeed, this case was just filed two months ago. The pleadings are not at issue, the Court has not yet issued a scheduling order, and discovery has not commenced. Thus, granting a stay of this case pending arbitration poses Oracle minimal risk of not having its claim resolved in a timely fashion.

*Second*, Procore will suffer hardship and inequity if a stay is denied and it is forced to litigate Oracle's claim in this Court before the required arbitration between Mr. Mariano and Oracle

concludes.  Here, denying a stay of the claim against Procore while Oracle's claims against Mr. Mariano are being resolved in arbitration could lead to inconsistent rulings, and undermine the required arbitration, which would be inconsistent with the federal policy in favor of arbitration. Courts have found hardship or inequity from denying a stay when parties are forced to litigate such claims in parallel.

As alleged in the Complaint, Oracle's claim against Procore hinges on its claims against Mr. Mariano.  And the Complaint alleges no facts that would provide independent liability by Procore to Oracle separate from the allegations against Mr. Mariano.  Given this interdependency, Procore would suffer hardship and inequity if Oracle were permitted to pursue its parallel claim against Procore here while concurrently arbitrating its claims against Mr. Mariano.

*Third*, staying this action would promote the orderly course of justice.  The outcome of the arbitration between Oracle and Mr. Mariano could be determinative of, or at a minimum meaningfully streamline, the issues here.  If the arbitrator decides that Oracle's claims against Mr. Mariano lack merit—for example that Mr. Mariano did not misuse any trade secrets or confidential information—there will be nothing left of the claim here against Procore.  A stay of the claim against Procore would go a long way in helping preserve this Court's resources, simplify the issues, and promote the orderly course of justice.

Alternatively, if the case against Procore is not stayed, the Court should dismiss the Complaint against Procore pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

Oracle's DTSA claim against Procore should be dismissed because even though Oracle boldly asserts that "[t]his case involves a theft of thousands of trade secrets," Compl. ¶ 1, the Complaint fails to adequately plead a single trade secret, much less misappropriation by Procore. Courts in this District routinely dismiss complaints containing far more specific details about the alleged trade secrets at issue and how or whether they were misappropriated.

Plaintiffs' trade secret claim should fail because as it relates to the allegations of the trade secrets themselves, the Complaint (1) alleges the "trade secrets" in broad, categorical terms, (2) fails to distinguish the alleged trade secret information from matters of general knowledge, and (3) fails

to plead any facts that any alleged trade secret has independent economic value. Because Plaintiffs have failed to adequately plead even a single trade secret, the Court should dismiss the trade secret claim.

Plaintiffs' Complaint also fails to adequately plead misappropriation by Procore, another independent ground for dismissal. Plaintiffs have not alleged a single specific act even suggesting misappropriation by Procore. *Carl Zeiss Meditec, Inc. v. Topcon Medical Sys., Inc.*, 2019 WL 11499334, at *5 (N.D. Cal. Nov. 13, 2019) ("[T]he mere fact that [defendant] hired former [employees of plaintiff] who allegedly have knowledge of [plaintiff's] trade secrets is insufficient to demonstrate misappropriation."). Unable to point to any misconduct by Procore, Oracle's Complaint goes for broke by attempting to rely on the inevitable disclosure doctrine, which has been rejected in California.

The case should be stayed pending arbitration, or alternatively, Oracle's trade secret claim against Procore should be dismissed for failure to state a claim.

## II.    FACTUAL BACKGROUND[1]

### A.    The Parties

#### 1.    Procore

Founded in 2002, Procore is a Carpinteria, California-based company that connects the global construction community on a collaborative, cloud-based platform. Dkt. 1-5 at 96–97. Procore's platform connects key project stakeholders to solutions Procore has built specifically for the construction industry. *Id.* Procore's platform provides access to critical project information and capabilities that address a range of evolving needs throughout a project's lifecycle. *Id.* The platform streamlines communication and facilitates compliance with safety and other regulatory standards, which helps increase productivity and efficiency, reduces rework and costly delays,

---

[1] Because a court must accept as true the allegations in a complaint, Procore merely recites the Complaint's allegations without confirming or controverting their veracity. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[F]or the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true.").

improves safety and compliance, and enhances collaboration and accountability among key stakeholders.  *Id.*  And Procore's platform leverages a developer-friendly open API that allows customers and third-party developers to build their own integrations or customized applications.  *Id.* at 98.  As part of this, the platform offers an App Marketplace for developers that, as of the 2020 S-1, already boasted over 180 integrations, *id.* at 97, which has grown to more than 500 integrations since.

One of the main categories of products available through Procore's platform is financial management. Dkt. 1-5 at 96.  Procore's financial management products provide customers with visibility into the financial health of their individual construction projects and portfolios and facilitate access to financial data.  *Id.*  This helps customers improve cost management, invoice collection and review, lien rights management, and budget forecasting and tracking.  As noted in the 2020 S-1, the platform's financial management tools also support "integrations with a majority of the industry's preferred accounting systems," such as enterprise resource planning ("ERP") applications.  *Id.*

In 2023, Procore released Procore Pay:  a payment management solution for its software platform.  Compl. ¶¶ 5, 66.  Procore Pay offers full payment management, allowing customers to manage invoices, compliance, and lien waivers, and make payments straight from Procore's platform.  *Id.*  As with Procore's earlier-released financial management tools, Procore Pay also can integrate with certain existing ERPs, e.g., accounting software like QuickBooks, that may be used by Procore's customers.  *Id.* ¶¶ 66, 68.  By integrating with ERPs, Procore Pay (like Procore's other financial management products) enables customers to share data seamlessly with their other accounting systems, eliminating the need to manually import/export financial information between the two.  *Id.* ¶¶ 34, 35.

