1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ORACLE AMERICA, INC., et al.,              Case No. 24-cv-07457-JST

          Plaintiffs,
8
                                                **ORDER DENYING MOTIONS TO**
9         v.                                    **COMPEL ARBITRATION, TO STAY,**
                                                **AND TO DISMISS**
10   PROCORE TECHNOLOGIES, INC., et al.,
                                                Re: ECF Nos. 38, 40
          Defendants.
11

12

13          Before the Court is Defendant Mark Mariano's motion to compel arbitration and to stay

14   proceedings or, in the alternative, to dismiss, ECF No. 38, and Defendants Procore Technologies,

15   Inc. and Procore Payment Services, Inc.'s motion to stay or, in the alternative, to dismiss, ECF No.

16   40.  The Court will deny the motions.

17   **I.      FACTUAL BACKGROUND**

18          **A.      Oracle's Allegations[1]**

19          Plaintiff Oracle hired Defendant Mariano when Oracle acquired his previous employer in

20   2016.  ECF No. 1 ¶ 49.  Mariano worked for Oracle until October 29, 2021, and during that time

21   he "had a front row seat to . . . Oracle's technical development of" its Textura Payment

22   Management ("TPM") solution and related enterprise resource planning ("ERP") integrations.  *Id.*

23   "Unbeknownst to Oracle, long after he left Oracle, Mariano improperly possessed thousands of

24   Oracle's confidential, proprietary materials on his personal cloud accounts . . . , in addition to on

25   two Oracle computers . . . that he kept long after leaving Oracle."  *Id.* ¶ 51.  Oracle discovered this

26

27   ───────────────
     [1] For the purpose of resolving Defendants' motions to dismiss, the Court accepts as true the
28   following allegations from the complaint, ECF No. 1.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th
     Cir. 2005).

United States District Court
Northern District of California

United States District Court
Northern District of California

fact "only after learning of Procore's rapid launch of competing technology after hiring Mariano." *Id.* At that point, Oracle requested that Mariano return his Oracle devices and conducted a forensic inspection, which revealed that they contained "Oracle trade secret files such as confidential Oracle source code." *Id.* ¶ 52. Oracle initiated conversations with Procore and learned from those conversations that some of Oracle files "were copied over to Mariano's Procore-issued laptop." *Id.*

Oracle filed this lawsuit against Mariano and Procore on October 25, 2024, asserting claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836(b), 1839 *et seq.*; breach of contract; and unjust enrichment.

**B.      Employment Agreement and Proprietary Information Agreement**

When Oracle offered Mariano a job, it required as a condition of his employment that he sign an "Employment Agreement," ECF No. 39-3 at 13–15, and a "Proprietary Information Agreement," ECF No. 39-3 at 9–12. Mariano signed both. ECF No. 38 at 11–12.

The Employment Agreement contains an arbitration provision, which states in relevant part:

> You and Oracle understand and agree that any existing or future dispute or claim arising out of or related to your Oracle employment, or the termination of that employment, will be resolved by final and binding arbitration and that no other forum for dispute resolution will be available to either party. . . . The arbitration proceedings shall be conducted pursuant to the Federal Arbitration Act, and in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association of the Employment Arbitration Rules and Procedures adopted by Judicial Arbitration & Mediation Services ("JAMS").

The Proprietary Information Agreement lays out Mariano's obligations with respect to "confidential, proprietary, or trade secret information" he "develop[ed], receive[d], or otherwise ha[d] access to" while employed by Oracle. ECF No. 39-3 at 9. It contains a venue provision, which provides:

> I agree that any legal action or proceeding involving Oracle which is in any way connected with this agreement may be instituted in federal court in San Francisco or San Jose, California or state court in San Mateo County or Santa Clara County, California. I agree to submit to the jurisdiction of, and agree that venue is proper in, the aforesaid

courts in any such legal action or proceeding.

*Id.* at 12.

### C.      Procedural Background

Mariano moved to compel arbitration of Oracle's claims against him and moved, in the alternative, to dismiss Oracle's DTSA claim under Rule 12(b).  ECF No. 38.  Oracle opposed the motion, ECF No. 53, and Mariano replied, ECF No. 54.  Separately, Procore moved to stay the action pending resolution of Mariano's and Oracle's arbitration and moved, in the alternative, to dismiss Oracle's DTSA claim under Rule 12(b).  ECF No. 40.  Oracle opposed the motion, ECF No. 51, and Procore replied, ECF No. 55.

