Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
michael.devries@kirkland.com
Telephone: (714) 982-8822

Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

*Attorneys for Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation*

*[Additional counsel listed on signature page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC, ORACLE INTERNATIONAL CORPORATION, and TEXTURA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PROCORE TECHNOLOGIES, INC., AND PROCORE PAYMENT SERVICES, INC,<br><br>Defendants. | C.A. No. 4:24-cv-7457-JST<br><br>**ORACLE'S OPPOSITION TO PROCORE'S MOTION TO COMPEL PARTICULARIZED TRADE SECRET DISCLOSURE BY ORACLE**<br><br>Judge: Hon. Laurel Beeler<br>Hearing Date: January 15, 2026<br>Time: 9:30 a.m.<br>Location: Courtroom B<br><br>**PUBLIC VERSION** |

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Factual Background ..... 2

A. Oracle Has Been Consistent in Describing the Asserted Trade Secrets As Oracle's Files Including Their Contents ..... 2

B. Discovery Has Confirmed Procore's Misappropriation ..... 4

C. Procore Unilaterally And Unreasonably Attempts to Limit the Scope of Oracle's Trade Secrets, and Delays Raising Issues with the Court ..... 5

III. Legal Standard ..... 6

IV. Argument ..... 8

A. Oracle's Trade Secret Disclosure Fully Complies With The Law ..... 8

1. Procore's Requested Relief Is Improper and Mischaracterizes Oracle's Disclosures ..... 8

2. Oracle's Approach Is Fully Consistent With Precedent, And Courts Have Routinely Accepted This Approach For Identifying Trade Secrets ..... 10

3. Oracle's Detailed Trade Secret Disclosures Are Entirely Sufficient ..... 14

4. Procore Will Face No Prejudice From Oracle's Trade Secret Disclosures, Which Have Remained Consistent ..... 21

B. Procore's Motion To Compel More Particularized Disclosures Should Be Denied ..... 24

V. Conclusion ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alphonso Inc. v. Tremor Video, Inc.*,
2022 WL 17968081 (N.D. Cal. Oct. 31, 2022)....................9

*Alta Devices, Inc. v. LG Electronics, Inc.*,
No.18-cv-00404, 2019 WL 176261 (N.D. Cal. Jan. 10, 2029)....................25

*Arthur J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020)....................2, 7

*Arvinas Operations, Inc. v. Qian*,
No. 3:22-CV-00717-RNC, 2024 WL 4834258 (D. Conn. Nov. 20, 2024)....................21

*Auris Health v. Noah Med. Corp.*,
No. 22-cv-08073, 2024 WL 5294698 (N.D. Cal. Nov. 23, 2024).................... *passim*

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014)....................11

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
No. 15-cv-01370, 2018 WL 514923 (N.D. Cal. Jan. 23, 2018)....................10

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
No. 5:10-cv-03428, D.I. 465 (N.D. Cal. Feb. 7, 2012) (Dkt. 174-09)....................21

*Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*,
No. 21-cv-01129, 2021 WL 5197215 (N.D. Cal. Nov. 9, 2021)....................12, 25

*Chung v. Intellectsoft Grp. Corp.*,
No. 21-CV-03074-JST, 2024 WL 813445 (N.D. Cal. Feb. 12, 2024)....................7

*Cisco Sys, Inc. v. Chung*,
No. 19-cv-07562, 2020 WL 7495085 (N.D. Cal. Dec. 21, 2020)....................7, 10

*Commure, Inc. v. Canopy Works, Inc.*,
No. 24-cv-02592 2025 WL 1150695 (N.D. Cal. Apr. 18, 2025)....................25

*Computer Econ., Inc. v. Gartner Grp., Inc.*,
50 F. Supp. 2d 980 (S.D. Cal. 1999)....................14

*Double Eagle Alloys, Inc. v. Hooper*,
134 F.4th 1078 (10th Cir. 2025)....................14

*Genentech, Inc. v. JHL Biotech, Inc.*,
No. C 18-06582, 2019 WL 1045911 (N.D. Cal. Mar. 5, 2019)....................10

*IDX Systems Corp. v. Epic Systems Corp.*,
285 F.3d 581 (7th Cir. 2002) ........................................................................13, 14

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998) ............................................................................14

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) .................................................................2, 10, 13, 21

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994) ..............................................................................23

*Kennedy v. Natural Balance Pet Foods, Inc.*,
2008 WL 2053551 (S.D. Cal. May 13, 2008)...............................................23, 24

*LivePerson, Inc. v. [24]7.ai, Inc.*,
No. 17-cv-01268, 2018 WL 5849025 (N.D. Cal. Nov. 7, 2018) (J. Tigar) ..................... *passim*

*Loop AI Labs Inc. v. Gatti*,
195 F. Supp. 3d 1107 (N.D. Cal. 2016) .................................................................9

*MedioStream, Inc. v. Microsoft Corp.*,
869 F. Supp. 2d 1095 (N.D. Cal. 2012) .................................................................6

*MicroVention, Inc. v. Balt USA, LLC*,
No. 20-cv-02400, 2023 WL 4316880 (C.D. Cal. May 3, 2023)..........................2, 21

*Monster Energy Co. v. Vital Pharms., Inc.*,
No. EDCV 18-1882, 2022 WL 1599712 (C.D. Cal. Apr. 19, 2022) ........................2

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................................23

*Myrio Corp. v. Minerva Network, Inc.*,
Case No.: C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 4, 2001) ..........................................................................................13

*PaySys International, Inc. v. Atos Se*,
No. 14-CV-10105 (KBF), 2016 WL 7116132 (S.D.N.Y. Dec. 5, 2016)....................11

*Perlan Therapeutics, Inc. v. Superior Ct.*,
178 Cal. App. 4th 1333 (2009) ............................................................................13

*Proofpoint, Inc. v. Vade Secure Inc.*,
No. 3:19-cv-4238, D.I. 441 (N.D. Cal. Mar. 12, 2021) (Dkt. 174-08) ......................21

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
149 F.4th 1081 (9th Cir. 2025) ...................................................6, 8, 10, 16

*Reis v. Tavant Techs., Inc.*,
No. 19-CV-609-WQH-JLB, 2019 WL 5727453 (S.D. Cal. Nov. 5, 2019) .............................14

*Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.*,
Case No. 24-cv-03972-EKL, Dkt. 144 (N.D. Cal. Mar. 13, 2025)..........................................12

*Ross v. Abbott Vascular Inc.*,
No. 19-CV-03794-JST, 2022 WL 20275185 (N.D. Cal. Mar. 3, 2022).................................19

*Sensoren GmbH v. NVIDIA Corp.*,
No. 23-cv-05721, 2025 WL 2505115 (N.D. Cal. Aug. 28, 2025) ......................................7, 10

*Spin Master Ltd v. Your Store Online*,
No. CV 09-2121 CAS JCX, 2010 WL 4883884 (C.D. Cal. Nov. 22, 2010)...........................23

*Stemcell v. StemExpress*,
2022 WL 4021905 (N.D. Cal. Sept. 3, 2022) (J. Beeler).............................................18, 19, 23

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp, Inc.*,
68 F.4th 792 (2d Cir. 2023) ...........................................................................................2, 11, 21

*Teradata Corp. v. SAP SE*,
No. 3:18-cv-03670, D.I. 267 (N.D. Cal. June 12, 2020) (Dkt. 174-10).................................21

