UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ORACLE AMERICA, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PROCORE TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-07457-JST (LB)<br><br>**ORDER ADDRESSING DISCOVERY DISPUTES**<br><br>Re: ECF Nos. 174, 188, 193, and 196 |

### INTRODUCTION

Oracle sued Procore, alleging that Oracle's former employee Mark Mariano misappropriated Oracle's trade secrets and disclosed them to his new employer, Procore, which used the information in Procore Pay, a payment-management service. Oracle claims trade-secret misappropriation by Procore and Mariano, in violation of the federal Defend Trade Secrets Act, and breach of contract by Mariano.[1] The parties have discovery disputes: (1) Procore's motion to compel more particularized trade-secret disclosures; (2) Oracle's request for Procore's financial information; and (3) the sufficiency of Procore's interrogatory responses.[2]

---

[1] Order – ECF No. 76 at 1–2; J. Case-Mgmt. Statement – ECF No. 70 at 2–3; Compl. – ECF No. 1 at 4 (¶ 5), 24–26 (¶¶ 66–69), 27–32 (¶¶ 73–105). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 175-2; Disc. Letter Brs. – ECF Nos. 188, 193, & 196.

ORDER – No. 24-cv-07457-JST (LB)

The parties have depositions scheduled this week. The court can decide the disputes without oral argument.[3] Civil L. R. 7-1(b). The motion to compel more particularized trade-secret disclosures is denied: the trial court approved similar disclosures, the disclosures provide notice and are consistent with disclosures approved in similar cases, and a contrary conclusion risks turning a discovery-management device into a merits adjudication. The court grants Oracle's request for financial information but will allow Procore to assert burden related to the specific categories for non-Procore Pay financial information. Some interrogatory responses must be supplemented by January 7, 2026.

## STATEMENT

Oracle provides construction invoice and payment-management cloud services, including its Textura Payment Management (TPM) solution and related enterprise resource planning (ERP) integrations.[4] In its complaint, it alleged trade secrets that Mariano kept after he left Oracle and joined Procore: confidential computer source code and documents related to its TPM and ERP integrations. It also alleged specific documents and described the trade-secret nature of their contents: specific .zip files that have confidential SQL source-code files (with log files).[5] The trial court held that these allegations sufficiently pleaded the particularity of the alleged trade secrets.[6]

On February 26, 2025, Oracle served its initial trade-secret disclosures, asserting 174 trade-secret files in specific categories (e.g., source code, integration testing, integration plans, and financial information). It explained that its trade secrets were specific Oracle files related to TPM and ERP integrations, it identified where it found them (e.g., Mariano's iCloud account, Google drive, and devices), it listed specific trade secrets by category, and it explained why they were trade

---

[3] The court would have held a discovery hearing in aid of overall case management, but the parties have depositions scheduled for the first week of January that implicate the disputes, and they did not raise their disputes at a time that allowed a hearing before the depositions. The motion to compel was fully briefed on December 30, 2025, resulting in a hearing date under the local rules on January 15, 2026, and the three discovery letter briefs were filed on December 17, 24, and 26, 2025.

[4] Compl. – ECF No. 1 at 2–3 (¶¶ 1–3), 5 (¶ 10).

[5] *Id.* at 2 (¶¶–2), 12–13 (¶ 37) (listing types of source-code files (e.g., python files and SQL database files related to specific ERP adaptors) and documents (e.g., test plans and presentations about the design and implementation of various ERP integrations), 19 (¶ 53) (specific .zip files), 19–20 (¶¶ 53–57).

[6] Order – ECF No. 76 at 10–12.

secrets.[7] It amended its disclosures twice, most recently with its second amended disclosures, which identify 442 specific trade-secret files by similar categories, asserting that each file as a whole is a trade secret and then describing the trade-secret nature of the contents of each file.[8] Oracle's opposition excerpts examples from the disclosures.[9]

The motions at issue are Procore's motion to compel more particularized trade-secret disclosures and three discovery letter briefs, one with Oracle's request for Procore's financial information and two challenging the sufficiency of Procore's interrogatory responses.[10]

## ANALYSIS

### 1. Trade-Secret Disclosure

Under the Defend Trade Secrets Act, to show that information is a trade secret, a plaintiff may not rely on "catchall" phrases or identify categories of trade secrets. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025). Instead, it must prove that "the claimed trade secret has sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Id.* (cleaned up). A trade secret is identified with sufficient particularity when it gives a defendant "reasonable notice of the issues which must be met at the time of trial and . . . provide[s] reasonable guidance in ascertaining the scope of appropriate discovery." *Oracle Am., Inc. v. Procore Techns., Inc.*, No. 24-cv-07457-JST, 2025 WL 1069892, at *6 (N.D. Cal. Apr. 9, 2025). "Whether a trade secret is identified with sufficient particularity is a question of fact." *Quintara*, 149 F.4th at 1087 (cleaned up) (error to strike disclosure and grant summary judgment without allowing the plaintiff to refine its identifications through discovery).