## 2.    Oracle

In 2016, Oracle acquired Textura for $663 million.  *Id.* ¶ 31.  Textura had previously developed Textura Payment Management ("TPM"), a solution for construction invoice and payment

1  services.  *Id.*  Like Procore Pay, Textura Payment Management integrates with certain ERP

2  software.  *Id.* ¶ 34.  After acquiring Textura, Oracle continued to sell TPM.  *Id.*

3        **3.    Mr. Mariano**

4        Mr. Mariano was an employee at Textura until Oracle purchased it in 2016.  *Id.* ¶ 49.  Mr.

5  Mariano continued to work at Oracle until his last day on October 29, 2021, after which he began

6  working at Procore.  *Id.*  Plaintiffs allege that after Mr. Mariano's departure in October 29, 2021 he

7  retained certain material that Plaintiffs consider confidential and/or trade secrets.  *Id.* ¶ 1.  The first

8  time Plaintiffs reached out to Mr. Mariano regarding this material and to ask for its return was

9  December 2022, over a year after his departure.  *Id.* ¶ 62.  Mr. Mariano promptly complied.  *Id.*

10        **B.    Plaintiffs File This Litigation**

11        In July 2023, Oracle reached out to Procore regarding the subject matter of this litigation.

12  *Id.* ¶ 6.  Defendants worked for more than a year to attempt to address any concerns raised by Oracle

13  regarding Mr. Mariano's employment.  *Id.* ¶ 71.  Among other things, Mr. Mariano voluntarily

14  submitted both his personal iCloud and Google Drive accounts to Plaintiffs for forensic

15  examination.  *Id.* ¶¶ 52, 60.  Plaintiffs were able to review their contents, as well as their usage

16  history—namely, whether the accounts and devices were used to transfer files to any other device

17  or account.  *Id.* ¶¶ 52, 60, 63.

18        Despite Defendants' extensive cooperation, Plaintiffs remained unsatisfied, and on October

19  25, 2024, just a few days shy of the three-year anniversary of Mr. Mariano's departure from Oracle,

20  Plaintiffs hastily filed this suit.  Plaintiffs bring claims against Procore and Mr. Mariano for

21  violations of the DTSA and against Mr. Mariano for breach of contract.  *Id*. ¶¶ 73, 91 *et seq*.  They

22  claim that Procore used—whether itself or through Mr. Mariano as its agent—Plaintiffs' trade

23  secrets to develop its Procore Pay product and related ERP integrations.  *Id*. ¶¶ 80–84.

24        While Plaintiffs allege Procore and Mr. Mariano misappropriated their trade secrets, they do

25  not provide any particularized descriptions of the trade secrets at issue.  Instead, in a single

26  paragraph, Plaintiffs vaguely refer to unidentified "confidential Oracle computer source code" and

27  four broad categories of "confidential Oracle documents relating to Oracle's TPM and ERP

28  integrations (the process of connection to a client's enterprise resource software)":

1    (1) confidential and proprietary source code computer files, including python source
     code files and SQL database files related to specific ERP adapters developed by
2    Oracle engineers; (2) confidential test plans, project plans, and implementation plans
     developed by Oracle engineers associated with integrations with various ERPs for
3    specific Oracle client implementations; (3) confidential files reflecting Oracle client
     information, revenue projections, and other internal strategy documents related to
4    Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents
     and presentations detailing the design and implementation of various Oracle ERP
5    integrations.

6    *Id.* ¶ 37.  Plaintiffs' discussion regarding the files purportedly retained by Mr. Mariano merely re-

7    hashes these broad descriptions with conclusory assertions of their confidential nature and

8    importance to Plaintiffs.  *Id.  ¶¶* 53-57.  The only other information Plaintiffs provide to identify

9    their alleged trade secrets are certain file names, including a purportedly non-exhaustive list of 20

10   files on Mr. Mariano's iCloud—without any description of what they are—that Plaintiffs contend

11   contain trade secrets. *Id.* ¶¶ 53-57, 60, 63-64.  Again, however, Plaintiffs offer no specifics on these

12   files aside from their MD5 Hash and one of four vague descriptors:  "Source Code," "Customer List

13   and Opportunities," "Research And Development Plans," and "Software Integration Plans." *Id.*

14   ¶ 64.

15   **III.    LEGAL STANDARD**

16       "It is ... within a district court's discretion whether to stay, for [c]onsiderations of economy

17   and efficiency, an entire action, including issues not arbitrable, pending arbitration." *BrowserCam,*

18   *Inc. v. Gomez, Inc.*, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (citation and quotations

19   omitted).  "[A] stay is generally appropriate where the arbitrable claims predominate." *Pandolfi v.*

20   *Aviagames Inc.*, 2024 WL 4951258, at *7 (N.D. Cal. Dec. 3, 2024).