## II.      JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331, 1367.

## III.      LEGAL STANDARD

### A.      Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

On a motion to compel arbitration, "courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure."  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).  "Courts may consider evidence outside of the pleadings, such as declarations and

3

other documents filed with the court." *Burger v. Northrop Grumman Sys. Corp.*, No. 21-cv-06761-ABM-RWX, 2021 WL 8322270, at *4 (C.D. Cal. Oct. 27, 2021).  Under Rule 56, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and how that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

When deciding whether a valid arbitration agreement exists, federal courts generally should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  "Issues of contract formation may not be delegated to an arbitrator" and must be decided by the court.  *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration.  9 U.S.C. § 3.

### B.    Rule 12(b)(6) Motion to Dismiss

Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 558 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.

United States District Court
Northern District of California

1    2005).

2    **IV.    DISCUSSION**

3          **A.    Mariano's Motion to Compel Arbitration**

4          Mariano moves to compel arbitration.  He argues that the parties delegated issues of

5    arbitrability to the arbitrator, and that even if the Court finds that it must decide arbitrability, the

6    Employment Agreement requires arbitration of Oracle's claims.

7                       **1.    Delegation of Arbitrability**

8          The parties agree that the Employment Agreement incorporates the rules of the Judicial

9    Arbitration & Mediation Services ("JAMS") and American Arbitration Association ("AAA"),

10   both of which delegate questions of arbitrability to the arbitrator.  ECF No. 38 at 13–14; ECF No.

11   53 a 53.  But Oracle contends that the claims at issue are governed not by the Employment

12   Agreement's arbitration provision but rather by the Proprietary Information Agreement's venue

13   provision.  ECF No. 53 at 18–26.  Mariano responds that the Employment Agreement and the

14   Proprietary Information Agreement ought to be read as "one contract" because they are "part of

15   the same employment package."  ECF No. 54.

16         California contract law principles do not support Mariano's argument.  It is true that

17   "[s]everal contracts relating to the same matters, between the same parties, and made as parts of

18   substantially one transaction, are to be taken together."  Cal. Civ. Code § 1642.  But courts draw a

19   line between interpreting multiple contracts as *one transaction* and merging them together as *one*

20   *contract*.  *See, e.g.*, *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 491 (2023)

21   ("Construing different instruments together pursuant to Civil Code section 1642 is not the same

22   thing as incorporating them into one instrument"); *Tulare Golf Course, LLC v. Vantage Tag, Inc.*,

23   No. 1:21-cv-00505-JLT-SKO, 2023 WL 2587994, at *6 (E.D. Cal. Mar. 21, 2023) ("construing

24   two agreements 'in light of one another' does not "merge them into a single written contract")

25   (quoting *Mountain Air Enters., LLC, v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 760 (2017)).

26   Mariano cites no authority holding that several written agreements presented as "part of the same

27   employment package" merge together to form "one contract."

28         Given that the two separate agreements must be treated as such, *Coinbase, Inc. v. Suski*,

United States District Court
Northern District of California

602 U.S. 143 (2024) controls here.  *See* ECF No. 53 at 17.  In *Coinbase*, the United States

Supreme Court held that "where parties have agreed to *two* contracts—one sending arbitrability

disputes to arbitration, and the other explicitly or implicitly sending arbitrability disputes to the

courts—a court must decide which contract governs."  *Coinbase*, 602 U.S. at 152.  That is the

situation presented here, where the Employment Agreement delegates arbitrability questions to an

arbitrator but the Proprietary Information Agreement provides that "any legal action or proceeding

. . . may be instituted in federal court."  ECF No. 39-3 at 12.

Mariano points to several cases in which courts have found that "similar Oracle arbitration

agreements" delegated questions of arbitrability to an arbitrator, ECF No. 38 at 19–20, but none of

these cases held that Oracle's arbitration agreement delegated questions of arbitrability of *another,*

*separate agreement*—in this case, the Proprietary Information Agreement—to an arbitrator.