*TMX Funding, Inc. v. Impero Tech. Inc.*,
No. C 10-00202 JF (PVT), 2010 WL 2509979 (N.D. Cal. June 17, 2010) ..............................7

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016) .................................................................................................17

*Walker Prods., Inc. v. Cong*,
No. 23-cv-02201, 2025 WL 868777 (C.D. Cal. Feb. 10, 2025) .........................................7, 10

*WeRide Corp. v. Kun Huang*,
379 F. Supp. 3d 834 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD,
2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ..........................................................................12

*Western Air Charter v. Schembari*,
No. CV-17-420, 2018 WL 6537158 (C.D. Cal. Apr. 9, 2018) ................................................25

*X6D Ltd. v. Li-Tek Corps. Co.*,
No. CV 10-2327-GHK (PJWX), 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27,
2012) .......................................................................................................................................13

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
281 F. Supp. 3d 1021 (S.D. Cal. 2017).....................................................................................14

## I. INTRODUCTION

The discovery conducted to date—discovery that Procore tellingly resisted at every turn (*e.g.*, Dkts. 68, 103, 150 at 4 ("Procore's discovery responses have been inadequate, despite court orders"), 151)—has yielded substantial evidence that Oracle's former employee Mark Mariano took hundreds of Oracle trade secret files with him to Procore and that he and others at Procore used those files extensively to develop software that Procore used to compete with Oracle. Having been compelled to finally participate in discovery more fully, Procore now has moved back to an argument it lost months ago—seeking a further identification of Oracle's trade secrets. But this time, Procore adds a new, albeit unjustified, twist: asking for an extraordinary, nonsensical finding that the Oracle trade secret files detailed in Oracle's trade secret disclosure do not include their ***contents***, presumably because Procore wants to argue that it should not face liability for using the contents of those files. Procore's motion misconstrues Oracle's trade secret disclosure, is contrary to law, and should be denied.

***First***, Procore mischaracterizes Oracle's trade secret disclosure. From the outset of this case, Oracle has consistently and repeatedly described its trade secrets with reference to specific Oracle files and their contents, as the Court confirmed in denying Procore's motion to dismiss. *See* Dkt. 76 at 10-12 ("Oracle identifie[d] specific categories of alleged trade secret materials" and "[t]he complaint then lists ***specific documents and describes the alleged trade secret nature of <u>their contents</u>***.").[1] Oracle's trade secret identification is no different: for each file identified as a trade secret, Oracle describes the file's contents, often with screenshots of contents of the file, and explains why trade secret protection is warranted. Procore's claim that the parties "structured discovery" around an understanding that Oracle's trade secrets were somehow limited to files ***without their contents*** is thus nonsensical and simply not correct, and if anything raises serious concerns that Procore has improperly withheld discovery based on the twisted interpretation it espouses.

***Second***, Oracle's approach—identifying specific trade secret files that were taken from Oracle and found at Procore, describing their contents (including with specific screenshots), and explaining why they qualify as trade secrets—is fully consistent with substantial precedent. *See, e.g.*, *Auris Health*

---

[1] All emphasis added unless otherwise noted.

*v. Noah Med. Corp.*, No. 22-cv-08073, 2024 WL 5294698, at *2 (N.D. Cal. Nov. 23, 2024) (trade secret identification sufficiently particular when they contained cited documents and descriptions); *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1171-72 (N.D. Cal. 2020) (sufficient to identify trade secret documents); *MicroVention, Inc. v. Balt USA, LLC*, No. 20-cv-02400, 2023 WL 4316880, *1, *3 (C.D. Cal. May 3, 2023) (trade secrets sufficiently particular when identifying trade secrets as "55,000 documents, which span over 186,000 pages" and set forth document categories and identified these documents by "Bates Number range for every distinct alleged trade secret or the file type or title."); *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882, 2022 WL 1599712, at *26 (C.D. Cal. Apr. 19, 2022) (sufficient to identify trade secret documents); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020) (plaintiff "identified aspects of its database logic and architecture with enough specificity to create a triable issue of fact" as to trade secret particularity); *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp, Inc.*, 68 F.4th 792, 801-02 (2d Cir. 2023) (upholding trade secret identification where jury was shown particular documents with general descriptions of each document). Oracle's trade secret identification is also consistent with Judge Tigar's previous ruling in this case denying Procore's motion to dismiss (Dkt. 76). The Court should reject Procore's challenge to Oracle's trade secret identification, again.

## II. FACTUAL BACKGROUND

### A. Oracle Has Been Consistent in Describing the Asserted Trade Secrets As Oracle's Files Including Their Contents

From the outset of this case, Oracle has consistently maintained that Procore misappropriated highly valuable, sensitive Oracle trade secret files—with reference to the contents of those files—as reflected in the Oracle's Complaint filed on October 25, 2024. *See, e.g.*, Dkt. 1, ¶¶ 53-57, 67 ("***[T]he <u>contents</u> of the Oracle trade secret files*** described above are ***directly related to Mariano's work at Procore*** . . . ."). Indeed, in denying Procore's motion to dismiss that challenged Oracle's trade secret identification, Judge Tigar expressly found that "Oracle identifies specific categories of alleged trade secret materials" and "then lists specific documents and **<u>described the alleged trade secret nature of *their contents*</u>**," which "leave[s] 'little doubt . . . that Defendants have been put on adequate notice'

of what it is that Oracle claims is trade secret."[2] Dkt. 76 at 10-11.

During discovery, Oracle served trade secret disclosures that followed the same approach. On February 27, 2025, Oracle served its Initial Trade Secret Disclosures asserting 174 trade secret files (including their contents) that were bucketized across several categories. Oracle explained: "Oracle's trade secrets are a specific set of confidential Oracle files," that "[t]he misappropriated trade secret files are organized into categories based on the subject matter of the file, the technologies, strategies, data, etc. captured in the file," and that each file "as a whole" is a trade secret. Dkt. 175-04. Oracle supplemented its trade secret disclosures twice to identify additional trade secret files that discovery revealed Procore misappropriated, each time consistently following this approach. Dkt. 175-05 at 4 ("each document and source code file, as a whole, constitutes a trade secret").

For example, in Oracle's latest disclosure—Oracle's Second Amended Trade Secret Disclosures served—Oracle identifies 442 Oracle trade secret files, which Oracle further bucketized in nine categories (and sub-categories, with descriptions),[3] and asserts each file "as a whole" is a trade secret by describing the trade secret nature of the contents of each file. As just a couple of examples:

- [redacted]

---

[2] Procore contends that it "did not immediately dispute Plaintiffs' Initial Trade Secret Disclosures due to its pending motion to stay or dismiss" (Mot. at 4), but it omits that the motion to dismiss it filed did challenge Oracle's trade secret disclosures, raising many of the same arguments it does here. Dkt. 40 at 10-15. Procore also omits that in denying Procore's motion, the Court specifically found that Oracle identified its trade secrets with particularity by listing specific documents and describing their contents. Dkt. 76 at 10-11.