---

[7] Initial Trade Secret Disclosures – ECF No. 175-4 at 10–11 (pp. 1–2) (location), 12–203 (pp. 3–194) (specific trade secrets).

[8] Second Am. Trade Secret Disclosures – ECF No. 175-5 at 14–17 (pp. 13–16) (location), 16–365 (pp. 15–364) (specific trade secrets).

[9] Opp'n – ECF No. 182-3 at 8–9, 20–21. The examples can be viewed on the sealed docket.

[10] Mot. – ECF No. 175-2; Disc. Letter Brs. – ECF Nos. 188, 193, & 196.

The trial court deemed comparable disclosures sufficient. *Oracle*, 2025 WL 1069892, at *7 (collecting cases, including those that follow in this paragraph); *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1171–72 (N.D. Cal. 2020) (plaintiff alleged theft of particular categories of documents and provided examples, which gave sufficient notice); *TMX Funding, Inc. v. Impero Techns. Inc.*, No. C 10-00202 JF (PVT), 2010 WL 2509979, at *3–4 (N.D. Cal. June 17, 2010) (sufficient where plaintiff alleged categories of trade-secret information that included source code, technical information, and confidential products and services).

Oracle identified specific files, described their contents (including with screen shots), explained why they qualified as trade secrets, and categorized the files by their contents. The weight of authority supports the conclusion that this identification is sufficiently particular. *See, e.g.*, *Oracle*, 2025 WL 1069892, at *7 (collecting cases); *Tesla, Inc v. Proception, Inc.*, No. 25-cv-04963-SVK, 2025 WL 3187569, at * 6 (N.D. Cal. Nov. 14, 2025) (hundreds of files related to the development of the Optimus robot hand were the identified trade secrets; explained that the documents fell into eight categories, including engineering specifications, tests, models, product roadmaps, video profiles of prototypes, strategy documents, vendor research, and source code related to Optimus's hand motions and actuators); *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-cv-08073-AMO (LJC), 2024 WL 5294698, at *2 (N.D. Cal. Nov. 23, 2024) (plaintiff identified documents, which its expert "clarified" as to "certain aspects;" this was sufficient for discovery; the defendants could "explore the contours of the trade secrets in 30(b)(6) depositions"); *Cisco Sys., Inc. v. Chung*, No. 19-cv-07562-PJH, 2020 WL 7495085, at *10 (N.D. Cal. Dec. 21, 2020) (identifying documents); *Genentech, Inc. v. JHL BioTech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *18 (N.D. Cal. Mar. 5, 2019) (identified exemplary documents); *Walker Prods., Inc. v. Cong*, No. 8:23-cv-02201-JVS-ADS, 2025 WL 868777, at *5 (C.D. Cal. Feb. 10, 2025) (thirty numbered exhibits that "included tables, columns, account identifiers, and methodologies with particular information" accompanied by an expert declaration that linked the documents to the claimed trade secret); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 655–56, 658–59 (9th Cir. 2020) (identification of trade secrets for a comprehensive electronic system for managing accounting, securities clearance, and settlement services sufficient where the plaintiff

"identified aspects of its database logic and architecture with enough specificity to create a triable issue of fact"); *Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp., Inc.*, 68 F.4th 792, 801–02 (9th Cir. 2023) (upheld trade-secret identification where jury was provided explanation for each trade-secret exhibit); *LivePerson, Inc. v. [24]7.ai, Inc.*, No. 17-cv-01268-JST, 2018 WL 5849025, at *10–11 (N.D. Cal. Nov. 7, 2018) (identified data sets and described trade secrets as "XML data generated by LivePerson's smart chat platform analytics and reporting features").