21       Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be

22   granted."  Dismissal is available when a complaint fails to state a cognizable legal theory or fails to

23   allege sufficient facts under a cognizable legal theory.  *Nayab v. Cap. One Bank (USA), N.A.*, 942

24   F.3d 480, 487 (9th Cir. 2019).  The court is not required to "accept as true allegations that are merely

25   conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

26   *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d

27   979, 988 (9th Cir. 2001)).

28

PROCORE'S MOTION TO STAY PENDING
ARBITRATION OR DISMISS                    6              CASE NO. 4:24-CV-07457-JST

On a motion to dismiss a claim under the DTSA, "the burden is on Plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020) (quotation omitted).

## IV.   ARGUMENT

### A.   The Claims Against Procore Should Be Stayed Pending Arbitration

The Court should stay the entire case pending resolution of Plaintiffs' arbitration with Mr. Mariano, which Mr. Mariano seeks to compel.   The non-arbitrable claim against Procore is inseparable from, and in fact depends on, the claims that Plaintiffs asserted against Mr. Mariano that must be resolved in arbitration.

Courts consider several factors in determining whether to grant a stay, including:  "(A) the possible damage which may result from the granting of a stay; (B) the hardship or inequity which a party may suffer as a result of denial of a stay; and (C) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *SST Millennium LLC v. Mission St. Dev. LLC*, 2019 WL 2342277, at *4 (N.D. Cal. June 3, 2019).  Here, all of the factors weigh in favor of a stay.

#### 1.   Plaintiffs Would Not Suffer Damage If The Stay Is Granted

The first factor favors staying the DTSA claim against Procore because Plaintiffs will not be harmed by a stay.  Instead, Plaintiffs, Procore, and the Court will preserve important resources if the claim against Procore is stayed.

Courts may issue a stay if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *SST Millennium LLC*, 2019 WL 2342277, at *4–6 (citation and quotations omitted) (granting a stay and finding factor one favored a stay where arbitration "likely will conclude within a reasonable time and not cause undue delay").  In particular, there is little or no harm from a stay where the court case is in its infancy, "[t]he parties have not engaged in discovery, and the Court has not set a scheduling order identifying dates for ... a trial." *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 939 (N.D. Cal. 2015) (staying non-arbitrable claims).  Courts in this District "are generally unwilling to presume delay is harmful without specific supporting evidence." *Id*. at 938.

1    Here, Plaintiffs lack any basis for arguing they will be harmed by a stay.  Plaintiffs waited

2    *more than a year* after Mr. Mariano left Oracle before contacting him two years ago in December

3    2022 about Oracle-issued laptops potentially in his possession. *See* Compl. ¶¶ 5, 61–62.  They have

4    not sought a temporary restraining order, their prayer for relief does not include a request for a

5    preliminary injunction (*see* Compl. ¶¶ 107–12), nor could they demonstrate any possibility of

6    irreparable harm given the years-long delay in their filing of suit.

7    Nor is there reason to believe that arbitration of the claims against Mr. Mariano would not

8    "conclude[] within a reasonable time." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857,

9    864 (9th Cir. 1979); *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 345 (2011)

10   (recognizing that "the informality of arbitral proceedings is itself desirable, reducing the cost and

11   increasing the speed of dispute resolution"); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S.

12   662, 685 (2010) (recognizing the "lower costs, greater efficiency and speed" of "private dispute

13   resolution").  This case was filed less than two months ago, the pleadings are not at issue, the Court

14   has not issued a scheduling order, and discovery has not begun.

15   Finally, there is no basis to contend a stay would cause any loss of evidence or testimony

16   that could result in "substantial harm" to Plaintiffs. *Zamudio v. Aerotek, Inc*, 2024 WL 863715, at

17   *3 (E.D. Cal. Feb. 28, 2024).  Given that Plaintiffs' claims against Procore and Mr. Mariano arise

18   from the same alleged conduct, relevant evidence will be preserved for and during the arbitration.

19   This first factor weighs in favor of granting a stay because Plaintiffs would not suffer

20   damage.

### 2.    Procore Would Face Hardship And Inequity If The Stay Is Denied

22   The second discretionary factor also favors a stay because Procore will suffer hardship if it

23   must litigate the DTSA claim against it in this Court while Mr. Mariano simultaneously arbitrates

24   claims arising from the same facts.  Additionally, Mr. Mariano's right to arbitration could be

25   undermined if the DTSA claim against Procore proceeds.

26   Hardship may occur "where there is the potential for inconsistent rulings and resulting

27   confusion." *Vance v. Google LLC*, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021), at *5.  "Where a

28   denial of stay would cause both parties to incur significant expenses on litigation that may be

rendered moot, the potential hardship from denying the stay weighs slightly in favor of granting it." *Id.* (citation and quotations omitted). Moreover, courts have found hardship or inequity when denying a stay would risk "undermin[ing] the arbitration proceedings ... thereby thwarting the federal policy in favor of arbitration." *SST Millennium*, 2019 WL 2342277, at *5 (citation omitted) ("The Court finds that allowing plaintiffs to pursue identical claims against [non-signatory defendants] in court while plaintiffs concurrently arbitrate their claims with [signatory defendant] might undermine [signatory defendant's] contractual right to resolve its disputes through arbitration.").