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074–75 (9th Cir. 2013) (incorporation of

United Nations Commission on International Trade Law rules evinced delegation of arbitrability

with respect to the same contract); *Lopes v. Oracle Am., Inc.*, No. 22-cv-01815-BLF, 2022 WL

4281354, at *1, at *5 n.1 (N.D. Cal. Sept. 15, 2022) (same regarding American Arbitration

Association rules).[2]  Thus, these authorities provide no reason to deviate from *Coinbase*.

In short, the Court cannot conclude that the Employment Agreement's delegation of

arbitrability operates to delegate to arbitration questions regarding the separate Proprietary

Information Agreement.  Accordingly, the Court must decide the arbitrability of Oracle's claims.

## 2.    Scope of Arbitration Provision

Mariano contends that, if the Court reaches the issue of arbitrability, it should find that

Oracle's claims fall within the scope of the Employment Agreement's arbitration provision.  ECF

No. 38 at 20–25.  Oracle responds that, as a matter of contract interpretation, Mariano's proposed

reading would vitiate the Proprietary Information Agreement's venue provision.  ECF No. 53 at

---

[2] On reply, Mariano argues that "California law on incorporation also supports treating the agreements as one."  ECF No. 54 at 10 (citing *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)).  Because a "district court need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), however, the Court declines to consider Mariano's incorporation argument.

United States District Court
Northern District of California

1   20–26.

2        The Court begins by finding that the Employment Agreement and the Proprietary

3   Information Agreement are "interdependent instruments, together designed to attain one

4   preconceived objective, and should be construed together." [3] *Tulare Golf Course*, 2023 WL

5   257994, at *7; *see also Goodman v. Severin*, 274 Cal. App. 2d 885, 895 (1969).  But "construing

6   two agreements together pursuant to § 1642 functions as an interpretive aide, and the Court must

7   nonetheless consider traditional principles of contract interpretation to determine whether the

8   terms of one agreement apply to the other." *Tulare Golf Course*, 2023 WL 257994, at *6.

9        "It is a standard rule of contract interpretation that specific terms control over general

10  ones." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (internal quotations

11  omitted).  Mariano signed an Employment Agreement that governed the rights and obligations of

12  the parties with respect to Mariano's employment.  ECF No. 39-2 at 13.  That Employment

13  Agreement directed that Mariano "also must sign the Proprietary Information Agreement," ECF

14  No. 39-3 at 13, which Mariano did.  The Proprietary Information Agreement sets forth the rights

15  and obligations of the parties with respect to confidential, proprietary, or trade secret

16  information—which is the subject of the claims in this action.  The Proprietary Information

17  Agreement does not provide for arbitration of claims arising from or related to proprietary

18  information; to the contrary, it provides that "legal action[s] or proceeding[s] . . . in any way

19  connected with this agreement may be instituted in federal court."  ECF No. 39-3 at 12.  Taking

20  these agreements together, *see* Cal. Civ. Code § 1642, the most natural reading is that claims that

21  arise under the more specific terms of the Proprietary Information Agreement are subject to that

22  agreement's venue provision rather than the more general Employment Agreement's arbitration

23  provision.

24        Mariano argues that the Employment Agreement's arbitration provision "supersedes" and

25  "governs over" the Proprietary Information Agreement's venue provision.[4]  ECF No. 38 at 13.

26

27  [3] The parties appear to agree on this.  ECF No. 38 at 17; ECF No. 53 at 15.
    [4] Mariano argues that the Employment Agreement "supersedes" the Proprietary Information
28  Agreement partly because the date listed next to Mariano's signature on the Employment
    Agreement is "7/15/16," ECF No. 39-3 at 15, and the corresponding date on the Proprietary

United States District Court
Northern District of California

United States District Court
Northern District of California

1    But a "basic rule of statutory construction is that one provision should not be interpreted in a way

2    which is internally contradictory or that renders other provisions of the same statute inconsistent

3    or meaningless." *Hughes Air Corp. v. Pub. Utils. Comm'n*, 644 F.2d 1334, 1338 (9th Cir. 1981);

4    *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give

5    effect to every part, if reasonably practicable, each clause helping to interpret the other.").