[3] [redacted]

- [redacted]

**B. Discovery Has Confirmed Procore's Misappropriation**

Despite Oracle clearly identifying its trade secrets from the outset of this case (and in its subsequent trade secret disclosures), Procore has resisted discovery at every turn. This forced Oracle to file multiple motions to compel, and the Court ultimately found that "Procore's discovery responses have been inadequate, despite court orders . . . ." Dkt. 150 at 4. Although Procore continues to withhold key aspects of its document production, Oracle has already amassed substantial evidence confirming Procore's extensive use of Oracle's trade secrets through the discovery that Procore was compelled to provide. Recent discovery has also revealed that Procore was not forthcoming with the Court (or Oracle) about the full extent of Oracle files it knew about. [redacted] Ex. A. [redacted] *Id.* Yet Procore's counsel specifically "denie[d] knowledge of ***any Oracle documents*** that were not identified prior to this litigation" to this Court months later, during the May 29, 2025 discovery hearing, after which the Court ordered that "[i]f that is not correct, Procore must supplement its responses to include those documents." Dkt 103 at 1. Despite this Court's Order, Procore did not reveal the existence of this box of Oracle trade secret documents to Oracle, and Oracle was unaware of it until several months later after Mr. Mariano's separate counsel first disclosed the existence of the box on September 2, 2025, and produced the Oracle documents in that box on October 23, 2025.

Despite Procore's attempts to shield the full extent of its misappropriation from discovery, substantial evidence obtained through the discovery process has confirmed that Procore egregiously misappropriated Oracle's trade secrets. As just a handful of examples, [redacted]

[redacted] Ex. B. [redacted] Ex. B. [redacted] Ex. C. [redacted] Ex. D. [redacted] Ex. E. Despite the significant misappropriation evidence that has now been revealed, Procore continues to employ Mariano in a position of leadership and to sell and distribute software based on Oracle's trade secrets.

### C. Procore Unilaterally And Unreasonably Attempts to Limit the Scope of Oracle's Trade Secrets, and Delays Raising Issues with the Court

Four months after Oracle served its February 27, 2025 Initial Trade Secret Disclosures, Procore sent a letter on June 26, 2025, asserting that Procore planned to interpret Oracle's trade secrets to be "the specific combination of the verbatim/express language and content, context, filename, format, and other elements of each file." Dkt. 167-4 at 1. While Procore's self-described interpretation of Oracle's disclosures was far from clear, it appeared to Oracle that Procore hoped to limit the scope of the specific trade secret files that Oracle identified as trade secrets to the electronic files in their literal form, down to the electronic bit, such that by Procore's own fiat the files' *content* was somehow outside the scope of the case and could not be considered in judging Procore's misappropriation. Procore claims that "Plaintiffs did not respond to this letter" (Mot. at 5), but that is wrong: the parties had a lead counsel meet-and-confer specifically to discuss this letter on July 8, during which Oracle explained that the asserted trade secrets are Oracle's trade secret files, ***including the content of those***

***files***, as Oracle repeatedly explained in its disclosures (and as reflected in Judge Tigar's order denying Procore's motion to dismiss (Dkt. 76)). Petersen Decl., ¶¶ 3-4.

Following the parties' lead-counsel meet-and-confer in early July, Procore again went silent until August 25, when it sent another letter advancing the same incorrect narrative, declaring once again by fiat that Oracle's trade secrets are limited to the files "arranged and assembled precisely in the manner produced by Oracle." Dkt. 167-5 at 1-2. Oracle responded in writing on September 17, explaining again (as it had in the earlier meet and confer) that Procore's proffered interpretation was incorrect: "Oracle's trade secrets are Oracle's confidential files, ***and that also includes the substance of the files' content and information reflected within***, even if not presented with the 'particular combination of each identified file's name, formatting, specific content, and context' . . . ." Dkt. 167-6 at 2. The parties had another lead counsel meet-and-confer on October 3, and two weeks later, Procore served a discovery letter brief regarding Oracle's trade secret disclosures. That letter brief, which was ultimately filed on October 24, was denied by the Court on October 27 without prejudice to Procore filing a full noticed motion. Dkt. 169. About a month later, Procore filed the instant motion.

## III. LEGAL STANDARD

As the Ninth Circuit recently held, "whether a DTSA plaintiff has identified information that is sufficiently particular to constitute a trade secret—information that is kept secret and derives value from not being generally known—is a question of fact." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025). The identification of trade secrets in DTSA cases is an "iterative process" accomplished through discovery. *Id.* at 1088. "While a district court has broad discretion to manage pleadings and discovery," dismissing or striking trade secret identifications is not appropriate barring "an extreme circumstance." *Id.* at 1085.

For purposes of discovery, a trade secret need only be identified "with sufficient particularity to give defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." Dkt. 76 at 9-10 (quoting *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012)). Courts—including this one—routinely hold trade secret identifications to be sufficient where a plaintiff "identifies specific categories of alleged trade secret materials" and then "lists specific documents and

describes the alleged trade secret nature of their contents." *Id.* at 10-11 (*citing Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020), *TMX Funding, Inc. v. Impero Tech. Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3 (N.D. Cal. June 17, 2010)).

Even when discovery nears completion and at the summary judgment stage, a plaintiff need only raise a genuine issue of material fact as to whether it "describe[d] the 'subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those parties … skilled in the trade.'" *Auris Health*, 2024 WL 5294698 at *2 (denying motion to compel and finding that trade secrets described with sufficient particularity when they contained cited documents and descriptions). To meet this standard, trade secret plaintiffs are not required "to compose their identifications as if they were patent claims" and trade secret identifications need not specifically parse "what parts of the cited document are being claimed." *Id.*; *see also LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-cv-01268, 2018 WL 5849025, at *10 (N.D. Cal. Nov. 7, 2018) (J. Tigar) (denying summary judgment and holding that plaintiff need not parse out portions of a trade secret XML file to sufficiently identify trade secret); *Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, No. 23-cv-05721, 2025 WL 2505115, at *4 (N.D. Cal. Aug. 28, 2025) (denying summary judgment where plaintiffs disclosures "include[d] references to specific source code files, documents, and figures that illustrate particular functionalities are protectable trade secrets"); *Cisco Sys, Inc. v. Chung*, No. 19-cv-07562, 2020 WL 7495085, at *10 (N.D. Cal. Dec. 21, 2020) (denying motion to strike because identifying documents "provide[s] [defendants] sufficient detail about these projects to investigate the claims against them as they pertain to that information."); *Walker Prods., Inc. v. Cong*, No. 23-cv-02201, 2025 WL 868777, at *5 (C.D. Cal. Feb. 10, 2025) (denying motion for summary judgment where disclosures "provided 'an overarching narrative response' followed by specific tables, identifiers, and documents").[4]

---

[4] Procore argues that the DTSA "imposes an even higher standard" for trade secret particularity than that under the CUTSA. Mot. at 9-10. This is irrelevant, even if true, because Oracle's disclosure is more than sufficient under the DTSA; but Procore's reliance on *Chung* (the only case it cites as support for this assertion) is misplaced. Contrary to Procore's contention, *Chung* stated that a prior discovery order finding trade secret disclosures sufficient did not absolve plaintiffs of their burden to prove the merits of their case on summary judgment. *Chung v. Intellectsoft Grp. Corp.*, No. 21-CV-03074-JST, 2024 WL 813445, at *8 (N.D. Cal. Feb. 12, 2024).

## IV. ARGUMENT

### A. Oracle's Trade Secret Disclosure Fully Complies With The Law

#### 1. Procore's Requested Relief Is Improper and Mischaracterizes Oracle's Disclosures

Although framed as a "motion to compel," Procore's motion in fact asks the Court to "limit Oracle's trade secrets to the enumerated files, in their entireties, identified in Oracle's disclosures." Mot. at 10. It is not clear what Procore means by "limit[ing]" the trade secrets to "the enumerated files, in their entireties," but to the extent that Procore seeks to strike or dismiss anything in Oracle's trade secret disclosure beyond the "the specific combination of the verbatim/express language and content, context, filename, format, and other elements of each file," including the content contained within the trade secret files themselves, Dkt. 167-4 at 1, that request is based on mischaracterizations of Oracle's trade secret disclosure, is legally improper, and should be rejected.