Procore distinguishes Oracle's cases.[11] *LivePerson* involved New York trade-secret law, which does not require any particular specificity and instead requires only that the defendant know what constitutes the trade secret to avoid infringing it. 2018 WL 5849025, at *9. *Auris* involved disputes after many rounds of narrowing the trade secrets. 2024 WL 5294698, at *1. *Cisco* involved trade-secret projects tied to specific documents. 2020 WL 7495085, at *10. *Walker* particularized its trade-secret claims by identifying specific exhibits and providing an expert declaration. 2025 WL 868777, at *5. Procore concludes that Oracle's authorities don't excuse its non-particularized disclosures, which are too high level.[12]

This argument does not change the outcome. Oracle's disclosures provide the required notice by identifying each file (including its content) and explaining why the files warrant trade-secret protection. Oracle's method is consistent with its identification of trade secrets in the complaint, which was approved by the trial judge, has been unchanged throughout discovery, and is like disclosures approved in other cases. The identifications are consistent with the "reasonable notice" function of trade-secret disclosure during discovery. A contrary conclusion risks turning a discovery-management device into a merits adjudication.

The court denies the motion to compel.

---

[11] Reply – ECF No. 203-2 at 8–12 (distinguishing cases).

[12] *Id.* at 11–12.

### 2. Other Discovery Disputes

Parties may obtain discovery regarding any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b). Pretrial discovery is "accorded a broad and liberal treatment." *Peng v. Nw. Mut. Life Ins. Co.*, No. 17-cv-01760-SI, 2017 WL 3007030, at *1 (N.D. Cal. July 14, 2017) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993)). The party moving to compel discovery bears the initial burden of establishing that the information sought is relevant and proportional to the needs of the case. *Impinj, Inc. v. NXP USA, Inc.*, No. 19-cv-03161-YGR (AGT), 2022 WL 16586886, at *2 (N.D. Cal. Nov. 1, 2022).

### 2.1   Financial Information Relevant to Damages

Oracle identifies three categories of financial information relevant to damages.

First, it wants complete damages-related information for Procore Pay customers. It has received only revenue information for Procore Pay and additional services that Procore Pay customers purchase. Procore has not produced any profits, losses, costs, projections, pricing, licensing, IP agreements or payments, and other like financial information.[13]

Second, it wants complete financial information for the additional tools in Procore's financial-management offering (including project financials, accounting integrations, invoice management, and lien-rights management), asserting that discovery has shown that Mariano used Oracle's trade secrets for critical aspects of Procore's broader financial-management solution.[14]

Third, it wants Procore's sales and market information regarding the products, asserting that Procore has selectively produced Salesforce customer data. It asks for an order for production of

---

[13] Disc. Letter Br. – ECF No. 188 at 3 (collecting cases supporting the conclusion that discovery about a defendant's finances and forecasts is relevant to trade-secret misappropriation claims).

[14] *Id.* (collecting cases supporting the conclusion that discovery relevant to damages theories is appropriate, and the viability of the theories is reserved for *Daubert* motions).

"Salesforce information for all Procore Pay and financial management customers or Oracle customers to whom Procore has marketed those products."[15]

Procore responds that "Oracle's demands for Procore Pay financial information and Salesforce material [] are premature and unsupported" and that the only impasse is Oracle's request for "financial information related to non-Procore Pay products purchased by non-Procore Pay customers." It resists this third category as irrelevant, contending that Oracle asks for it based on a presentation that is not a trade secret and that is not — contrary to Oracle's assertion — evidence of broader use of Oracle's trade secrets.[16] It will produce the Procore Pay information.[17] It was unaware of the deficiencies in the Salesforce production until it received Oracle's portion of the letter brief, is willing to discuss deficiencies, and asserts that the dispute is premature.[18]

First, Oracle is entitled to the requested discovery for Procore Pay. Procore does not resist the discovery, which is in any event relevant.

Second, the Salesforce dispute is premature only insofar as the parties have not conferred on solutions.[19] They must do so and work out a solution to produce the missing information.

Third, the financial information for the other products is a closer call. Oracle contends that discovery shows that Mariano used the trade secrets more broadly than with Procore Pay. Procore disputes that contention. If the contention is true, then the discovery is relevant to a damages assessment, even if in the end, it does not provide a viable damages theory. Procore also did not assert burden. Given that Oracle asserts that Procore is an integrated solution and has some evidence of broader use of its trade secrets, the court allows the discovery of Procore's "Project Financials, Accounting Integrations, Invoice Management, and Lien Rights Management products from November 1, 2021 to the present: (a) customers; (b) offered discounts; (c) profits; (d) losses;

---

[15] *Id.* at 4.

[16] *Id.*

[17] *Id.* at 5–6.