A denial of the motion to stay the case against Procore while the arbitration against Mr. Mariano proceeds could also lead to inconsistent rulings. In *Vance*, Google sought a stay of the claims against it pending resolution of a related case in another District. 2021 WL 534363, at *1. The Court held that while Google was not a party to the related action, there were "substantial overlapping factual and legal questions" such that litigating them twice in different forums could cause hardship to Google. *Id.* at *6. Additionally, even though Google was not directly subject to discovery in the related action, the court found that there would be "significant overlap in the discovery in both cases, creating additional expenses," if a stay were not granted. *Id.* at *6. Here, Plaintiffs' claims against Mr. Mariano and Procore have overlapping factual and legal issues. *See, e.g.*, Compl. ¶¶ 82, 84. Procore and Mr. Mariano could face potential inconsistent outcomes in this case and the arbitration, and both Mr. Mariano and Procore could be required to engage in overlapping discovery, which would cause hardship and inequity. Additionally, should the Court deny Procore's motion to stay pending arbitration, the occurrence of the parallel proceedings could "undermine [Mr. Mariano's] contractual right to resolve [his] disputes through arbitration." *SST Millennium*, 2019 WL 2342277, at *5.

Under the second factor, the potential for hardship favors granting a stay.

### 3.    A Stay Would Promote The Orderly Course Of Justice

"[C]ourts may consider the degree of overlap in factual allegations between parallel cases in order to avoid unnecessary duplicative litigation." *SST Millennium*, 2019 WL 2342277, at *5.

"In general, a stay should be granted where the resolution of issues in the arbitration would be determinative of the issues in the lawsuit." *Id.*

Plaintiffs' DTSA claim against Procore is predicated on alleged conduct by Mr. Mariano. *See, e.g.,* Compl. ¶ 82 ("Procore improperly acquired and participated in disclosure and use of Oracle's trade secrets including by virtue of Mariano's transfer of confidential Oracle information to a Procore laptop...."). The Complaint does not make a single allegation of misappropriation or other misconduct by Procore unrelated to Mr. Mariano. Resolution of the issues in the arbitration against Mr. Mariano should be determinative of the parallel issues in the DTSA claim against Procore.

"[G]iven the interdependence and identical nature of plaintiffs' claims against each defendant, resolution of plaintiffs' claims against [Mr. Mariano] will simplify issues, proof, and questions of law with respect to the claim[] against [Procore]." *SST Millennium*, 2019 WL 2342277, at *5 (citation and quotations omitted). Accordingly, staying the DTSA claim against Procore while the claims against Mr. Mariano proceed in arbitration "will help preserve judicial resources and promote the orderly course of justice." *Id.*; *see also Vance*, 2021 WL 534363, at *6 ("Judicial economy ... is the primary basis courts consider when ruling on motions to stay.").

A stay would promote the orderly course of justice and preserve judicial resources.

**B.    Alternatively, the Court Should Dismiss The Defend Trade Secrets Act Claim Against Procore For Failure To State A Claim**

To state a DTSA claim, a plaintiff must allege: "(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff." *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *3 (N.D. Cal. Sept. 24, 2024) (citation omitted). Here, Plaintiffs' DTSA claim fails for two independent reasons. First, Plaintiffs fail to allege any trade secrets with the required particularity and detail. Second, Plaintiffs fail to allege any non-conclusory facts establishing that Procore misappropriated any trade secret.

**1.    Plaintiffs Fail To Allege Trade Secrets With Required Particularity**

"To prove that Plaintiff[s are] the owner[s] of a trade secret, [they] 'need not spell out the details of the trade secret,' but must 'describe the subject matter of the trade secret with sufficient

1    particularity to separate it from matters of general knowledge in the trade or of special persons who

2    are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which

3    the secret lies.'" *CleanFish*, 2020 WL 4732192, at *3 (N.D. Cal. Aug. 14, 2020).  Further, a plaintiff

4    must detail "how any individual component [trade secret] part ..., standing on its own, has any

5    independent economic value ... different from the value that [plaintiff] attaches to its [product] as a

6    whole."  *GENFIT S.A. v. CymaBay Therapeutics Inc.*, 2022 WL 195650, at *3 (N.D. Cal. Jan. 21,

7    2022).  "On a motion to dismiss, the burden is on Plaintiff[s] to identify protectable trade secrets

8    and '[show] that they exist.'"  *CleanFish*, 2020 WL 4732192, at 3 (citation omitted).[2]

9        Despite alleging "thousands" of trade secrets are at issue, Compl. ¶ 1, Plaintiffs' complaint

10   does not adequately plead any.  Instead, Plaintiffs allege four broad categories of purportedly

11   confidential information. *Id.* ¶ 37.  The allegations are insufficient as a matter of law because the

12   alleged trade secrets are broad categories that Plaintiffs have failed to separate from matters of

13   general knowledge.  Plaintiffs also have failed to allege the independent economic value of any trade

14   secret.  Accordingly, dismissal is appropriate.