6         Mariano argues that the arbitration provision and the venue provision can be "harmonized"

7    because the arbitration provision uses broader language ("dispute or claim") than the venue

8    provision ("legal action or proceeding"). ECF No. 38 at 22. It is true that other courts have

9    "harmonized" similar provisions this way. *See id.* (citing *Roma Mikha, Inc. v. S. Glazer's Wine &*

10   *Spirits, LLC*, 2023 WL 3150076, at *6 (C.D. Cal. Mar. 30, 2023); *Mohamed v. Uber Techs., Inc.*,

11   848 F.3d 1201 (9th Cir. 2016)). But those cases concerned the interpretation of one contract rather

12   than two taken together. In *Suski v. Coinbase, Inc.*, when the Ninth Circuit was presented with

13   two contracts in which one contained an arbitration provision and the other a forum selection

14   clause sending disputes to the courts, the Ninth Circuit distinguished its earlier decision in

15   *Mohamed* precisely because "there, the arbitration clause and the forum selection clause were

16   included in the same contract." 55 F.4th 1227, 1231 (9th Cir. 2022).

17        Finally, Mariano argues that "any ambiguities in or questions about the agreements and

18   whether arbitration is required here must be interpreted against Plaintiffs." ECF No. 38 at 25; *see*

19   Cal. Civ. Code § 1654 ("In cases of uncertainty not removed by the preceding rules, the language

20   of a contract should be interpreted most strongly against the party who caused the uncertainty to

21   exist.") But a contract provision is only "ambiguous when it is capable of two or more

22   constructions, both of which are reasonable." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th

23   Cir. 2015) (quoting *Producers Dairy Delivery Co. v. Sentry Inc. Co.*, 41 Cal. 3d 903, 912 (1986)).

24   In this case, neither provision is ambiguous. Mariano's proposed construction would render one

25

26   _____

27   Information Agreement is "7/5/16." *Id.* at 12. Oracle contends that this discrepancy was a
     mistake because Oracle's records show Mariano returned both agreements on July 5, 2016. ECF
     No. 53 at 24. In any event, the Court does not read the Employment Agreement to "supersede"

28   the Proprietary Information Agreement because the Employment Agreement expressly references
     and requires Mariano to sign the Proprietary Information Agreement. *See* ECF No. 39-3 at 13.

of the contract's provisions superfluous, and such an approach violates basic principles of contract interpretation.  Accordingly, there are no ambiguities to interpret in Mariano's favor.  *See Daniel v. Ford Motor Co.*, 806 F.3d at 1224 ("Where a contract provision is 'clear and unambiguous,' it is not subject to questions of construction or interpretation.'") (quoting *Neal v. State Farm Ins. Cos.*, 188 Cal. App. 2d 690, 693–94 (1961) (internal quotation marks omitted)).

Accordingly, the Court holds that the Proprietary Information Agreement's venue provision authorizes Oracle to bring claims related to misappropriation of its proprietary information in this Court rather than arbitration.  The Court will deny Mariano's motion to compel arbitration.

### B.      Procore's Motion to Stay

Procore moves to stay the entire action pending resolution of arbitration between Oracle and Mariano.  Because the Court denies Mariano's motion to compel arbitration, it also denies Procore's motion to stay.

### C.      Mariano's and Procore's Motions to Dismiss DTSA Claim

Finally, Mariano and Procore argue that Oracle fails to state a DTSA claim.  ECF No. 38 at 25–33; ECF No. 40 at 17–26.  Under the DTSA, trade secrets are defined as information which must (1) derive independent economic value, actual or potential, from not being generally known in the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  18 U.S.C. § 1839(3).  To prevail on a claim under the DTSA, "a plaintiff must prove: (1) that the plaintiff possessed a trade secret[;] (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d at 657–58 (citing 18 U.S.C. § 1839(5)).

Both Mariano and Procore argue that Oracle fails to plead sufficient particularity of the trade secrets.  Moreover, Mariano argues that Oracle fails to plead misappropriation as to him, and Procore argues that Oracle fails to plead misappropriation as to it.

#### 1.      Particularity of Trade Secrets

A complaint "need not spell out details of the trade secret but must identify the trade secret

United States District Court
Northern District of California

with sufficient particularity to give defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012). "Plaintiffs must clearly refer to tangible trade secret material instead of referring to a system which potentially qualifies for trade secret protection.  Plaintiffs may not simply reply upon 'catchall' phrases or identify categories of trade secrets." *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 930 (N.D. Cal. 2024) (quoting *InteliClear*, 978 F.3d at 657–58). "[T]he basic test is (1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice of what the theft is about." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N. D. Cal. 2020).