Procore's request that the Court limit Oracle's trade secrets to exclude the contents of the files Oracle has identified because Oracle has allegedly "inverted this standard" of trade secret identification (Mot. at 10-11) ignores the discussions of the files' contents in Oracle's disclosures and makes no sense. To demonstrate that information is a trade secret, a plaintiff must show that the claimed trade secret has "*sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Quintara*, 149 F.4th at 1088 (citation omitted).[5] This is exactly what Oracle has done. From the beginning of the case, Oracle has identified its trade secrets by reference to particular Oracle files ***including their contents***. This is clear from the Court's prior denial of Procore's motion to dismiss. Indeed, directly contrary to Procore's contention that Oracle's trade secrets are limited to files themselves and not their "contents," Judge Tigar specifically held that Oracle's disclosure was sufficient because it "identifie[d] specific categories of alleged trade secret materials" and "then lists ***specific documents and describes the alleged trade secret nature of <u>their contents</u>.***" *See* Dkt. 76 at 10-12. Oracle's method for identifying its trade secrets throughout discovery in its trade secret identifications has not changed. After

---

[5] Procore begins its Argument with a quote regarding the level of detail required for trade secret disclosures that Procore says is allegedly from the Ninth Circuit's decision in *Quintara*, Mot. at 10, but that quote does not appear anywhere in *Quintara.*

identifying its trade secrets with particularity in its complaint, in discovery Oracle served a trade secret disclosure with hundreds of pages of detail identifying specific Oracle trade secret files that Procore misappropriated and describing in detail why those files constitute trade secrets. *See generally* Dkt. 175-08. Procore's suggestion that Oracle has left out any description of the "content" of those files (Mot. at 11) is simply inaccurate: for each trade secret file, Oracle's disclosure describes its contents and explains why those contents are worthy of trade secret protection, in many cases with specific quotes and screenshots of the files' contents. *See, e.g.*, Dkt. 175-08 at 201, 245; *see also infra* § IV.A.3. Procore's attempt to limit Oracle's disclosures to the files excluding their contents would be fundamentally improper and inconsistent with Oracle's actual disclosures. *See* Almeroth Decl., ¶ 40.

Neither of Procore's cited cases is apt here. In *Loop AI Labs Inc. v. Gatti*, the Court held "identifying documents ***alone*** would not be an adequate substitute for detailed identification of the trade secrets therein," but Oracle has not identified documents "alone" in its disclosures here. 195 F. Supp. 3d 1107, 1116 (N.D. Cal. 2016). Instead, Oracle identified documents and described the trade secret nature of their contents with specific quotes and screenshots. In *Alphonso Inc. v. Tremor Video, Inc.*, the plaintiff was faulted for merely "allud[ing] to various documents throughout its Amended Disclosures" and "fail[ing] to identify specific documents," unlike Oracle. 2022 WL 17968081, at *4 (N.D. Cal. Oct. 31, 2022). The Court expressly acknowledged that "[a]s a general matter, identification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity," as Oracle has done here. *Id.*

Procore's assertion that Oracle improperly "shifts to Procore and the Court the burden of divining ***what Oracle actually claims as having been misappropriated***" (Mot. at 11) is also wrong: Oracle has provided significant detail in interrogatory responses concerning how Procore has misappropriated Oracle's trade secrets. And to the extent Procore pivots again to ask this Court to rule on what qualifies as ***misappropriation*** of the trade secret files in connection with a motion about trade secret ***identification***, that request—which would have to be raised on summary judgment—was not made here and is premature. Dkt. 66 (referring *discovery disputes*). More fundamentally, Procore employs an erroneous view of what qualifies as misappropriation, which is not limited to using the trade secret in its original form but also includes using the trade secret as a guide for what to do or not

to do. *See, e.g.*, *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 15-cv-01370, 2018 WL 514923, at *8 (N.D. Cal. Jan. 23, 2018) (misappropriator "need not use the trade secret in its original form"); *Valeo*, 2025 WL 2505115, at *4 ("[m]isappropriation includes not only wholesale pirating of an idea[], but also the unauthorized utilization of an idea as a starting point or guide in developing a process or as a means to understand what pitfalls to avoid").

Finally, even putting aside the ambiguity of the scope of Procore's requested relief, Procore's motion should be denied because substantively limiting Oracle's trade secret claims on a discovery motion is improper. Indeed, the sufficiency of Oracle's trade secret disclosure is a question of fact reserved for the jury. As the Ninth Circuit held in *Quintara*, "[w]hether a trade secret is identified with 'sufficient particularity' is a question of fact" and "a DTSA trade-secret claim will rarely be dismissible as a discovery sanction." *Quintara*, 149 F.4th at 1087, 1091.

**2. Oracle's Approach Is Fully Consistent With Precedent, And Courts Have Routinely Accepted This Approach For Identifying Trade Secrets**

Oracle's approach—identifying specific trade secret files while describing their contents (including with reference to specific screenshots), explaining why they qualify as trade secrets, and further categorizing the files by virtue of their contents—is fully consistent with precedent. Other courts in this District and around the nation have routinely held that trade secret identifications like Oracle's (and even those that are far less detailed) are sufficient. *See, e.g.*, *Auris Health*, 2024 WL 5294698 at *2 (trade secrets described with sufficient particularity when they contained cited documents and descriptions); *Valeo*, 2025 WL 2505115 at *4 (plaintiff's sufficient disclosures "include[d] references to specific source code files, documents, and figures that illustrate particular functionalities are protectable trade secrets"); *Cisco*, 2020 WL 7495085 at *10 (identifying trade secret documents "provide[s] [defendants] sufficient detail about these projects to investigate the claims against them as they pertain to that information"); *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582, 2019 WL 1045911, at *18 (N.D. Cal. Mar. 5, 2019) (sufficient disclosure where plaintiff "identifie[d] exemplary documents ... that contain the trade secret information"); *Walker*, 2025 WL 868777, at *5 (disclosures sufficient where they "provided 'an overarching narrative response' followed by specific tables, identifiers, and documents"); *InteliClear*, 978 F.3d at 659 (plaintiff

"identified aspects of its database logic and architecture with enough specificity to create a triable issue of fact" as to trade secret particularity); *Syntel*, 68 F.4th at 801-02 (upholding trade secret identification where jury was shown particular documents along with descriptions of each document).