[18] *Id.* at 6.

[19] Oracle's final proposed compromise addresses only the Procore Pay products and financial management products, which seems a tacit acknowledgement that the dispute is premature. *Id.*

(e) costs; (f) expenses; (g) financial projections; (h) pricing; (i) licensing; (j) intellectual property or payments; (k) valuations; (l) acquisitions, and (m) convoyed sales."[20] This conclusion is without prejudice to Procore's asserting burden for any specific category.

### 2.2 Procore's Interrogatory Responses

Two letter briefs address Procore's responses to Interrogatory Nos. 3 through 9. The parties address the disputes in this order: (1) Interrogatory Nos. 4, 6, and 8; (2) Interrogatory No. 3; (3) Interrogatory No. 7; (4) Interrogatory No. 5; and (5) Interrogatory No. 9.[21]

Interrogatory Nos. 4, 6, and 8 are contention interrogatories.

> **Interrogatory No. 4:**
>
> Describe with particularity all facts concerning how and when Procore received, considered, used, and/or disclosed any information provided by or obtained from Oracle (whether provided through Mariano or through any other Person) related to Oracle Branded Document(s), Oracle Originated Document(s), or Oracle Trade Secrets, including the circumstances of Procore's current possession, maintenance, and/or use of all such information.
>
> **Interrogatory No. 6:**
>
> If you contend that any of the Oracle Trade Secrets are not trade secrets, including any allegation that the information was publicly disclosed, and/or were not misappropriated, explain the factual and legal basis for any such contentions.
>
> **Interrogatory No. 8:**
>
> Explain all reasons why You allege that You have not misappropriated Oracle's Trade Secret Information, and that You will not misappropriate Oracle's Trade Secret Information.[22]

Procore proposes providing its responses in early January, after it responds to non-contention interrogatories, which is when Oracle will supplement its own responses.[23] Oracle wants the responses before the depositions scheduled for the first week in January.[24] The court orders responses as soon as is practicable and no later than January 7, 2026.

Interrogatory No. 3 is as follows.

> Identify each and every customer and/or prospective customer of Oracle contacted by Procore from November 1, 2021, through the present and describe all Communications

---

[20] *Id.*

[21] Disc. Letter Brs. – ECF Nos. 193 (3, 4, 6, and 8) & 196 (5, 7, and 9).

[22] Interrogs., Ex. 1 – ECF No. 191-4 at 4 & Ex. 3 – ECF No. 195-3 at 4.

[23] Disc. Letter Br. – ECF No. 193 at 3–4.

[24] *Id.* at 5.

between Procore and any such customer and/or prospective customer, including the date(s) on which such Communications took place and the substance of any such Communications, and identify all Persons involved in such Communications.[25]

Oracle contends that Procore provided no substantive response.[26] Procore responds that it supplemented its response on December 23, 2025, provided enough information to identify every Procore Pay customer, and suggests that Oracle cannot have reviewed the response given that it raised the dispute before Procore provided its response. It "is willing to work with Oracle to provide further supplementation regarding specific relevant customers identified by Oracle."[27]

Oracle must review the supplemental response and identify any deficiencies, and the parties must work together to provide information expeditiously, given the scheduled depositions.

Interrogatory No. 7 is as follows.
> Identify all Procore Storage Devices, whether individual or shared Storage Devices used by anyone at Procore, that were used by or accessible to Mariano from November 1, 2021 to now, including the name of the Storage Device, device identification information and/or device number, storage size/capacity, custodian, physical location, function of each such Storage Device(s), and any Documents or data stored on such Storage Devices.[28]

The dispute is about text messages from Mariano's personal cell phone. Procore produced a text message with a screenshot of an Oracle document, describing it as sent from Mariano's personal cell phone to another Procore employee's personal cell phone but producing the text message from the Procore employee's phone, not Mariano's. Oracle suspects that the text message is no longer available on Mariano's phone. It contends that Procore will not search its employees' text messages to confirm that Procore has produced and sequestered all Oracle documents. Oracle wants Mariano's text messages.[29] Procore responds that Mariano's devices have been submitted to the Forensic Neutral for review, it has conducted a reasonable search of its systems for Oracle documents, and it produced the information for Oracle's review, despite there being no indication of Mariano's access to the material, which mostly is publicly available java files that Oracle

---

[25] Interrogs., Ex. 1 – ECF No. 191-4 at 2.

[26] Disc. Letter Br. – ECF No. 193 at 5.