15                (a)    <u>Plaintiffs' Broad Categories And Vague Descriptions Of Alleged
16                       Trade Secrets Are Insufficient As A Matter Of Law</u>

17       Plaintiffs fail to identify any alleged trade secrets with the specificity required to survive a

18   motion to dismiss.  Indeed, Plaintiffs only allege that their trade secrets pertain to confidential

19   information within one of four broad categories:

20       (1) confidential and proprietary source code computer files, including python source
         code files and SQL database files related to specific ERP adapters developed by
21       Oracle engineers; (2) confidential test plans, project plans, and implementation plans
         developed by Oracle engineers associated with integrations with various ERPs for
22       specific Oracle client implementations; (3) confidential files reflecting Oracle client
         information, revenue projections, and other internal strategy documents related to
23       Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents

24

25   _____

26   [2] *See also Lamont v. Conner*, 2019 WL 1369928, at *8 (N.D. Cal. Mar. 26, 2019) (granting motion
     to dismiss where "Plaintiff's description of his trade secrets … are not plead[ed] with sufficient
27   particularity"); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019)
     (same); *Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (same);
28   *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (same).

1      and presentations detailing the design and implementation of various Oracle ERP
2      integrations.

3    Compl. ¶ 37.

4         These allegations fail as a matter of law. "'[C]atchall' categories of the kinds of trade secrets
5    that might be at issue" "do not clearly refer to tangible trade secrets as required." *Natl. Specialty*
6    *Pharm., LLC v. Padhye*, 2024 WL 2206336, at *4 (N.D. Cal. May 16, 2024) ). These alleged trade
7    secrets are at once improperly categorical and open-ended. For example, as alleged, they would
8    include every file related to an open-ended set of ERP adapters; test plans, project plans, and
9    implementations plans related to any client project; any client, revenue, or strategy documents
10   "related to Oracle's TPM and ERP integrations"; and perhaps any and all Oracle internal design and
11   implementation documents and presentations for unidentified ERP integrations. Courts have
12   repeatedly held that such generalized categories are inadequate at the pleading stage. *See, e.g.*,
13   *Space Data Corp. v. X*, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("[H]igh-level overview
14   of ... purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the
15   propagation of radio signals from stratospheric balloon-based transreceivers'" did not satisfy Rule
16   8 pleading standards); *Natl. Specialty Pharm.*, 2024 WL 2206336, at *4 ("'[C]atchall' categories of
17   the *kinds* of trade secrets that might be at issue" "do not clearly refer to tangible trade secrets as
18   required."); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21,
19   2023) (Plaintiff alleges "generic list[s] of categories of various types of information and a high-level
20   overview of [their] purported trade secrets," but this level of general[it]y is insufficient to adequately
21   identify a trade secret…."); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144-46
22   (2019) (dismissing far more detailed trade secret allegations than here for "resembl[ing] ... broad
23   categories of information [rather] than ... specific descriptions" and requiring the Plaintiff "allege
24   with greater specificity the types of trade secrets that were misappropriated and the exact technology
25   to which they pertain."); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar.
26   23, 2018) (Allegations setting out "purported trade secrets in broad, categorical terms" that are
27   merely "descriptive of the types of information that generally *may* qualify as protectable trade
28   secrets" do not state a claim); *Via Techs., Inc. v. Asus Computer Int'l*, 2016 WL 1056139, at *3

1    (N.D. Cal. Mar. 17, 2016) ("[T]he disclosure claims that *all* of VIA's analog and digital schematics

2    are trade secrets in their entirety ... the disclosure gives Defendants—and the court—practically no

3    guidance on precisely what VIA claims as its trade secrets."); *Becton, Dickinson and Co. v. Cytek*

4    *Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (dismissing open-ended

5    categorical trade secret identification).

6          The Court's analysis in *Becton* is instructive. In *Becton*, a trade secret misappropriation case

7    related to medical technology software, the plaintiff alleged defendants "downloaded one or more

8    categories of [trade secret] information," including "design review templates," "fluidics design

9    files," and "source code files." *Id.* at *3. Plaintiff even went further to provide "examples of

10    confidential and proprietary information related to [the product] and other [similar products]." *Id.*

11    The court still found them insufficient, noting the categories were "too broadly stated to identify the

12    trade secrets on which Becton's claims are based," and that plaintiff's provided examples failed to

13    narrow the trade secrets, in part because they encompassed files unrelated to the product at issue.

14    *Id.* at *3.

15          Such is the case here. Beginning at paragraph 53 of their Complaint, Plaintiffs include

16    references to a few file names purportedly to provide detail regarding the four categories of asserted

17    trade secrets. Compl. ¶ 52 (referencing the same four "trade secret files and documents concerning

18    Oracle's TPM solution, ERP integrations, customer-specific implementations, and detailed client

19    information"). This information does not help Plaintiffs' cause.