Defendants argue that Oracle alleges only "broad categories and vague descriptions" of the trade secrets at issue, that Oracle does not distinguish its claimed trade secrets from "matters of general knowledge," and that Oracle fails to plead the economic value of the trade secrets.  ECF No. 38 at 27–31; ECF No. 40 at 18–22.  Oracle responds that it identified its trade secrets not as "broad catchall categories" but "as particular files," that it sufficiently pleads that the alleged trade secrets are not "generally known," and that its allegations regarding its investments in the alleged trade secret materials and their impact on Oracle's success in the market are sufficient to plead economic value.  ECF No. 53 at 28–31; ECF No. 51 at 20–29.

Oracle's cited cases are closer to the mark than Defendants'.  *Arthur J. Gallagher & Co.*, 498 F. Supp. 3d 1155, is particularly instructive.  There, as here, a plaintiff alleged theft of particular categories of documents and then provided "examples of specific documents (which the defendant former employee] emailed to her personal email account)."  *Id.* at 1172.  The court held that the plaintiff's description made it "plausible that something other than general knowledge is at issue," and the plaintiff's identification of "nine specific documents that it claimed contained its trade secrets" left "little doubt here that Defendant have been put on adequate notice."  *Id.* at 1172–73.  The same is true here.  Oracle identifies specific categories of alleged trade secret materials:

> These Oracle trade secret materials, for instance, include confidential Oracle computer source code, as well as confidential Oracle

United States District Court
Northern District of California

> documents relating to Oracle's TPM and ERP integrations (the process of connection to a client's enterprise resource software), such as: (1) confidential and proprietary source code computer files, including python source code files and SQL database files related to specific ERP adapters developed by Oracle engineers; (2) confidential test plans, project plans, and implementation plans developed by Oracle engineers associated with integrations with various ERPS for specific Oracle client implementations; (3) confidential files reflection Oracle client information, revenue projections, and other internal strategy documents related to Oracle's TPM and ERP integrations; and (4) confidential internal Oracle documents and presentations detailing the design and implementation of various Oracle ERP integrations.

ECF No. 1 ¶ 37.  The complaint then lists specific documents and describes the alleged trade secret nature of their contents:

> For example, those files include specific .zip files entitled 'TexturaCloud.zip' and 'TexturaSPs.zip,' which include over 50 proprietary and confidential Oracle SQL source code files (together with log files) developed by Oracle engineers and related to implementing Oracle's TPM Viewpoint Adapter.  These confidential Oracle code files are confidentially deployed at a customer-site to enable integration with Oracle TPM, and only pursuant to non-disclosure agreements with those at the customer to whom disclosure is necessary.  These confidential code files, developed through substantial effort of Oracle engineers, are critical to Oracle's success in the marketplace, including as a result of their secret and proprietary nature . . . .

*Id.* ¶ 53; *see, e.g., id.* ¶¶ 54–57.

As in *Arthur J. Gallagher & Co.*, Oracle's allegations leave "little doubt . . . that Defendants have been put on adequate notice" of what it is that Oracle claims is trade secret.  498 F. Supp. 3d at 1172; *see also TMX Funding, Inc. v. Impero Tech. Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010) (trade secret allegations were sufficient where plaintiff alleged nine broad categories of trade secret information, including, among other things, "[i]ts software, source codes, data, formulas, and other technical information developed as proprietary and confidential products and services").  Moreover, Oracle's allegations that the materials were "confidentially deployed . . . and only pursuant to non-disclosure agreements" are sufficient to plead that they are materials beyond general knowledge.  *See Salesforce.com, Inc. v. GEA, Inc.*, No. 19-cv-01710-JST, 2021 WL 9860787, at *6–7 (N.D. Cal. Feb. 2, 2021) (allegations that information is "not publicly available, or available to [a company's] competitors,"

11

1    are sufficient to raise inference that information is protectable as a trade secret). And its

2    allegations that the materials were "developed through substantial effort of Oracle engineers" and

3    "are critical to Oracle's success in the marketplace" show independent economic value. *See Cisco*

4    *Sys., Inc. v. Chung*, No. 19-cv-07562-PJH, 2020 WL 4505509, at *5 (N.D. Cal. Aug. 5, 2020)

5    ("alleged effort and sales advantage" sufficient to plead independent economic value).