To the extent Procore means to suggest that Oracle must parse every single aspect of the files it has identified as trade secrets—down to the page and specific lines of source code or specific rows of a spreadsheet table—that suggestion is contrary to law. Judge Tigar's decision in *LivePerson* is instructive. There, the trade secret plaintiff identified "entire set[s] of data" while describing the trade secrets as "XML data generated by LivePerson's smart chat platform analytics and reporting features." *LivePerson*, 2018 WL 5849025 at *10. The defendant challenged the sufficiency of the trade secret identification under the same logic that Procore advances here: namely, the defendant argued, because the plaintiff had not parsed the XML files to demonstrate that "all this data constitutes a valuable trade secret," the trade secrets were not identified with sufficient particularity. *Id.* The Court rejected the defendant's argument and distinguished a line of cases where courts required plaintiffs to specifically identify which "portions of the code on which [plaintiff] could plausibly base a trade secret claim" and which part of "'70 pages of abstruse laboratory papers' embodied the trade secret" that was asserted as a five-element formula. *Id.* (distinguishing *PaySys International, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *11 (S.D.N.Y. Dec. 5, 2016) and *Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 257 (S.D.N.Y. 2014)). The Court held that "[t]he key distinction is that in *PaySys* and *Big Vision*, the plaintiff could not plausibly claim the entire set of information described as a trade secret" and "[i]n both cases, the plaintiff failed to provide the information necessary for the defendant to distinguish the protectable trade secret from the larger subset of information." *Id.* By contrast, the plaintiff in *LivePerson* had claimed an "entire set of data" as the trade secret. *Id.* In other words, where a plaintiff is identifying an entire file (or set of data) as the trade secret—as opposed to an isolated piece of information that a file may describe—the plaintiff need not distinguish a "protectable trade secret from the larger subset of information" within the trade secret file. *Id.* As in *LivePerson*, Oracle has sufficiently identified its trade secrets by identifying specific trade secret files and describing their contents. *See also Auris Health*, 2024 WL 5294698, at *2 (rejecting argument that defendant needed to be able to "tell what parts of the cited document are

being claimed" as a trade secret); *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) ("[Defendants] argue that when the alleged trade secret is source code, the plaintiff must identify the specific code. But this argument is wrong on the law.").

For this reason, Procore's reliance on rejecting "placeholder disclosures" ignores Oracle's actual disclosures—as described in detail in the next section—and is misplaced. Indeed, none of Procore's cited cases hold (or even suggest) that sufficiently identified trade secret files can be uncoupled from their content, such that a plaintiff must parse every page, line, and piece of information contained within in order to identify the files (including their contents) as trade secrets, or else be excluded from referencing those contents. For example, in *Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, the plaintiff had not identified its files as the trade secrets, but instead provided "a very high-level description of four categories within which the trade secrets lie . . . followed by a list of documents that Zeiss says 'further describe[ ]' its trade secrets." No. 21-cv-01129, 2021 WL 5197215 at *4 (N.D. Cal. Nov. 9, 2021). In other words, *Zeiss* merely cited certain documents (including "'other documents and records' cited within the specific documents" (*id.*)) without providing any explanation on what the trade secret actually was. That is not the case here. Oracle identified its trade secret files and why each file is a trade secret, derives independent economic value, is confidential, and would be highly valuable to competitors. This is sufficient. *Id.* ("[I]dentification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity.").

Likewise, *Roche Molecular Sys., Inc. v. Foresight Diagnostics Inc.* does not support Procore's position. Case No. 24-cv-03972-EKL, Dkt. 144 (N.D. Cal. Mar. 13, 2025) (Dkt. 174-07). There, the plaintiff submitted an exhibit, which itself was not identified as the trade secret, but rather was said reflect the plaintiff's "reagent" trade secrets. To identify what the reagent trade secrets were in the exhibit, the Court required that the exhibit "must be highlighted to identify those sections that reflect the reagents trade secrets." *Id.* Again, this is unlike Oracle's trade secret identification, which identifies specific files as the trade secrets and describes their contents, as opposed to contending that files merely describe some separate trade secret. And even then, Oracle's trade secret disclosure describes

the contents of the files, and in many cases, includes screenshots of portions of the files with those descriptions. *See also Myrio Corp. v. Minerva Network, Inc.*, Case No.: C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461, at *3 (N.D. Cal. Apr. 4, 2001) (not addressing a document constituting the trade secret but rather, "[i]f Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describes the trade secret(s)").

Procore also cites additional cases where the plaintiff incorporated by reference numerous documents wholesale without any explanation of how they constituted trade secrets, which is not what Oracle's trade secret identification does here. In *Perlan Therapeutics, Inc. v. Superior Ct.*, the plaintiff "included a large amount of 'surplusage' in its statement, such as legal objections, factual allegations, and reservations of right," "referenced hundreds of pages of extra documents," and did not even "segregate its alleged trade secrets (by, for example, listing them numerically in the statement)." 178 Cal. App. 4th 1333, 1352 (2009). Similarly, in *X6D Ltd. v. Li-Tek Corps. Co.*, the plaintiff "reference[d] hundreds of documents that purportedly 'reference or reflect the trade secret information disclosed to Li-Tek'" (*i.e.*, providing no description of these documents). No. CV 10-2327-GHK (PJWX), 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012). Oracle's disclosures do not incorporate by reference files to describe some unidentified trade secret, but rather identify specific trade secret files, provide narrative descriptions explaining how each file constitutes a trade secret including by describing details of the files' content, and further categorizing the files again based on their contents.

Procore also cites *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 659 (9th Cir. 2020), but tellingly does not substantively discuss it. In *InteliClear*, the Ninth Circuit held that summary judgment was ***not*** appropriate when "there is … a genuine dispute [of material fact] as to whether InteliClear [identified its trade secrets] with sufficient particularity." *Id.* at 660. The Ninth Circuit ultimately found that, unlike in *IDX Systems Corp. v. Epic Systems Corp.*, rather than "merely identifying categories of information" the plaintiff further described its trade secrets by "specifi[ying] the program processes, tables, columns, and account identifiers from its SQL database that it considered trade secrets." *Id.* at 659. Here, Oracle's trade secret identification is even more particularized than in *InteliClear* because Oracle not only identifies categories of files based on their contents, but also identifies the specific files it contends are trade secrets, and further describes the

contents of those files to explain their trade secret nature. This case is also a far cry from *IDX Systems*. Although Procore claims that the plaintiff there "had pointed to a bunch of documents as trade secrets without identifying what within those files was the trade secret" (Mot. at 13), that is not accurate. In *IDX Systems*, the plaintiff effectively asserted "all information in or about its software is a trade secret," which was not plausible in the context of Wisconsin's Uniform Trade Secrets Act and the facts of that case. 285 F.3d 581, 583-84 (7th Cir. 2002). Unlike *IDX Systems*, Oracle has not asserted "all information in or about its software" as the trade secret in this case, but rather concretely identified the trade secrets as specific confidential files taken from Oracle and brought to and used at Procore.

Finally, Procore relies on *Double Eagle Alloys, Inc. v. Hooper*, but that case is also far afield from Oracle's actual disclosure. 134 F.4th 1078 (10th Cir. 2025). There, the plaintiff asserted "that the financial technical, and business information contained in the downloaded files qualifies as trade secrets" and among that information, the plaintiff asserted "PSQ specifications" as trade secrets; but "undisputed evidence" showed that (1) plaintiff posted certain aspects of these specifications on its website, (2) defendant developed its own specifications before it hired plaintiff's employee, and (3) plaintiff distributed these specifications to customers without confidentiality agreements. *Id.* at 1084, 1090-91. Moreover, the plaintiff never explained the trade secret nature of its information, whether it was the PSQ specification "as a whole" or some specific aspect. *Id.* at 1092. None of those circumstances is present here, and Oracle's trade secret identification is far more particular, by not only concretely identifying the asserted trade secret files but also describing their contents.[6]

**3. Oracle's Detailed Trade Secret Disclosures Are Entirely Sufficient**

Contrary to Procore's characterization of Oracle's detailed 600-plus page disclosure as

---

[6] Other cases cited by Procore to purportedly explain legal standards are similarly distinguishable. *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044-47 (S.D. Cal. 2017) (denying "nebulous allegations of 'marketing ideas'" and "'business strategy' consist[ing] of selling its [] products quickly" as a trade secrets, but confirming concept and designs were sufficiently pled); *Reis v. Tavant Techs., Inc.*, No. 19-CV-609-WQH-JLB, 2019 WL 5727453, at *4 (S.D. Cal. Nov. 5, 2019) (holding trade secret not identified with "conclusory allegation that the 1991 copyright model is a 'trade secret'" and plaintiff "fails to state facts that show [it] derives value from not being generally know and is the subject of reasonable efforts to maintain its secrecy"); *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980 (S.D. Cal. 1999) (not analyzing whether trade secrets were reasonably identified); *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1165 (9th Cir. 1998) (insufficient identification when plaintiff claimed as trade secrets precise numerical dimensions and tolerances and cited "469 documents").