[27] *Id.* at 6.

[28] Interrogs., Ex. 3 – ECF No. 195-3 at 4–5.

[29] Disc. Letter Br. – ECF No. 196 at 2.

ORDER – No. 24-cv-07457-JST (LB)   9

systematically stamps "proprietary and confidential." It supplemented its interrogatory responses to identify these specific files (including the metadata contemplated by the protective order), thereby satisfying the interrogatory. It is willing to work with Oracle to provide additional information about the files if Oracle identifies relevance and the specific information it seeks.[30]

The parties each propose a solution to the dispute. Before the depositions in the first week of January, Oracle wants Procore to verify that it has searched the text messages of Procore employees who have texted Mariano and produce those messages under RFP 12.[31] Procore responds that it has supplemented its response, Oracle has not raised other deficiencies (including RFPs), and Procore will work with Oracle "to provide further information on specific files on Procore Storage Devices that were used by or accessible to Mr. Mariano that Oracle maintains in good faith are proprietary and confidential."[32]

Given the upcoming depositions, Procore's interrogatory response is sufficient: the dispute seemingly is about the sufficiency of its production of documents, not its interrogatory response. The court cannot tell what searches Procore has performed of its employees' devices. Presumably it has done some, as the production here evidences. As the court held previously, a party has custody or control of documents if it has actual possession of them or the legal right to demand them, including work-related information on current employees' personal devices.[33] A forensic review of Mariano's phone may guide further productions. The parties also must confer on any deficiencies in productions, including RFP 12, and raise any disputes in a separate letter brief.

Interrogatory No. 5 is as follows.

> Describe any investigation, analysis, study, and/or forensics analysis conducted by Procore or on behalf of Procore by a third party (including the investigations referenced in Alan Nicgorki's August 8, 2023; August 17, 2023; and October 4, 2024 letters) regarding Oracle's allegations that Procore has misappropriated, misused, disclosed, and/or possessed Oracle Branded Document(s), Oracle Originated Document(s), or Oracle Trade Secrets, including, but not limited to, the date on which the investigation(s) began, all Persons involved in the investigation(s), and the outcome of the

---

[30] *Id.* at 4. The parties did not submit RFP 12.

[31] *Id.* at 5.

[32] *Id.* (cleaned up).

[33] Order – ECF No. 151 at 4–5 (collecting cases).

> investigation(s). Include in your response the identity of each Document that supports your answer or to which you referred in preparing your answer.[34]

Oracle contends that Procore provided no substantive information, other than incorporating by reference its response to Interrogatory No. 7. It identifies additional facts that Procore withheld: (1) by January 9, 2025, Procore's counsel learned that Mariano retained a box of Oracle paper documents but supplemented its response only after Oracle discovered this on its own; and (2) Procore claimed to have conducted pre-suit investigations but has not provided information. Procore has refused to agree to a date to supplement its response, but Oracle needs to conduct any follow-up discovery before fact discovery closes. Procore's supplement identifies only facts that Oracle has uncovered, not all the facts that Procore knows.[35] Procore responds that it supplemented its response to provide non-privileged information about the box of Oracle documents that Mariano found in his basement and provided to his counsel.[36]

Procore has represented that its response about its investigations is complete. That representation suffices, with the caveat that Procore must supplement its responses if warranted.

Interrogatory No. 9 is as follows.
> Describe each of the Procore's products, solutions, and/or financial management tools, including each customer related to that product or solution and revenue/expected revenue, with which Mariano has been involved with or has worked on since November 1, 2021.[37]

Procore limited its response to Procore Pay customers, asserting that broader customer discovery is not relevant. Oracle asserts that the financial information is deficient because it does not identify all customers who use Procore Pay or Procore Financials.[38] As the court held in resolving the dispute about financial information, broader discovery about customers who use Procore Pay or Procore Financials is relevant. The court orders a response as soon as is practicable and no later than January 7, 2026.

---

[34] Interrogs., Ex. 3 – ECF No. 195-3 at 2.
[35] Disc. Letter Br. – ECF No. 196 at 5.
[36] *Id.* at 5–6.
[37] Interrogs., Ex. 3 – ECF No. 195-3 at 8.
[38] Disc. Letter Br. – ECF No. 196 at 6.

**CONCLUSION**

This order resolves all pending discovery disputes.

**IT IS SO ORDERED.**

Dated: December 31, 2025

_____
LAUREL BEELER
United States Magistrate Judge