20          Even where the Complaint purports to list certain .zip files, source code modules, and files

21    by name, Compl. ¶¶ 53-57, 60, 63-64, there is no detail on what they are, and such information is

22    insufficient to provide "reasonable notice of the issues which must be met at the time of trial [or]

23    reasonable guidance in ascertaining the scope of appropriate discovery." *Synopsys, Inc. v.*

24    *ATopTech, Inc.*, 2013 WL 5770542, at *5–6 (N.D. Cal. Oct. 24, 2013) (quotations and citation

25    omitted).[3] Plaintiffs' file names are naked and lack reference to any part of the files or code or the

26

27    _____

28    [3] The cases where source code references have been found to be sufficient involved the plaintiff, in addition to listing the source code name, also alleging "the code's associated algorithms, and its

1   alleged trade secrets, algorithms or functionality they contain.  Accordingly, they may be readily

2   dismissed.  *See, e.g., Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016)

3   ("[I]dentifying documents alone would not be an adequate substitute for detailed identification of

4   the trade secrets therein, since review of the documents may not inform Defendants as to what

5   precisely Plaintiff is asserting is a trade secret."); *Khoros, LLC v. Lenovo (United States), Inc.*, 2020

6   WL 12655516, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing source code allegations as inadequate

7   because it was unclear "whether this source code merely means the code behind Khoros's software,

8   behind a part of its software, or something else.  Sometimes, Khoros appears to connect this source

9   code to the database model specifically, which perhaps suggests that the combination of the code

10   and databases themselves is the database model, in which case the back-office code would be

11   encompassed by my discussion of that model above....  Sometimes, though, it treats them as

12   separate.").

13       Finally, to the extent paragraphs 53–57, 60, and 63–64 purport to be exemplary details of

14   the four broad trade secret categories above, or even if they do not, they confirm that Plaintiffs'

15   trade secrets are impermissibly open-ended and that Oracle has failed to delineate their boundaries.

16   Compl. ¶¶ 53 ("For example, those files include"); 54 ("Those files also include"); 55–57 (same);

17   60 ("For example"); 63 ("including at least"); 64 ("numerous Oracle trade secret files, such as the

18   following").  *CleanFish*, 2020 WL 4732192, at *3 (dismissing trade secret claim for relying on

19   non-limiting examples); *Becton*, 2018 WL 2298500, at *3 ("[A] number of the categories are

20   preceded by the phrases 'such files included' and 'such as,' thereby further expanding the scope of

21   the allegations in which the categories are contained.").

22           (b)   <u>Plaintiffs Fail To Distinguish Any Trade Secrets From Matters Of</u>
                   <u>General Knowledge</u>

23

24       Even setting aside the facial deficiency of Plaintiffs' categorical trade secret descriptions,

25   Plaintiffs still fail to "describe the subject matter of [their] trade secret[s] with sufficient particularity

26

27   _____

     architecture," something Plaintiffs have not done here.  *Autodesk, Inc. v. ZWCAD Software Co.*,

28   2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015).

1  to separate [them] from matters of general knowledge in the trade or of special knowledge of those

2  persons ... skilled in the trade." *CleanFish*, 2020 WL 4732192, at *3 (citation omitted); *see also*

3  *AlterG, Inc.*, 388 F. Supp. 3d at 1145 (dismissing trade secret claim on same grounds).

4      The alleged trade secrets at issue relate to Plaintiffs' payment software, TPM, which

5  Plaintiffs admit has been publicly sold since at least 2016. *Id.* ¶ 3.  Plaintiffs make no effort to

6  identify the boundaries of which aspects of TPM are public and which are not, and the Complaint's

7  boilerplate recitation of zip files, source code modules, and files provides no further relevant

8  information.  Compl. ¶¶ 60.  Based on the allegations in the Complaint, one is left guessing what

9  portion of these alleged "source code computer files," "test plans," "project plans," "internal strategy

10 documents," and "presentations" are distinct from information that is generally known.  Compl ¶ 37.

11 In fact, although Plaintiffs list alleged "Oracle trade secret files," such as in paragraph 64 of the

12 Complaint, they provide no details about what these files are or why and how they are proprietary

13 beyond vague two, three, and four word descriptors: "Source Code," "Customer List and

14 Opportunities," "Research and Development Plans," and "Software Integration Plans." *CleanFish*,

15 2020 WL 4732192, at *3 (dismissing trade secret claim, finding that plaintiff failed to distinguish

16 alleged customer list "from matters of general knowledge" even where the complaint included

17 additional detail that the list contained "key contacts, supplier and client identities with direct

18 telephone numbers, addresses, service areas, internal substantial analyses of customers' product

19 preferences, units purchased, buying patterns" and other items).

20     In sum, Plaintiffs' allegations of four categorical trade secrets "do[] not describe trade secrets

21 with sufficient particularity to separate them from anything."  *RoadRunner Recycling, Inc. v.*

22 *Recycle Track Sys., Inc.*, 2023 WL 8936690, at *2 (N.D. Cal. Dec. 26, 2023); *see also WalkMe Ltd.*

23 *v. Whatfix, Inc.*, 2024 WL 1221960, at *4 (N.D. Cal. Mar. 21, 2024) (dismissing trade secret claims

24 that were "not sufficient to separate matters of general knowledge in the trade or of special

25 knowledge of those persons ... skilled in the trade from non-public information.").  Because

26 Plaintiffs' broad categorial descriptions and mere references to file names make it impossible to tell

27 what information is and is not public, Plaintiffs have failed to meet their "burden ... to identify

28 protectable trade secrets and show that they exist." *CleanFish, LLC*, 2020 WL 4732192, at *3; *Space*

1  *Data Corp.*, 2017 WL 5013363 at *2 ("[P]laintiff must describe the subject matter of the trade secret

2  with sufficient particularity to separate it from matters of general knowledge in the trade or of special

3  persons who are skilled in the trade" (internal quotation omitted)).  Dismissal is appropriate.