6    Accordingly, the Court finds that Oracle has sufficiently pled the particularity of the trade secrets

7    alleged.

### 2.    Misappropriation by Mariano

9         Under the DTSA, "misappropriation" means either the "(1) [a]cquisition of a trade secret

10   by another person who knows or has reason to know that the trade secret was acquired by

11   improper means;" or the "(2) [d]isclosure or use of a trade secret of another without express or

12   implied consent." 18 U.S.C. § 1839(5).

13        Mariano argues that Oracle fails to plead misappropriation by him. ECF No. 38 at 32–33.

14   Mariano claims that Oracle pleads only "incidental possession" and relies improperly on the

15   inevitable disclosure doctrine. ECF No. 38 at 32–33.

16        But Oracle pleads far more than that Mariano merely "failed to return lawfully required

17   information," ECF No. 38 at 32, including that Mariano transferred those files from his Oracle

18   laptop to his Procore laptop "nearly two years after Mariano started working on competing

19   products at Procore, in furtherance of his job responsibilities and within the scope of his

20   employment." ECF No. 1 at ¶ 20. Courts have allowed trade secret misappropriation with similar

21   even fewer indicia of misappropriation. *See, e.g.*, *E. & J. Gallo Winery v. Instituut Voor*

22   *Landbouw—En Viserijonderzoek*, No. 1:17-cv-00808-DAD-EPG, 2018 WL 2463869, at *7 (E.D.

23   Cal. June 1, 2018) (allegations of similarity of products accompanied by allegations of exactly

24   how defendants improperly obtained the alleged trade secrets were sufficient to plead

25   misappropriation). Mariano's citation to cases in which courts dismissed claims alleging solely

26   that an employee immediately began working for a competitor or that a competitor developed a

27   product in "record time" is unavailing, because, as explained above, Oracle pleads more here.

28

United States District Court
Northern District of California

1

### 3.    Misappropriation by Procore

2       Finally, Procore argues that Oracle fails to plead misappropriation as to Procore because

3    Oracle "cannot merely impute [its] allegations against Mr. Mariano to Procore" and Oracle fails to

4    plead Procore's knowledge that it acquired trade secrets.  ECF No. 40 at 24–26.

5       Oracle responds first that it pled that Procore is vicariously liable for Mariano's conduct.

6    ECF No. 51 at 34.  "Whether an employer is vicariously liable for an employee's misappropriation

7    turns on whether the employee's trade secret misappropriation 'was committed within the scope of

8    employment.'"  *Neutron Holdings, Inc. v. Hertz Corp.*, No. 23-cv-00934-JSC, 2023 WL 3919465,

9    at *5 (N.D. Cal. June 8, 2023) (quoting *Brain Injury Ass'n of Cal. v. Yari*, No. 19-CV-5912, 2020

10   WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020)).  Procore argues on reply that Oracle does not plead

11   facts sufficient to establish that Mariano's misappropriation occurred "within the scope."  ECF

12   No. 55 at 21.  The Court is not persuaded:  Oracle pleads that Mariano's "misappropriation . . .

13   occurred, and is occurring, during the course and within the scope of his employment at

14   Procore . . . including transferring Oracle's trade secret information to Procore's equipment, and

15   using such Oracle information in his competitive role at Procore."  ECF No. 1 ¶ 84.  Oracle further

16   pleads that Mariano transferred Oracle files to Procore devices after starting at Procore, and that

17   Procore subsequently released a product similar to the Oracle product to which the transferred files

18   were related.  This is sufficient to allege vicarious liability.  *See Neutron Holdings, Inc.*, 2023 WL

19   3919465, at *5 (vicarious liability attached where plaintiff's former employee allegedly took

20   algorithms related to a particular product feature, and defendant then released a product with a

21   similar feature).

22       Accordingly, the Court finds Oracle has sufficiently pled its DTSA claim against Mariano

23   and Procore.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons, Defendants' motions to compel arbitration, to stay, and to dismiss are denied.

**IT IS SO ORDERED.**

Dated:  April 9, 2025



_____
JON S. TIGAR
United States District Judge

14