"placeholder[s]," Oracle has in fact provided extensive information about its asserted trade secrets by identifying specific files as trade secrets, providing a narrative description of why that file (including its contents) qualifies as a trade secret, and describing specific aspects of the ***contents*** of the file. *See generally* Dkt. 175-08; Almeroth Decl. ¶¶ 32, 43-64. This is true for each of the files Procore identifies:

**Example 1:** [redacted]

[redacted] Dkt. 175-08 at 23, 31. [redacted] *Id.* at 31. [redacted] *Id.* [redacted] *Id.* at 31-32. By describing the category, identifying the file, and describing the trade secure nature of its contents of the file—along with producing the trade secret file itself—Oracle has identified the file as an Oracle trade secret with sufficient particularity. Almeroth Decl. ¶¶ 48-49.

Each of Procore's critiques to Oracle's trade secret identification should be rejected. [redacted] Mot. at 15. Procore is simply wrong, and the only way it can make this statement is by improperly cherry-picking excerpts of Oracle's disclosure and inexplicably omitting the remainder. *Id.* ([redacted]). The actual description Oracle provided contains more than enough detail to describe the contents of this file. Almeroth Decl. ¶¶ 48-

49. [redacted] Moreover, merely because Procore appears to have a disagreement over whether Oracle's trade secret as described is generally known is not a reason to find Oracle's trade secret disclosure insufficient; instead, at best, Procore's dispute creates an issue of fact as to whether this file and its contents qualifies as a trade secret, which is not a proper issue to resolve in the context of a discovery motion. *Quintara*, 149 F.4th at 1085.

Second, Procore asserts that "Oracle identifies no specific code segments, no unique algorithms, no proprietary data structurers" that would allow it to determine "what within this file allegedly constitutes protectable trade secret information." Mot. at 15. But that complaint is inapplicable here, where the asserted trade secrets are confidential files, not isolated snippets of data structures or code within the files. Because the entire set of data (*i.e.*, the source code in the file) is the asserted trade secret, Oracle need not identify individual snippets from the file divorced from the whole as its trade secret. Again, to the extent Procore challenges the trade secret nature of the code in Oracle's trade secret files, that is a factual dispute not suitable for resolution here. *Quintara*, 149 F.4th at 1085.

**Examples 2-3: [redacted]:**

[redacted] Dkt. 175-08 at 107-08. [redacted] Dkt. 175-08 at 107. [redacted] *Id.* By describing the category, identifying the specific files as trade secrets, and describing the trade secret nature of their contents—along with producing the trade secret files—Oracle's description is sufficient to identify these trade secrets. Almeroth Decl. ¶¶ 46-47.

Procore again contends that Oracle has not identified "any particular aspects of these files . . . that are worthy of individual trade secret protection." Mot. at 15-16. This is at best a factual dispute over whether these trade secrets are worthy of protection, not a discovery dispute.[7] In any case, as in *LivePerson*, a trade secret plaintiff need not identify which particular parts of the data constitute a trade secret in isolation when the plaintiff claims the entire set of data as the trade secret. 2018 WL 5849025, at *10-11. Such a requirement would be contrary to the law recognizing that trade secrets can be collections of public information. *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) ("a trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources."). [redacted] *Id.*

**Example 4:** [redacted]

Oracle also sufficiently identifies the [redacted] file as a trade secret. [redacted] Dkt. 175-08 at 193, 200. [redacted] *Id.* at 200. [redacted] *Id.* at 201. [redacted] *Id.* [redacted] *Id.* Almeroth Decl. ¶¶ 52-53.

[redacted]

---

[7] Procore denigrates these files as not containing source code (Mot. at 15), but Oracle does not contend these files are source code. Rather, they contain data extracted from Textura tables using Oracle's trade-secret scripts (which are separate trade secrets). Dkt. 175-08 at 107-108.

[redacted] *Stemcell*, 2022 WL 4021905, at *2 ("Although 'portions of [that process] may be publicly available,' the process 'as a whole [is not] publicly known[.]'"). [redacted] *See Auris Health*, 2024 WL 5294698, at *2 (rejecting argument that defendant needed to be able to "tell what parts of the cited document are being claimed" as a trade secret); *LivePerson v. [24]7.ai*, 2018 WL 5849025, at *10 (N.D. Cal. Nov. 7, 2018) (J. Tigar) (plaintiff need not parse out portions of an XML file to sufficiently identify trade secret).

**Example 5:** [redacted]

Oracle sufficiently identifies the [redacted] file as a trade secret. [redacted] Dkt. 175-08 at 228, 244-45. [redacted] *Id.* at 244. [redacted] *Id.* at 245. [redacted] Almeroth Decl. ¶¶ 54-55.

As with Procore's prior objections, Procore incorrectly demands that Oracle parse which "specific inputs or outputs are trade secrets" when the file is the asserted trade secret (Mot. at 16), but no such requirement exists. *LivePerson*, 2018 WL 5849025, at *10. Procore's other complaints are improper merits-based disputes—*i.e.*, its suggestion that the integration plan is not different from standard publicly known workflows and that Oracle has not identified any portion of the plan that is protectable (Mot. at 16)—and a factual dispute that cannot properly be resolved on a discovery motion.

**Example 6:** [redacted]

Oracle sufficiently identifies the [redacted] file as a trade secret. [redacted]

[redacted] Dkt. 175-08 at 249, 257-58. [redacted] *Id.* [redacted] *Id.* [redacted] *Id.* [redacted] Almeroth Decl. ¶¶ 56-57.

Procore's critiques again miss the point. Procore asserts that Oracle fails to describe how "any specific sub-parts" within the file are distinct from public knowledge, and further contends that much of the information is "widely available." Mot. at 17. But Oracle is not contending that only certain snippets of data from this spreadsheet qualify as its trade secret; rather, it is the compilation of information together in this list that is a trade secret, and it is well settled that trade secrets can include compilations of public and private information. *Stemcell*, 2022 WL 4021905, at *2. Regardless, this is again a dispute on the merits that is inappropriate for resolution as a purported discovery dispute: there is no question that Oracle identified both the file itself and its ***contents*** as its trade secret.

Finally, Procore presents a smattering of arguments challenging Oracle's descriptions for five other trade secret files, but like the others, Oracle identified each with sufficient particularity by identifying the specific file that Oracle contends is a trade secret, describing the trade secret nature of their contents, and describing the category to which they relate[8], (Almeroth Decl. ¶¶ 32, 43-64):

1. [redacted]:[9] Procore's motion mischaracterizes Oracle's

---

[8] Procore cites *Ross v. Abbott Vascular Inc.*, No. 19-CV-03794-JST, 2022 WL 20275185, at *9 (N.D. Cal. Mar. 3, 2022), for the proposition that "Oracle's use of 'categories' to describe the files is insufficient under the DTSA, even at the pleading phase." Mot. at 17 n.5. But Oracle is not "simply" using categories; instead, Oracle is identifying particular trade secret files, grouping those trade secrets into categories, ***and*** providing details regarding the description of those files and the subject matter within those files. Indeed, the Court already rejected Procore's arguments that Oracle's trade-secret identification was insufficient at the pleadings stage. Dkt. 76.