4          (c)     <u>Plaintiffs Fail To Plead Facts Establishing The Independent
                    Economic Value Of Any Alleged Trade Secrets</u>

5

6          Plaintiffs' trade secret cause of action further fails because with respect to the alleged trade

7  secrets, they have failed to "adequately allege how any individual component part ..., standing on

8  its own, has any independent economic value ... different from the value that [Plaintiffs] attach[] to

9  its [software] as a whole."  *GENFIT*, 2022 WL 195650, at *3 (dismissing DTSA claim where

10 plaintiff had not alleged whether "each component" part was "itself economically valuable");

11 *compare* Complaint ¶¶ 37 (failing to discuss alleged independent economic value of any particular

12 alleged trade secret category); 58 (unidentified trade secrets are "extremely valuable to Oracle");

13 53–57, 65 (repeating conclusory statement that "confidential" files developed by Oracle are "critical

14 to [its] success in the marketplace" because of their competitive value); 74–75 (conclusory

15 allegations of value).

16         Unsurprisingly, given their reliance on describing their trade secrets through broad

17 categories and vague descriptors, Plaintiffs say nothing about the economic value of the particular

18 trade secret information at issue. Plaintiffs' failure to specifically tie the alleged secrets to plausible

19 allegations of independent economic value is another ground for dismissal.  *See GENFIT*, 2022 WL

20 195650, at *3; *Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1053 (N.D. Cal. 2020); *see also*

21 *Cisco Sys., Inc. v. Chung*, 2020 WL 4505509, at *6 (N.D. Cal. Aug. 5, 2020) ("While plaintiff does

22 allege that its 'misappropriated source code' reflects engineers development efforts, including

23 'testing and debugging,' ... plaintiff neglects any explanation about how its source code for

24 debugging a user interface itself maintains independent economic value.").

25

26

27

28

### 2. Plaintiffs Fail To Allege Misappropriation By Procore

#### (a) Plaintiffs Have Failed To Allege Any Acts Of Misappropriation By Procore

Plaintiffs' DTSA claim against Procore is entirely dependent on their deficient allegations of misappropriation against Mr. Mariano and fail for the same reasons described in Mr. Mariano's Motion. *See* Defendant Mariano's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration or Alternative Motion to Dismiss at, § IV. C. 2; *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *10 (C.D. Cal. Sept. 23, 2019) ("[W]ithout plausible allegations that [Plaintiffs' former employee] improperly acquired trade secrets, Plaintiffs cannot allege that [his new employer] improperly acquired or used trade secrets since [the former employee] is the only link between them."); *Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235-36 (C.D. Cal. 2001) (dismissing trade secret claim against plaintiff's former employee and his new employer when theory of misappropriation against former employee failed).

Even setting aside the deficiencies against Mr. Mariano, Plaintiffs' claims against Procore still fail. To assert a misappropriation claim against a company for an employee's conduct, plaintiffs must "differentiat[e] what each specific [corporate] Defendant is alleged to have done" as opposed to the employee. *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020); *J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173-74 (N.D. Cal. 2020) (dismissing trade secret claim when individual defendants "could well have taken the trade secrets from [plaintiff] without [corporate defendant's] knowledge"). Plaintiffs cannot merely impute their allegations against Mr. Mariano to Procore, who is not alleged to be an officer at Procore (he is not). *Carr v. AutoNation Inc.*, 2018 WL 288018, at *3 (E.D. Cal. Jan. 4, 2018) ("It is not appropriate to impute an agent's knowledge of a trade secret to the principal."); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 679 (2005) ("'[A]n officer's knowledge is not imputed to the corporation when he has no authority to bind the corporation relative to the fact or matter within his knowledge.'") ((quoting *Meyer v. Glenmoor Homes, Inc.*, 246 Cal. App. 2d 242, 264 (1966)). Further, the mere allegation that Procore released a competitive product also fails to support a claim of misappropriation by Procore. *See Be in, Inc. v. Google, Inc.*, 2013 WL 5568706,

at *2–4 (N.D. Cal. Oct. 9, 2013) (dismissing trade secret misappropriation claim even though competitor launched "virtually identical" product where plaintiff failed to sufficiently allege breach of confidentiality in "acquiring, disclosing, or using" trade secret information).