[9] Procore oddly refers to this presentation and others in this group by category rather than name (*see, e.g.*, Mot. at 17-18 referring to "Oracle's Integration Plan No. 8") and then criticizes the category description as if that is the extent of Oracle's disclosure, but that is not how Oracle

disclosure. Contrary to what Procore included in its table, Oracle did not merely describe this trade secret file with one sentence, but instead included a narrative description of the file and additional detail about why the presentation contains trade secret information ([redacted]) and included screenshots from the presentation itself that illustrate [redacted]. Dkt. 175-08 at 213-14. Procore cannot seriously dispute that Oracle identified the file ***and its contents*** as its trade secret. [redacted] *Auris Health*, 2024 WL 5294698, at *2.

2. [redacted]: Procore objects that this file contains "113 slides" including those it contends "are untethered to the description Oracle provided." Mot. at 18. Procore does not explain what it means by this, but it apparently contends that the presentation includes more than just pricing. *Id.* But Oracle's trade secret description is ***not*** limited to pricing. Dkt. 175-08 at 280 ([redacted]). Further, Procore cannot reasonably dispute that Oracle identified this file—including its ***contents*** relating to pricing information, client information, and other confidential Textura functionality—as a trade secret.

3. ***Oracle Construction Financials Suite.pptx (ORC-PRC-00005307)***: Procore's objections to this presentation contain several typographical errors and it is unclear what Procore in fact contends is problematic other than, as with the other files, Procore's contention that the presentation includes certain slides that Procore contends are not trade secrets. Mot. at 18. As above, Oracle has provided a narrative description (that Procore omits) detailing why the contents of this file include trade secret information: [redacted] Dkt. 175-08 at 345. [redacted] *Id.* at 345-46.

4. [redacted] ***(ORC-PRC-00000696)***: [redacted] Dkt. 175-08 at 204-05. As Oracle explains, this integration plan is unique to Oracle, and thus these tasks are not something that is generally available. *Id.* Procore's objection that Oracle did not parse each task in the list makes no sense: the list as a whole is Oracle's trade secret. As stated before, Oracle sufficiently identified the file itself and its contents, and is not required to parse every line. *LivePerson*, 2018 WL 5849025, at *10.

---

described these trade secret files in its disclosure. *See, e.g.*, Dkt. 175-08 at 213-15.

5. [redacted] *(ORC-PRC-00000299).* [redacted] Dkt. 175-08 at 206-07. [redacted] *Id.* Procore thus cannot reasonably contend that Oracle did not identify the file ***along with its contents*** as its trade secret. Instead, Project objects that Oracle failed to address all "sub-parts" and other sheets when identifying this file as a trade secret, but again Oracle is not required to parse every single element of the file. *LivePerson*, 2018 WL 5849025, at *10.

At bottom, Procore's attempt to uncouple the Oracle files that Oracle identifies as its trade secrets from their contents—apparently as a gambit to try to preclude Oracle from relying on the files' ***contents*** to show Procore's misappropriation—is inconsistent with Oracle's detailed disclosure and the law. To be sure, the volume of material at issue is significant; but that is a direct result of the broad scope of Procore's misappropriation, and Procore cannot complain that Oracle's trade secrets are too voluminous because Procore stole too much information from Oracle.[10]

#### 4. Procore Will Face No Prejudice From Oracle's Trade Secret Disclosures, Which Have Remained Consistent

Contrary to Procore's claims, letting Oracle's trade secret identification "stand" would not cause any prejudice to Procore, because it would simply maintain the status quo. Procore's argument launches from a factually incorrect promise: Oracle has not changed the nature of its trade secret identification (other than to amend to permissibly identify additional trade secret files that discovery revealed were misappropriated by Procore) or changed its position that the trade secrets at issue are

[10] Procore is wrong that Oracle's asserted trade secrets are "unmanageable." Mot. at 21 n.7. As Procore's own cases confirm, "it's not the volume, it's the particularity that matters." *InteliClear*, 978 F.3d at 659; *see MicroVention*, 2023 WL 4316880 at*3 ("That there are thousands such alleged trade secrets does not mean that each one has not been sufficiently identified."). Indeed, "[i]t is not *per se* unreasonable for [plaintiffs] to identify hundreds of trade secrets . . . [and] Courts regularly permit trade secrets plaintiffs to do so." *Arvinas Operations, Inc. v. Qian*, No. 3:22-CV-00717-RNC, 2024 WL 4834258, at *4 (D. Conn. Nov. 20, 2024); *Syntel*, 68 F.4th at 803 (trial on "104 proposed trade secrets"). Procore's cited cases are inapposite. *Proofpoint, Inc. v. Vade Secure Inc.*, No. 3:19-cv-4238, D.I. 441 (N.D. Cal. Mar. 12, 2021) (Dkt. 174-08) (not requiring plaintiffs to narrow their trade secrets); *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 5:10-cv-03428, D.I. 465 at 2 (N.D. Cal. Feb. 7, 2012) (Dkt. 174-09) (requiring plaintiff to narrow its trade secrets when it also brought numerous copyright and patent claims); *Teradata Corp. v. SAP SE*, No. 3:18-cv-03670, D.I. 267 at 2 (N.D. Cal. June 12, 2020) (Dkt. 174-10) (ordering plaintiff to drop trade secrets that were not mentioned in an interrogatory response). In any case, Oracle will continue to streamline its case for trial as discovery proceeds.

the stolen Oracle trade secret files (including their contents). *See* Petersen Decl., ¶¶ 3-4. Instead, it is Procore that seeks to nonsensically decouple the files from their contents, presumably to argue that it is not a misappropriator if it did not copy the entire files verbatim, even though Procore used the files.

None of Procore's proffered examples of prejudice has merit. First, Procore's claim that the parties have been conducting forensic discovery thus far "structured entirely around" Oracle's trade secret files "identified by their filename, Bates range, and unique MD5 hash" (Mot. at 19-20) is inaccurate. Instead, as specified by the parties' stipulated forensic protocol, forensic discovery has proceeded in this case regarding filenames, MD5 hash values, ***and search terms*** for specific content from Oracle's trade secret files. Dkt. 74. The parties' stipulated ESI protocol similarly allows custodial searches based on file names ***and search terms***. Dkt. 78. Procore acknowledges this later in its motion, noting that it has searched not just for "exact-hash matches" of Oracle's trade secret-files, but also for "files and ***information*** relevant" to Oracle's trade secrets.[11] Mot. at 20. Indeed, Procore's previously served discovery requests bely its contention that it will need to serve all-new discovery: directly contradicting its current position, ***all of*** Procore's discovery served to date has defined the term "Trade Secrets" to include Oracle's trade secret files ***and the contents of those files***. *See, e.g.*, Ex. F at 2 (defining "Trade Secrets" to include, among other things, "confidential and proprietary source code computer files, including Python source code files and SQL database files ***related to specific ERP adapters developed by Oracle engineers***"; "confidential files ***reflecting Oracle client information, revenue projections, and other internal strategy documents related to Oracle's TPM and ERP integrations***"; and "confidential internal Oracle documents and presentations ***detailing the design and implementation of various Oracle ERP integrations***"). Accordingly, Procore has no basis to claim that the scope of discovery will suddenly need to change. To the extent Procore has withheld discovery under Procore's own twisted interpretation that the trade secrets files do not include their contents, it is Oracle, not Procore, that has been severely prejudiced. But whether Procore took an improperly

---

[11] In a footnote, Procore appears to concede that the parties' stipulated forensic discovery is broader than merely MD5 hash values and file names, but contends that Oracle has failed to find any examples of files that share content with Oracle files but have had other aspects changed. Mot. at 20 n.6. Procore is wrong. *See, e.g.,* Ex. B. But regardless, that argument relates to a substantive dispute about *misappropriation*, and is irrelevant to whether Oracle's trade secrets have been identified with sufficient particularity.

narrow approach to discovery and withheld documents is not a valid justification to penalize and prejudice Oracle by finding its long-standing extensive trade secret disclosures somehow deficient.