Here, Plaintiffs fail to plead any specific actions by Procore aside from conclusory assertions that Procore "knew ... [or] should have known."  Compl. ¶ 70.  In *Navigation Holdings, LLC v. Molavi*, the Court dismissed a DTSA claim where, as here, the plaintiff made only a conclusory allegation that the defendants "had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use."  445 F. Supp. 3d at 79.  This conclusory recitation of the element was "devoid of any factual substantiation of Defendants' knowledge."  *Id*. (complaint was "devoid of any factual substantiation of [corporate] Defendants' knowledge of the employee's misappropriation"); *see also Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2024 WL 1260573, at *4 (N.D. Cal. 2024) (dismissing claim where complaint contained only conclusory assertions that the company "conspired with [its employees] to improperly acquire [plaintiff's] trade secrets"); *Galderma Labs. L.P. v. Revance Therapeutics, Inc.*, 2024 WL 3008860, at *4 (C.D. Cal. 2024) (dismissing claim for trade secret misappropriation where "[t]he FAC does not contain, for example, any allegations that Revance asked Tisckos to take any confidential information or offered to provide him an award for such.  Nor does the FAC allege Revance had a history of hiring Galderma employees."); *Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 41396105, at *9 (C.D. Cal. Sept. 10, 2024) (dismissing DTSA claim because facts alleged upon information and belief were not based on factual information that would make the inference of culpability plausible).

        (b)     <u>Plaintiffs Cannot Rely On The Inevitable Disclosure Doctrine To Allege Misappropriation By Procore</u>

Absent any facts suggesting trade secret misappropriation by Procore, Plaintiffs ask the Court improperly to infer Procore's use or disclosure of their alleged trade secrets because Mr. Mariano's Procore role is allegedly similar to his old job at Oracle.  Compl. ¶¶ 5 ("Mariano's work at Procore is directly related to his work at Oracle"), 49 (alleging Mr. Mariano had "front row seat" to Plaintiffs' development of payment software).

1         This is an improper attempt by Oracle to save its trade secret claim against Procore by relying

2    on the inevitable disclosure doctrine.  Plaintiffs' attempted reliance on the inevitable disclosure

3    doctrine has no place under California law and should be rejected: "[A] threat of misappropriation

4    cannot, as a matter of California law, be inferred from the fact [defendant], upon voluntarily

5    terminating his employment ... immediately began working for a direct competitor and appears to

6    be performing for his new employer the same or similar job duties...."  *Les Concierges, Inc. v.*

7    *Robeson,* 2009 WL 1138561, at *2 (N.D. Cal. Apr. 27, 2009) ("California does not recognize the

8    'inevitable disclosure doctrine,' under which an employee may be enjoined by demonstrating the

9    employee's new job duties will inevitably cause the employee to rely upon knowledge of the former

10   employer's trade secrets." (quotations omitted)); *UCAR Tech. (USA) Inc. v. Yan Li*, 2017 WL

11   6405620, at *3 (N.D. Cal. Dec. 15, 2017) ("California courts have resoundingly rejected claims

12   based on the 'inevitable disclosure' theory."); *see also Pellerin v. Honeywell Intern., Inc.*, 877 F.

13   Supp. 2d 983, 989–90 (S.D. Cal 2012) ("alleging mere possession of trade secrets is not enough"

14   and noting "California does not recognize the 'inevitable disclosure doctrine'" (citations omitted)).

15   **V.    CONCLUSION**

16        For the foregoing reasons, Procore respectfully requests that the Court stay this case pending

17   arbitration of Plaintiffs' claims against Mr. Mariano, and also stay all discovery and case deadlines

18   until Mr. Mariano's motion to compel arbitration is decided.

19        In the alternative, Procore respectfully requests the Court dismiss the DTSA claim against it

20   for failing to state a claim upon which relief can be granted, with prejudice.

21

22

23

24

25

26

27

28

1 DATED:  December 20, 2024                     Respectfully submitted,

2                                               QUINN EMANUEL URQUHART & SULLIVAN,
                                                LLP
3

4                                               By: */s/ Michael B. Carlinsky*

5

6                                               Michael B. Carlinsky (admitted *pro hac vice*)
                                                michaelcarlinsky@quinnemanuel.com
7                                               295 Fifth Avenue
                                                New York, NY 10016
8                                               Telephone: (212) 849-7000
                                                Fax: (212) 849-7000
9

10                                              David A. Nelson (admitted *pro hac vice*)
                                                davenelson@quinnemanuel.com
11                                              191 N. Wacker Drive, Suite 2700
                                                Chicago, IL 60606
12                                              Telephone: (312) 705-7400
                                                Fax: (312) 705-7401
13

14                                              David Elihu (Bar No. 303043)
                                                davidelihu@quinnemanuel.com
15                                              865 South Figueroa Street, 10th Floor
                                                Los Angeles, California 90017
16                                              Telephone: (213) 443-3000
                                                Fax: (213) 443-3100
17

18                                              Jodie Cheng (Bar No. 292330)
                                                jodiecheng@quinnemanuel.com
19                                              50 California Street, 22nd Floor
                                                San Francisco, CA 94111
20                                              Telephone: (415) 875-6600
                                                Fax: (415) 875-6700
21

22                                              *Attorneys for Defendants Procore Technologies, Inc.*
                                                *and Procore Payments Services, Inc.*
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on this 20th day of December 2024, all counsel of record who are deemed to have consented to electronic services are being served with a copy of this Document via email.

*/s/ Michael B. Carlinsky*