Given the discovery that Procore has previously served, Procore has no basis for its claim that it would need to substantially expand discovery to address "each alleged snippet of content" or each "asserted fragment" in Oracle's trade secret files. Mot. at 20. But even if Procore had not already served discovery addressing these issues, the premise of Procore's argument is again contrary to law: Oracle's trade secret files do not rise and fall on the secrecy of each "alleged snippet" or "asserted fragment," but rather the trade secret file as a whole. *Stemcell v. StemExpress*, 2022 WL 4021905, at *2 (N.D. Cal. Sept. 3, 2022) (J. Beeler) ("Although 'portions of [that process] may be publicly available,' the process 'as a whole [is not] publicly known[.]'").

Procore's attempt to analogize the situation here with amending a complaint to add new claims is inapt. Oracle is not amending the complaint, adding new claims, or expanding the scope of the case; Oracle served trade secret disclosures in January 2025, fully consistent with the description of the trade secrets in its Complaint, and is not seeking to walk away from those disclosures. Instead, Procore is the one attempting to limit the scope of Oracle's trade secret case through a purported discovery motion. Thus, this case is unlike *Kaplan v. Rose*, 49 F.3d 1363, 1367 (9th Cir. 1994), where the court refused to consider on summary judgment new instances of alleged security violations that had not been previously pled, and *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), where the plaintiff attempted to add RICO claims to a dispute years into the case.

Procore claims that "Ninth Circuit District Courts routinely deny attempts to expand a case in precisely these circumstances," but then tellingly does not cite a single trade secret case in support, let alone one where a court uncoupled an asserted trade secret file from its contents on a discovery motion to limit the scope of the trade secrets. Each of Procore's cases is inapposite. In *Spin Master*, the court denied plaintiff's motion to amend to add *entirely new* copyright infringement claims along with *a new plaintiff* and *new defendants*, where it had already allowed plaintiff to amend and doing so again would extend deadlines. *Spin Master Ltd v. Your Store Online*, No. CV 09-2121 CAS JCX, 2010 WL 4883884, at *6 (C.D. Cal. Nov. 22, 2010). *Kennedy v. Natural Balance Pet Foods, Inc.* is also inapplicable. There, the court denied a motion to amend the complaint (which Oracle does not seek to

do) to add new accused products, expand the time period covered by the definition of a putative class, and a new claim for damages, which would have added significant discovery and delay to the case. 2008 WL 2053551 at *2 (S.D. Cal. May 13, 2008). None of these circumstances is implicated here.

**B. Procore's Motion To Compel More Particularized Disclosures Should Be Denied**

Finally, Procore requests that Oracle be ordered to supplement its responses to provide a more particularized trade secret disclosure to "describe the metes and bounds of the trade secrets" and the "actual or algorithms or subparts that are the heart of the trade secret." Mot. at 22. But that request is contrary to law. As explained above in Section IV.A, Oracle has sufficiently identified its trade secrets, as this Court has already held in denying Procore's motion to dismiss, and Procore is on fair notice of Oracle's trade secret claims. Dkt. 76. Oracle's method for identifying its trade secret files with particularity has been consistent throughout this case, and has identified specific files as trade secrets, explained why those files (including their contents) are trade secrets, and provided descriptions of content within those documents that qualifies as a trade secret (including frequently identifying screenshots of particular aspects of the files). While Oracle has amended its trade secret disclosures during discovery, it has done so solely to identify additional enumerated trade secret files as evidence has become available to it through discovery revealing additional files that were stolen.

The level of detail provided in Oracle's disclosures is sufficient, and Procore's attempt to have Oracle change its trade secret identification to parse each "fragment, dataset, instruction, table, workflow, snippet of code, page of a document or other constituent component" (Mot. at 24) of its trade secret files is contrary to law. As explained above, the specificity that Procore demands is not required under the DTSA. *See supra* Section IV.A.2. Instead, what Procore appears to be demanding is "a degree of specificity and precision in the trade secret identification that sounds in patent law," which is unwarranted in the trade secret context. *Auris Health*, 2024 WL 5294698 at *2. As the Court explained in *Auris Health*, "courts should not require trade secret plaintiffs to compose their identifications as if they were patent claims." *Id.* (cleaned up). Instead, a trade secret plaintiff must simply identify a trade secret with reasonable particularity by describing the "subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those parties ... skilled in the trade." *Id.* (rejecting Defendants argument

that a trade secret plaintiff must identify "what parts of the cited document are being claimed"). This is exactly what Oracle has done here.

None of Procore's cited cases justify the relief it seeks. In each instance, the trade secret plaintiff had contended that only a portion of a document was a trade secret, but had refused to identify those portions of the document that allegedly warranted trade secret protection. *See Carl Zeiss*, 2021 WL 5197215, at *4 (identifying trade secret processes by merely pointing to documents without explaining what those documents show is insufficient, but "[a]s a general matter, identification of a trade secret may include a reference to a specific document or portion of a document, so long as the trade secret is described with reasonable particularity"); *Commure, Inc. v. Canopy Works, Inc.*, No. 24-cv-02592 2025 WL 1150695, at *5 (N.D. Cal. Apr. 18, 2025) (addressing "assertion that the 'trade secret information is reflected in the internal slide presentation'" not that the slide presentation itself is the trade secret); *Alta Devices, Inc. v. LG Electronics, Inc.*, No.18-cv-00404, 2019 WL 176261, at *4 (N.D. Cal. Jan. 10, 2029) (where plaintiff cited documents to describe the asserted trade secret, rather than claimed the documents as a trade secret, the plaintiff needed to provide more detail); *Western Air Charter v. Schembari*, No. CV-17-420, 2018 WL 6537158, at *4 (C.D. Cal. Apr. 9, 2018) (compelling further interrogatory response identifying trade secrets under lower reasonable particularity standard due to generalized, boilerplate descriptions).

## V. CONCLUSION

For the foregoing reasons, the Court should deny Procore's motion.

DATED: December 16, 2025

Respectfully Submitted,

*/s/ Akshay S. Deoras*

Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
Ingrid Petersen (SBN 313927)
Kevin X. Wang (SBN 318024)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
michael.devries@kirkland.com
ingrid.petersen@kirkland.com
kevin.wang@kirkland.com
Telephone: (714) 982-8822

Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

Kendra A. Delaney (SBN 339102)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, California 90067
kendra.delaney@kirkland.com
Telephone: (310) 552-4200

*Attorneys for Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation*