Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, California 92626
michael.devries@kirkland.com
Telephone: (714) 982-8822

*Attorneys for Plaintiffs Oracle America, Inc.,
Oracle International Corporation,
and Textura Corporation*

*[Additional counsel listed on signature page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC., ORACLE INTERNATIONAL CORPORATION, and TEXTURA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PROCORE TECHNOLOGIES, INC., and PROCORE PAYMENT SERVICES, INC.<br><br>Defendants. | C.A. No. 4:24-cv-7457-JST<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ADVERSE INFERENCE DUE TO SPOLIATION**<br><br>Date: July 16, 2026<br>Time: 2:00 pm<br>Location: Courtroom 6<br>Judge: Honorable Jon S. Tigar<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[PUBLIC REDACTED VERSION]** |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 16, 2026, at 2:00 pm or as soon thereafter as the matter may be heard in Courtroom 6 at the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation (collectively, "Plaintiffs" or "Oracle"), in this action against Defendants Procore Technologies, Inc. and Procore Payment Services, Inc. (together, "Defendants"), move pursuant to Rule 37(e) of the Federal Rules of Civil Procedure and Local Rule 7-8 for an adverse inference due to spoliation of evidence.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities and Declarations, the pleadings and papers on file in this action, and such further evidence or arguments as the Court may consider.  Specifically, Oracle seeks (1) an adverse inference jury instruction under Rule 37(e)(2) instructing the jury that it must (or in the alternative, may) presume that evidence destroyed was unfavorable to Procore's case; (2) preclusion of Procore under Rule 37(e)(1) from presenting evidence or argument that could be contradicted by the spoliated records; and (3) an award of Oracle's costs and fees associated with the spoliation.

PLAINTIFFS' ADVERSE INFERENCE MOTION                    Case No. 4:24-cv-7457-JST

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF ISSUES TO BE DECIDED | 1 |
| III. | STATEMENT OF RELEVANT FACTS | 2 |
|  | A. Procore recruited Oracle employees, including Mr. Mariano, to obtain and use Oracle trade secrets for Procore's benefit. | 3 |
|  | B. Procore misappropriated Oracle's trade secrets via the three devices. | 4 |
|  | C. Procore spoliated evidence, obfuscating the full scope of its misappropriation. | 5 |
|  | 1. Mr. Mariano kept and used the Oracle MacBook laptop in his role at Procore, then factory reset it, deleting nearly all of its forensic data | 5 |
|  | 2. Mr. Mariano factory reset the iPhone used in his role at Procore and subsequently deleted additional data | 7 |
|  | 3. Mr. Mariano deleted Oracle trade secrets from his Google Drive | 8 |
| IV. | LEGAL STANDARD | 9 |
| V. | ARGUMENT | 10 |
|  | A. Procore's conduct meets the three elements for spoliation under Rule 37(e). | 10 |
|  | 1. Procore had a duty to preserve each of the three sources of ESI. | 10 |
|  | 2. Procore not only failed to take "reasonable" steps to preserve ESI, Procore affirmatively destroyed the ESI to conceal its misappropriation. | 14 |
|  | 3. The ESI that Procore destroyed cannot be replaced. | 17 |
|  | B. The Court should grant Oracle's requested relief under Rule 37(e). | 19 |
|  | 1. An adverse inference instruction is warranted under Rule 37(e)(2). | 19 |
|  | 2. The Court should order preclusion under Rule 37(e)(1). | 23 |
|  | 3. Oracle should be awarded its costs and fees associated with the spoliation. | 25 |
| VI. | CONCLUSION | 25 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
 888 F. Supp. 2d 976 (N.D. Cal. 2012) .......................................................................24

*Bistrian v. Levi*,
 448 F. Supp. 3d 454 (E.D. Pa. 2020) ........................................................................11

*Brewer v. Leprino Foods Co.*,
 No. CV-1:16-1091-SMM, 2019 WL 356657 (E.D. Cal. Jan. 29, 2019)...................20

*Burlington Indus., Inc. v. Ellerth*,
 524 U.S. 742 (1998)..................................................................................................16

*Burris v. JPMorgan Chase & Co.*,
 566 F. Supp. 3d 995 (D. Ariz. 2021), *aff'd*, No. 21-16852, 2024 WL 1672263 (9th
 Cir. Apr. 18, 2024)....................................................................................................14

*CAT3, LLC v. Black Lineage, Inc.*,
 164 F. Supp. 3d 488 (S.D.N.Y. 2016)......................................................................15

*Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. 07-CV-05944-JST, 2024 WL 4823938, at *11 (N.D. Cal. Nov. 15, 2024)................20, 22

*Colonies Partners, L.P. v. County of San Bernardino*,
 No. 5:18-CV-00420JGBSHK, 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020), *R&R
 adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).......................................16, 25

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
 No. 1:18-CV-00536AWI-BAM, 2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) .......18, 19, 22

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
 No. 20-CV-01891-CRB (LB), 2022 WL 11270394 (N.D. Cal. Oct. 19, 2022) ..........10, 23, 25

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
 803 F. Supp. 2d 469 (E.D. Va. 2011) .......................................................................17

*Facebook, Inc. v. OnlineNIC Inc.*,
 No. 19-CV-07071-SI (SVK), 2022 WL 2289067, at *11 (N.D. Cal. Mar. 28,
 2022), *R&R adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) ....................24

*Fast v. GoDaddy.com LLC*,
 340 F.R.D. 326 (D. Ariz. 2022) ...............................................................................15

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*,
No. 15-CV-1893-HRL, 2016 WL 5870218 (N.D. Cal. Oct. 7, 2016)
...............................................................................................................10, 14, 18, 20

*GMS Indus. Supply, Inc. v. G&S Supply*,
LLC, No. 2:19-CV-324 (RCY), 2022 WL 853626 (E.D. Va. Mar. 22, 2022) ..................16, 17

*GN Netcom, Inc. v. Plantronics, Inc.*,
No. CV 12-1318-LPS, 2016 WL 3792833 (D. Del. July 12, 2016) .......................................14

*Goodman v. Praxair Servs., Inc.*,
632 F. Supp. 2d 494 (D. Md. 2009) .................................................................................16, 17

*Gregory v. State of Montana*,
118 F.4th 1069 (9th Cir. 2024) ........................................................................................14, 16

*In re Hitachi Television Optical Block Cases*,
No. 08CV1746 DMS, 2010 WL 11748027 (S.D. Cal. Oct. 20, 2010) ..............................16, 17

*ILWU-PMA Welfare Plan Board of Trustees v. Conn. General Life Insurance Co.*,
No. C 15-02965 WHA, 2017 WL 345988 (N.D. Cal. Jan. 24, 2017)................................10, 12

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ............................................................................................20, 22

*Laub v. Horbaczewski*,
No. CV 17-6210-JAK (KS), 2020 WL 9066078 (C.D. Cal. July 22, 2020)...........................15

*Lee v. Cnty. of Los Angeles*,
No. 2:23-CV-06875-GW-MAA, 2025 WL 2505484 (C.D. Cal. Aug. 29, 2025)...................23

*Lexis-Nexis v. Beer*,
41 F. Supp. 2d 950 (D. Minn. 1999)......................................................................................11

*Lopez v. Apple, Inc.*,
No. 19-CV-04577-JSW (SK), 2024 WL 4561320 (N.D. Cal. July 17, 2024)
....................................................................................................................................9, 19, 23, 25

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
No. 13-CV-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ...........................24, 25

*Microvention, Inc. v. Balt USA, LLC*,
No. 820CV02400JLSKES, 2023 WL 7476521 (C.D. Cal. Oct. 5, 2023), *R&R
adopted,* 2023 WL 7634109 (C.D. Cal. Nov. 13, 2-23) ................................................. *passim*

*MMR Constructors, Inc. v. JB Grp. of LA, LLC*,
No. CV 22-267-BAJ-SDJ, 2025 WL 1073154 (M.D. La. Apr. 7, 2025),
*reconsideration denied*, 2025 WL 2499086 (M.D. La. July 2, 2025) ....................................11

*Nucor Corp. v. Bell*,
    251 F.R.D. 191 (D.S.C. 2008) ...........................................................................................24

*Painadath v. Good Shepherd Penn Partners*,
    348 F.R.D. 16 (E.D. Pa. 2024)...........................................................................................15

*Phan v. Costco Wholesale Corp.*,
    No. 19-CV-05713-YGR, 2020 WL 5074349 (N.D. Cal. Aug. 24, 2020)...............................23

*Philips Elecs. N. Am. Corp. v. BC Tech.*,
    773 F. Supp. 2d 1149 (D. Utah 2011)..................................................................................24

*Proofpoint, Inc. v. Vade Secure, Inc.*,
    No. 19-CV-04238-MMC-RMI, 2021 WL 11108111 (N.D. Cal. June 1, 2021).....................22

*Prudential Def. Sols., Inc. v. Graham*,
    No. 20-11785, 2021 WL 4810498 (E.D. Mich. Oct. 15, 2021)...............................................13

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
    342 F.R.D. 461 (C.D. Cal. 2022) ........................................................................................18

*Skyline Adv. Tech. Servs. v. Shafer*,
    No. 18CV06641CRBRMI, 2020 WL 7025081 (N.D. Cal. Nov. 30, 2020) ...........................25

*Skyline Advanced Tech. Servs. v. Shafer*,
    No. 18-CV-06641-CRB (RMI), 2020 WL 13093877 (N.D. Cal. July 14, 2020),
    *R&R adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020).............................20, 22, 23, 25

*Smahi v. STMicroelectronics, Inc.*,
    No. 5:23-CV-06645-PCP, 2026 WL 836558 (N.D. Cal. Mar. 26, 2026)...............................10

*SVF II Aggregator (DE) LLC v. Shafi*,
    No. 23-CV-03834-YGR, 2025 WL 2490447 (N.D. Cal. Feb. 27, 2025) ...............................21

*In re Vaxart, Inc. Sec. Litig.*,
    No. 20-CV-05949-VC, 2025 WL 1865848 (N.D. Cal. July 7, 2025)..........................9, 14, 23

*Waters v. Kohl's Dep't Stores, Inc.*,
    No. 14-CV-00043-KAW, 2015 WL 1519657 (N.D. Cal. Apr. 2, 2015) ...............................11

*Waymo LLC v. Uber Techs., Inc.*,
    No. C 17-00939 WHA, 2018 WL 646701 (N.D. Cal. Jan. 30, 2018)...............................10, 12

*Welter v. Hurt*,
    No. 2:23-CV-02627-SPG (MARX), 2025 WL 1843263 (C.D. Cal. Apr. 1, 2025),
    *R&R adopted*, 2025 WL 1843205 (C.D. Cal. May 28, 2025) ........................................21, 22

*WeRide Corp. v. Kun Huang*,
    No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020)...................... *passim*

*Youngevity Int'l v. Smith,*
 No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) ..............14, 15, 16

**Rules**

Fed. R. Civ. P. 37(e) ................................................................................................. *passim*

## I.      INTRODUCTION

Oracle and its experts, through tremendous expense and effort, have uncovered significant evidence that Defendants Procore Technologies, Inc. and Procore Payment Services, Inc. (together, "Procore") misappropriated Oracle trade secrets to develop Procore's competing financial management solutions.  But Oracle and its experts have also discovered that large amounts of key evidence on three devices were destroyed after a duty to preserve arose, cannot be recovered, and for which there is no backup.  This destruction of evidence makes it impossible for Oracle to fully trace all instances where Procore has accessed, used, and further transferred Oracle's trade secrets. Due to this destruction of evidence, a complete forensic record and the full extent of Procore's trade secret misappropriation cannot be determined, prejudicing Oracle's ability to present its case. Further, the unrebutted facts surrounding the multiple, intentional acts of evidence destruction, combined with a failure to abide by the duty to preserve this evidence, establish that Procore intended to deprive Oracle of this information at a time when Oracle's claims were reasonably foreseeable to Procore. Accordingly, curative measures are warranted under the law.

This Motion addresses three independent instances of spoliation of key evidence: (1) the factory reset of an Oracle-owned MacBook issued to Mr. Mariano while at Oracle, which he kept and used in his work at Procore; (2) the factory reset of Mr. Mariano's iPhone used in his work at Procore; and (3) the deletion of Oracle trade secret files and corresponding forensic data from Mr. Mariano's Google Drive.  Under the governing standards, this conduct warrants commensurate rulings under Rule 37(e), including (1) an adverse inference jury instruction that the destroyed evidence would (or alternatively, may) have been unfavorable to Procore; (2) an order precluding Procore from presenting evidence and argument that could be contradicted by the spoliated records; and (3) awarding Oracle its attorneys' fees and costs associated with Procore's spoliation.

## II.     STATEMENT OF ISSUES TO BE DECIDED

1.      Did Procore spoliate evidence under Fed. R. Civ. P. 37(e)?

2.      Should the Court issue a mandatory or permissive adverse inference jury instruction under Fed. R. Civ. P. 37(e)(2)?

PLAINTIFFS' ADVERSE INFERENCE MOTION              1              Case No. 4:24-cv-7457-JST

3.      Should Procore be precluded under Fed. R. Civ. P. 37(e)(1) from presenting evidence and argument at trial (1) that Oracle has presented insufficient forensic evidence to establish trade secret misappropriation with respect to the spoliated evidence, or (2) that Procore did not use information on the spoliated devices to develop its competing platform and business?

4.      Should Oracle be awarded its attorneys' fees and costs associated with the spoliation?

## III.    STATEMENT OF RELEVANT FACTS

Oracle uncovered indisputable evidence, supported by expert analysis, that Procore misappropriated Oracle's trade secrets to develop Procore's competing construction financial management solutions.[1]   Indeed, Procore employees have admitted as much.  Shortly after this case was filed, Procore employees discussed Reuters' reporting on the lawsuit and admitted █████ ███████████████████████████████████████ " and █████████████████████████████████████ ███████████████████████████ "  Ex. 1.  After numerous events that made litigation over Procore's acquisition and use of Oracle's trade secrets reasonably foreseeable, Procore deleted evidence of the full extent of its wrongdoing.  Tellingly, even after the lawsuit was filed, Procore lawyers instructed at least one Procore employee "█████" about the facts.  Ex. 2 at 156:14-25 (Heaverlo); Ex. 3 ("████ ████████████████████████ " and ███████████████████████████████████████ █████████ ").  As detailed below, Procore's misappropriation was extensive and included recruiting Oracle employees to steal Oracle trade secrets, as well as soliciting disclosure of Oracle trade secrets from Oracle customers in violation of their non-disclosure agreements.  Ex. 4 ¶ 581.  Despite the existing record clearly establishing that Procore misappropriated Oracle's trade secrets, the full record of Procore's misappropriation is not available because Procore deleted evidence including forensic records from three separate devices after a duty to preserve arose.  The deleted files and forensic data pertain to Mark Mariano, a senior Procore employee who is still employed at Procore, who stole trade secrets and used them in connection with his work at Procore.

---

[1]    For the Court's convenience, the key events discussed in this motion are bulleted in chronological order in the supporting declaration of K. Wang at ¶ 55.  All exhibits are attached to the same.

**A.      Procore recruited Oracle employees, including Mr. Mariano, to obtain and use Oracle trade secrets for Procore's benefit.**

Mr. Mariano began working at Textura in 2012, and he continued working for Oracle when Oracle acquired Textura in 2016.  Ex. 5 at 170:4-174:15, 177:13-178:12 (Mariano).  He worked on Oracle's Textura Payment Management product and its corresponding "integrations," which connect Textura Payment Management to third-party Enterprise Resource Planning (ERP) software used by Oracle's customers.  *Id.* at 170:4-176:6, 177:13-178:12; Ex. 7.  Procore recruited Mr. Mariano as part of its plan to copy Oracle's Textura Payment Management product after Procore spent years unsuccessfully attempting to build a competing solution.  Ex. 4 ¶¶ 582-83, 604-06.  Procore's records acknowledge that it recruited Mr. Mariano to "███████████████████████████████ ██████████████████████████████████████" for a "█████████████." Ex. 7.

Procore recruited Mr. Mariano by no later than September 17, 2021, and Mr. Mariano accepted employment with Procore by October 19, 2021.  Exs. 9-11; Ex. 41.  Mr. Mariano then notified Oracle of his resignation, and Oracle immediately terminated Mr. Mariano's access to Oracle systems.  Ex. 6.  Oracle subsequently sent Mr. Mariano his separation package on November 5, 2021, reminding him of his obligations to maintain the confidentiality of all Oracle proprietary information (including trade secrets) under his Oracle Proprietary Information Agreement.[2]  The separation package also instructed Mr. Mariano to return his Oracle-issued devices through Oracle's mail-in return program.[3]  Ex. 13; Ex. 14; Ex. 5 at 233:2-234:1 (Mariano).  Around the time he left, Mr. Mariano confirmed to his Oracle manager that he would follow this process.  Ex. 16 at 239:1–241:16. But instead of following his legal obligations, Mr. Mariano exfiltrated Oracle trade secrets including by improperly

---

[2]    The Oracle Proprietary Information Agreement covered "all software, hardware and other technology developed or licensed by or for Oracle or licensed to Oracle by a third party, and any documentation, research, development, technical or engineering information, know-how, tools, data, designs, diagrams, drawings, [and] schematics" that "relat[e] to such software, hardware or other technology" and "Oracle's marketing and sales plans or forecasts; pricing or other sales-related information."  Ex. 15 at 4; Ex. 5 at 213:15-223:14 (Mariano).

[3]    Mr. Mariano "agree[d] that upon termination of [his] employment" with Oracle, he would "immediately deliver to my Employer or its designee, and will not keep in my possession, recreate or deliver to anyone else, all materials (in any tangible or electronic form) and property belonging to Oracle."  Ex. 5 at 222:15-223:14 (Mariano); Ex. 15.

keeping and using Oracle's laptop (and the Oracle trade secrets on it) and other Oracle devices, and uploading Oracle files to his Google Drive.  Ex. 17 (A. Crain Rep.) ¶¶ 56-69, 87-120.

### B.    Procore misappropriated Oracle's trade secrets via the three devices.

After quitting Oracle, Mr. Mariano immediately joined Procore as a Director in a role that was highly similar to his job at Oracle.  Ex. 18 (W. Ibbs Rep.) ¶¶ 314-16.  Procore employees, including Mr. Mariano, acquired and used Oracle trade secrets including via the three devices, including to develop and market competing products, such as by: (1) accessing Oracle trade secret files on a MacBook laptop that Mr. Mariano took from Oracle and brought to and used at Procore; (2) copying Oracle trade secret files with his iPhone and using that iPhone to disseminate and use Oracle's trade secrets at Procore; and (3) accessing Oracle trade secret files that Mr. Mariano uploaded to his Google Drive cloud storage.

Examples of Procore's acquisition, use, and dissemination of Oracle trade secrets via these three devices include the following:   On November 12, 2021, Mr. Mariano downloaded the "Construction Accounting 101" file onto his Procore MacBook from his Google Drive (Ex. 5 at 429:13-434:12 (Mariano); Ex. 17 ¶ 79), which Mr. Mariano explained is an "████████████ ████████████████████████████████████████" Ex. 5 at 101:1-8.  Mr. Mariano copied Oracle's trade secret Construction Accounting 101 presentation onto Procore slides.  Ex. 17 ¶¶ 104-05; Ex. 18 ¶ 318.  When circulating the misappropriated work product, Mr. Mariano explicitly told additional Procore employees that the materials originated with Oracle.  For example, when sending the slide deck to Reed Shea (Principal Product Manager), Mr. Mariano admitted that he "████████████ ████████████████████████████████████." Ex. 21 (emphasis added).  The presentation was then sent to Procore employee Bobby Moton (Senior Director of Integration & Technical Services) and as many as sixty other Procore employees.  Ex. 22 ████████████████████████████████ ████████████████████████") (emphasis added); Ex. 23.

As another example, on March 22, 2022, after discussing Textura pricing with Geoff Lewis (Procore Senior Vice President of Product Management), Mr. Mariano stated in a Slack message, "████████████████████████████████████████████████

█████ ” Ex. 24. Mr. Mariano stated that he sent this data via his iPhone text messages because he

"█████████████████████████████ " the information. Ex. 5 at 287:9-23 (Mariano). Specifically, Mr. Mariano used his iPhone to take a picture of Oracle's trade secret pricing information that he had open on the Oracle MacBook, and disseminated the trade secret further at Procore using the iPhone. Ex. 25; Ex. 5 at 294:9–300:3.[4] Then on May 3, 2022, Mr. Lewis text that image of Oracle trade secret information to Eliza Marsh (Procore Senior Dir. of Product Mgmt). Ex. 25; Ex. 26.

As determined by Oracle's technical and forensic experts, Procore also misappropriated 109 asserted Oracle trade secrets (Ex. 4 ¶ 581), including extensive use of the Oracle MacBook, the Google Drive, and iPhone (*id.* ¶¶ 628-37; Ex. 17. ¶¶ 25, 44-48, 72-82). For example, Mr. Mariano used the Oracle MacBook to access and disseminate trade secrets, as shown in the March 22, 2022 screen shot of a "Oracle Textura Payment Management Pricing" document. Ex. 17 ¶¶ 44–48.

**C.** **Procore spoliated evidence, obfuscating the full scope of its misappropriation.**

Despite overwhelming evidence that Procore improperly acquired and used Oracle's trade secrets, the full record of misappropriation is incomplete because Procore deleted significant ESI from three key sources after a duty to preserve arose: (1) the Oracle MacBook laptop; (2) the iPhone that Mr. Mariano used for Procore work; and (3) the Google Drive. Procore's deletion of each resulted in permanent and unrecoverable loss of key evidence. Ex. 17 ¶¶ 36-51.

**1.** **Mr. Mariano kept and used the Oracle MacBook laptop in his role at Procore, then factory reset it, deleting nearly all of its forensic data**

Mr. Mariano used a MacBook laptop owned by Oracle that was issued to Mr. Mariano to use in his work at Oracle. Despite Mr. Mariano telling Oracle on December 15, 2022, that he was

"█████████ " he returned this MacBook to Oracle upon his departure (Ex. 27), that was not true. In fact, Mr. Mariano kept the laptop, and knew it, after beginning work at Procore, despite telling Oracle that he would return it, as he was required to do under Oracle's Proprietary Information Agreement. Ex. 5 at 240:6-8 (Mariano) ███████████████████████████████████████

███████ " ); Ex. 28 (Mr. Mariano admitting ████████████████████████████████ " and " ████

---

[4] Ex. 17 ¶ 46 ("Metadata embedded within the native copy of this live photo confirms it was taken using [Mr. Mariano's] iPhone's camera on March 22, 2022.").

██████ "); Ex. 29 ("████████████████████████████"); Ex. 30 ("███████
██████████.").

Significant evidence including forensic data from the laptop—which would have shown the full extent of activity on the computer—is unavailable because Mr. Mariano wiped the MacBook clean by performing a "factory reset" on August 27, 2022, almost a year into Mr. Mariano's employment at Procore. Ex. 5 at 49:9-14 (Mariano); Ex. 17 ¶ 28. Factory resetting a MacBook is a seldom used, deliberate process for permanent deletion (as opposed to freeing up memory). Factory resetting a MacBook is not the type of process that users perform in an ordinary course of operating a computer; to the contrary, Apple requires an eight-step process involving prompts that only appear in limited circumstances and various red and yellow warning symbols must be acknowledged. Ex. 17 ¶¶ 33-34. Procore tried to claim that Mr. Mariano performed a factory reset so that ████████████████ ██████████████████████, but Mr. Mariano admitted that the Oracle machine was never used for such purposes. Ex. 5 at 244:3-245:20 (Mariano) █████████████████████. And the March 2022 screenshot of the MacBook displaying Oracle's trade secret pricing information notably shows a "factory reset" tab open in the browser window. Ex. 17 ¶ 45.

Despite Procore denying that Mr. Mariano ever used the Oracle MacBook while working at Procore, evidence shows that this is precisely what Mr. Mariano did. Indeed, on March 22, 2022, Mr. Mariano used his iPhone to photograph an Oracle Textura Payment Management Pricing trade secret displayed on the Oracle MacBook, which was then sent to Procore employee, Mr. Lewis. Ex. 32; Ex. 17 ¶¶ 45-46; Ex. 5 at 294:9–300:3 (Mariano); Ex. 33 at 296:10-21 (Lewis). Testimony and forensic evidence confirm that the photo was of the Oracle-issued MacBook. Ex. 5 at 302:25-303:2 (Mariano) (conceding this was "████████"). As explained by Oracle's forensic expert, the picture shows a screen with a macOS operating system and the picture file contained metadata with the GPS coordinates of Mr. Mariano's house. Ex. 17 ¶¶ 45-48. Further, on January 19, 2023, Mr. Mariano sent the same photo of the Oracle trade secret shown on the Oracle MacBook to Nolan Frazier (Procore Head of Sales). Ex. 34. Additionally, dozens of Oracle trade secret files were uploaded to Mr. Mariano's iCloud account just minutes before the Oracle MacBook was reset, evidently from the same

Oracle MacBook.  Ex. 17 ¶¶ 70-71.

> **2.     Mr. Mariano factory reset the iPhone used in his role at Procore and subsequently deleted additional data**

Procore employees can use personally-owned phones for work through Procore's "Bring Your Own Device" policy, under which Procore "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."  Ex. 31 at 10-12.  Mr. Mariano used his iPhone under this Procore policy: "████████████████████████████████████████████████████████████████████████████."  Ex. 5 at 53:6-7 (Mariano).  Mr. Mariano used his iPhone from before joining Procore until May 2023, when he factory reset the phone.  *Id.* at 536: 3-7, 564:2-5.  Like a computer factory reset, this affirmative act permanently deletes text messages and forensic data such that the iPhone cannot be analyzed for file transfers, usage history, and iCloud synchronization, and it is then impossible to tell what files, photos, videos, and other data were stored on the phone.  Ex. 17 ¶ 86.  No backup or other preservation measures were used to prevent the ESI destruction.  Ex. 5 at 71:24-72:12.

While Procore attempts to justify the deletion as happening in connection with Mr. Mariano upgrading his phone, Mr. Mariano and others at Procore knew, ***before*** the deletion, that Mr. Mariano copied and transmitted Oracle's trade secret information to at least one fellow Procore employee, Mr. Lewis, using the iPhone.  Ex. 32; Ex. 17 ¶¶ 45-46; Ex. 5 at 294:9–300:3 (Mariano); Ex. 33 at 296:10-21 (Lewis).  A year before the deletion, on March 22, 2022, Mr. Mariano acknowledged to Mr. Lewis that he was transmitting that data by text on his iPhone rather than a work channel, because he was "███████████████████████████████" the information.  Ex. 5 at 287:9-23 (Mariano).  Mr. Mariano sharing Oracle's confidential information on the iPhone was not an isolated incident.  In January 2023 Mr. Lewis texted Mr. Mariano that he had "████████████████████" and asked for "██████████," to which Mr. Mariano replied that he would need "██████████."  Ex. 35.  On January 11, 2023, Mr. Mariano messaged Mr. Lewis, "████████████████████" and "████████████████████████████████████████████████."  *Id.*  Mr. Mariano had also communicated with others at Procore, including Ms. Rast, on his iPhone about work matters related to ERP integrations at-issue in this lawsuit.  Ex. 36 ("Sage budget question").  While those particular texts were thankfully recovered from other sources,

there is no duplicate of other relevant communications or forensic data erased from Mr. Mariano's phone. For instance, Mr. Mariano's direct supervisor, Bobby Moton, testified that *his* texts with Mr. Mariano were destroyed in 2024 such that now there is no record of texts between the two from before then. Ex. 39 at 61:16-63:4 (Moton) (testifying that a heavy tow hook "███████████████████████████████████████████████████████████████████████████████████."). The two did text, though. After the destruction, Mr. Moton and Mr. Mariano texted about Oracle's lawsuit, and Mr. Mariano confided that he was ████████████████████████████████████." Ex. 37; Ex. 38. Mr. Moton did not deny that the two texted prior to the destruction. Ex. 39 at 61:13-18 (Moton). And prior to the destruction, by July 14, 2023, he was told that Oracle had sent Mr. Mariano a cease-and-desist letter. *Id.* at 229:3-230:3; Ex. 47.

Even following Mr. Mariano's iPhone factory reset, he continued communicating with additional Procore employees about the facts of this case while repeatedly deleting additional evidence, even *after* receiving formal letters for preservation. On July 13, 2023, Oracle sent Mr. Mariano a letter "to address concerns that have arisen regarding your handling of Oracle's confidential proprietary and trade secret information," and "demand[ing] that you refrain from taking any measures to delete any Oracle proprietary information or any other communications or materials concerning this matter." Ex. 47; Ex. 5 at 534:16-535:15 (Mariano). But the deletions continued. On July 20, 2023, a week after receiving Oracle's letter, Mr. Mariano and Megan Rast had a conversation, in which Mr. Mariano discussed how Oracle was "███████████████████████████████████████████." Ex. 42. While this conversation was produced from Ms. Rast's device (*id.*), it was deleted from Mr. Mariano's phone despite him conceding the "███████████████████████████████████████████████," Ex. 5 at 542:24-545-21 (Mariano). That was not isolated. On October 10, 2023, the device of Erica Heaverlo (Procore Senior Director of Product Management) shows a conversation about the dispute (Ex. 43), which was also deleted from Mr. Mariano's iPhone despite him conceding that it "████████████████████████████████████████████████████████████████████," Ex. 5 at 533:23-537:21, 352:10-354:7.

### 3.    Mr. Mariano deleted Oracle trade secrets from his Google Drive

While still working at Oracle, Mr. Mariano uploaded at least nine Oracle trade secret

documents to his personal Google Drive account. Ex. 17 ¶ 72. When he left Oracle and joined Procore, Mr. Mariano did not return Oracle's confidential information on the Google Drive. Instead, he used the Google Drive to advance Procore's competing business. For instance, as explained above, on November 12, 2021, Mr. Mariano downloaded the Oracle trade secret file "Construction Accounting 101" from his Google Drive onto his Procore computer, copied that Oracle data into Procore-branded slides, and further spread that information through Procore. *Supra* § III.B. When asked if he had "█████████████████████████████████████████████████████ █████████████████████████████████████," Mr. Mariano could not deny it, testifying: █ █████████████████." Ex. 5 at 436:14-18 (Mariano).

Following Oracle's July 13, 2023, letter demanding that Procore and Mr. Mariano preserve evidence, including Mr. Mariano's Google Drive containing Oracle trade secrets (Ex. 17 ¶ 50), Mr. Mariano deleted at least seven of the Oracle trade secret files by the time the Forensic Neutral Examiner was allowed to image the drive on October 29, 2025. *Id.*[5] Through these deletions, Procore destroyed metadata that would show access, modification, or download of the files. *Id.* ¶ 51.

## IV.   LEGAL STANDARD

"Rule 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI 'should have been preserved in the anticipation or conduct of litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or replaced through additional discovery.'" *Lopez v. Apple, Inc.*, No. 19-CV-04577-JSW (SK), 2024 WL 4561320, at *5 (N.D. Cal. July 17, 2024). When those requirements are met, under Rule 37(e)(1), "[u]pon a finding of 'prejudice to another party from loss of the information,' a court 'may order measures no greater than necessary to cure that prejudice.'" *In re Vaxart, Inc. Sec. Litig.*, No. 20-CV-05949-VC, 2025 WL 1865848, at *5 (N.D. Cal. July 7, 2025) (quoting Rule 37(e)(1)). Under Rule 37(e)(2), upon a finding that "a party intentionally destroys information," the court "may issue the following sanctions: (1) a presumption 'that the lost information was unfavorable to the party'; (2) a

---

[5]   Procore concedes this is true and states that the deletion occurred ████████████████ ████ Ex. 49 (Procore's First Supplementary Response to Interrogatory No. 15 (2/27/26)).

jury instruction 'that it may or must presume the information was unfavorable to the party'; or (3) a dismissal or default judgment." *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *2 (N.D. Cal. Oct. 19, 2022) (quoting Rule 37(e)(2)).  A preponderance of the evidence standard applies to spoliation motions. *Smahi v. STMicroelectronics, Inc.*, No. 5:23-CV-06645-PCP, 2026 WL 836558, at *3 (N.D. Cal. Mar. 26, 2026).  "On considering a motion for sanctions, a district court may make factual findings and assess the credibility of witnesses." *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020).

## V. ARGUMENT

### A. Procore's conduct meets the three elements for spoliation under Rule 37(e)

Procore committed three independent acts of destroying evidence that was not otherwise preserved, each of which is an independent basis for awarding Oracle's requested relief, including: (1) wiping the Oracle MacBook; (2) wiping the iPhone and subsequently deleting messages from the iPhone; and (3) deleting files and forensic records from the Google Drive. Procore had a duty to preserve each of these sources of ESI, failed to do so, and the evidence is now irreversibly lost, warranting Oracle's requested relief under Rule 37(e).

#### 1. Procore had a duty to preserve each of the three sources of ESI.

Under Rule 37(e), the duty to preserve evidence begins when litigation is "reasonably foreseeable."  *WeRide,* 2020 WL 1967209, at *12 (quoting *First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016)).  "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2018 WL 646701, at *14 (N.D. Cal. Jan. 30, 2018) (citation omitted).  The standard is "flexible [and] fact-specific," which "allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Id*. at *15 (citation omitted).  Accordingly, the duty can arise well in advance of a formal demand letter or when litigation is initiated, even over four years before a lawsuit is filed. *See ILWU-PMA Welfare Plan Board of Trustees v. Conn. General Life Insurance Co.*, No. C 15-02965

WHA, 2017 WL 345988, at *4 (N.D. Cal. Jan. 24, 2017); *see also WeRide*, 2020 WL 1967209, at *12.

As explained below, Procore's duty to preserve arose as early as November 1, 2021, the day when Mr. Mariano joined Procore as its Director with Oracle's improperly retained trade secrets in hand and began using them to develop software to compete with Oracle. That duty to preserve further entrenched by August 27, 2022, when Mr. Mariano wiped the Oracle MacBook, and even further by May 2023 when he wiped the iPhone. All along this timeline, litigation was reasonably foreseeable because Procore knew or should have known of Oracle's claims arising from the improper acquisition and use of Oracle trade secrets through Mr. Mariano and other Procore employees to develop Procore's competing products.

Mr. Mariano knew, from his first day at Procore as a Director, that he was prohibited under the Oracle Proprietary Information Agreement from disclosing Oracle proprietary information (including trade secrets) to Oracle's competitors and was required to return all Oracle-issued devices, including the Oracle MacBook. By November 5, 2021 Oracle had even sent Mr. Mariano a separation package expressly reminding him of these obligations. Ex. 13; Ex. 14. Procore's own internal records acknowledge the illegality of trade secret misappropriation too, leaving no doubt that litigation was reasonably foreseeable to Procore based on its improper acquisition and use of Oracle trade secrets. Ex. 31. Essentially, "from the moment [Mariano] decided to go to work for [Procore], a direct competitor of [Oracle], [Mariano] either knew or should have known that the [Oracle] material he possessed was relevant to reasonably foreseeable litigation." *Lexis-Nexis v. Beer*, 41 F. Supp. 2d 950, 954 (D. Minn. 1999). And "[Procore] should reasonably have anticipated litigation over [Oracle] documents taken from [Oracle] by its former employees" and for that reason "had a duty to preserve." *MMR Constructors, Inc. v. JB Grp. of LA, LLC*, No. CV 22-267-BAJ-SDJ, 2025 WL 1073154, at *5 (M.D. La. Apr. 7, 2025), *reconsideration denied*, 2025 WL 2499086 (M.D. La. July 2, 2025). This accords with well-accepted, broader principles in which "courts have found that a party reasonably should have anticipated litigation from the time it learned of the events giving rise to the litigation." *Bistrian v. Levi*, 448 F. Supp. 3d 454, 469 (E.D. Pa. 2020) (collecting cases); *see, e.g.*, *Waters v. Kohl's Dep't Stores, Inc.*, No. 14-CV-00043-KAW, 2015 WL 1519657, at *3 (N.D. Cal. Apr. 2, 2015)

PLAINTIFFS' ADVERSE INFERENCE MOTION        11        Case No. 4:24-cv-7457-JST

("Based on the video footage retained, which showed Plaintiff seriously falling and hitting her head, the Court finds that Kohl's should have contemplated litigation at the time of Plaintiff's fall, thereby triggering its duty to preserve."). This knowledge is not limited to Mr. Mariano. He widely shared that he was using Oracle trade secrets for purposes of Procore software development with others at Procore—a fact which Procore's VP Geoff Lewis admitted was a ▮▮▮▮—*i.e.,* and obvious sign that litigation was foreseeable. Ex. 32; Ex. 33 at 274:9-23; Ex. 35; Ex. 24. Furthermore, this District found litigation was "reasonably foreseeable" from when the parties "entered into the tolling agreement," and the plaintiff's claims "f[ell] squarely within the scope of claims contemplated by the tolling agreement." *ILWU-PMA,* 2017 WL 345988, at *4. Like the tolling agreement in *ILWU-PMA,* Mr. Mariano explicitly acknowledged under his Proprietary Information Agreement that "any breach by [him] of this Agreement" would entitle Oracle to judicial remedies, with clauses agreeing to details about litigation, including waivers of personal jurisdiction and venue challenging in certain jurisdictions. Ex. 15. Like in *ILWU-PMA,* a breach of an agreement that itself contemplates litigation for a breach makes litigation reasonably foreseeable.

Further, not only was litigation reasonably foreseeable, but "the record indicates [Procore] *actually* foresaw this litigation" with Oracle. *Waymo,* 2018 WL 646701 at *15-16. Each of these events further cemented Procore's duty to preserve evidence. On November 12, 2021, Mr. Mariano accessed Oracle trade secrets to create derivative materials to use at Procore. Ex. 17 ¶¶ 102-05. When circulating those materials to other Procore employees, they foresaw potential disputes with Oracle and took affirmative steps to remove indicators that the material had come from Oracle. Ex. 21 (Mr. Mariano: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. By January 28, 2022, Procore employees, including Mr. Mariano and Mr. Moton, discussed possible disputes with Oracle based on their concerns about violating the "non solicit" provisions of the Oracle Proprietary Information Agreement. Ex. 45 (Mr. Mariano: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. 12. Mr. Mariano even sought out a copy of a letter that Oracle had sent to another former Oracle employee to "remind [them] of [their] continuing obligations to Oracle which

are set forth in the Proprietary Information Agreement," which included being "prohibited from using or disclosing Oracle confidential information to Oracle's disadvantage." Ex. 8; Ex. 46. This type of investigation and awareness of conduct giving rise to litigation further triggers the duty to preserve. *See WeRide*, 2020 WL 1967209, at \*15; *Prudential Def. Sols., Inc. v. Graham*, No. 20-11785, 2021 WL 4810498, at \*6 (E.D. Mich. Oct. 15, 2021) ("The court finds that all Defendants clearly had notice of future litigation and that they knew any evidence regarding their competing business would be evidence pertaining to a 'non-compete suit that might come down the road.'").

Further, on March 22, 2022, Procore employees, including Mr. Mariano and Mr. Lewis, continued accessing and using Oracle trade secrets. Ex. 17 ¶¶ 44-45. Again, acknowledging that their actions could give rise to litigation with Oracle, Procore avoided using traditional file transfer methods that would be easily discoverable. Instead, Mr. Mariano told Mr. Lewis that he was "███████████ ████████████████████████████████████████████████████████████" Ex. 24. Mr. Mariano then used his iPhone to take a picture of the stolen Oracle MacBook, which was displaying Oracle trade secrets, and then texted the picture to Mr. Lewis' phone. Ex. 17 ¶¶ 44-45. Of course, Procore fully understood its culpability and its witnesses—including Mr. Mariano—would later lie about the circumstances surrounding their use of Oracle's trade secrets: when Oracle discovered that Mr. Mariano had kept his Oracle-issued devices and questioned Mr. Mariano about them, including the Oracle MacBook, Mr. Mariano claimed he was "████████" he returned it to Oracle, despite knowing full well he had *not*, as shown by his continued use of the MacBook to access and disseminate Oracle trade secrets in his work at Procore. Ex. 27.

Procore also unquestionably had a duty to preserve records from the Google Drive, which was deleted between November 2023 and October 2025. Ex. 17 ¶ 50. Months earlier, Oracle sent pre-litigation correspondence beginning on July 13, 2023, expressly demanding that Mr. Mariano (as Procore's Director of Product) "refrain from taking any measures to delete any Oracle proprietary information or any other communications or materials concerning this matter . . . and that you take all reasonable measures to preserve all potentially relevant information, in particular, electronically stored information as described above, against destruction, deletion, or alteration." Ex. 47 (2023-07-13

Letter to M. Mariano). Procore thus had a duty to preserve ESI from each of the three devices.

### 2.     Procore not only failed to take "reasonable" steps to preserve ESI, Procore affirmatively destroyed the ESI to conceal its misappropriation.

Rule 37(e) requires a party to take "reasonable steps to preserve" ESI. Rule 37(e). A party fails to take "reasonable steps" when it is "taking no affirmative action" to preserve the evidence. *Youngevity Int'l v. Smith*, No. 3:16-CV-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020); *see. e.g.*, *Gregory v. State of Montana*, 118 F.4th 1069, 1077-78 (9th Cir. 2024) (finding no "reasonable steps to preserve" by party who failed to promptly determine how long its surveillance system preserved information and who failed to download and preserve the video from the system before it was deleted.); *In re Vaxart,* 2025 WL 1865848, at *6. And of course, as here, where a party takes affirmative steps to **delete** evidence, "[t]he analysis as to this factor is straightforward," as that is unquestionably a failure to take "reasonable steps" to preserve. *Burris v. JPMorgan Chase & Co.*, 566 F. Supp. 3d 995, 1016 (D. Ariz. 2021), *aff'd*, No. 21-16852, 2024 WL 1672263 (9th Cir. Apr. 18, 2024); *GN Netcom, Inc. v. Plantronics, Inc.*, No. CV 12-1318-LPS, 2016 WL 3792833, at *6 (D. Del. July 12, 2016). There can be no question here that the loss of ESI evidence was intentional: Procore not only failed to take any actions to preserve the Oracle MacBook, the iPhone, and the Google Drive, but ensured its unavailability by affirmative destruction.

*First*, the Oracle MacBook was wiped by performing a "factory reset" on August 27, 2022. Ex. 5 at 49:9-14 (Mariano); Ex. 17 ¶ 28. This was a deliberate, multi-step process to achieve permanent deletion totally inconsistent with Mr. Mariano's and Procore's claimed justification. S*upra* § III.C.1; Ex. 17 ¶¶ 33-34. No backup was created despite there being no question that possession and use of Oracle's machine (and the Oracle files on it) for Procore's business violated trade secret law and confidentiality obligations, and Procore made no effort to recover the data afterward. *See* Ex. 48 at 34:9-21 (Redman). Simply put, the affirmative deletion of the Oracle-issued MacBook (including trade secret files and meta data about file access, use, and transfer) was the "opposite of taking reasonable steps" to preserve this highly relevant evidence. *GN Netcom*, 2016 WL 3792833, at *6.

*Second*, in May 2023, Mr. Mariano factory reset the iPhone used for communicating about and transferring Oracle trade secrets for over a year in his Procore work. Ex. 5 at 71:24-77:4 (Mariano).

Despite that iPhone being "███████████" (*id.* at 53:6-7) and as an instrument of Procore's misappropriation (*supra* § III.C.2), Procore made no backup, preservation, or recovery efforts. Ex. 48 at 313:21-22 (Redman); Ex. 5 at 71:24-77:4 (Mariano).  Even without the intentional deletion, "[b]y failing to back up h[is] iPhone, [Procore] failed to take reasonable steps to preserve the ESI contained on the phone." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 344 (D. Ariz. 2022) (collecting cases); *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KS), 2020 WL 9066078, at *4 (C.D. Cal. July 22, 2020) (finding no reasonable steps where party "chose not to backup his text messages that were stored on his iPhone").  While Procore attempts to justify this particular factory reset as occurring during a supposedly innocent phone upgrade, even if true, that does not relieve Procore from its undisputed failure to preserve. *See Youngevity*, 2020 WL 7048687, at *2 (finding "[e]ven if Smith was unaware of the automatic deletion function because it was enabled by a Verizon clerk, . . . . the Relevant Defendants would not be excused from taking affirmative action to prevent such destruction").  Procore clearly failed to take "reasonable steps" to preserve the ESI on the iPhone.

*Third*, according to Procore, in "approximately late summer 2024," Mr. Mariano deleted at least seven Oracle trade secret files from his Google Drive.  Ex. 49; *supra* § III.C.3.  By Mr. Mariano "affirmingly deleting," Procore again went well beyond merely "fail[ing] to take reasonable steps." *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 27 (E.D. Pa. 2024); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) ("[M]anipulation of the email addresses is not consistent with taking 'reasonable steps' to preserve the evidence.").  These deletions are particularly egregious because Procore unambiguously committed to preserving the Google Drive. Oracle's July 13, 2023 preservation letter discussed multiple points about the Google Drive (Ex. 20 (2023-07-13 Oracle Letter to Procore)), and Procore agreed to abide by its preservation obligations (Ex. 51 (2023-8-8, Procore Letter to Oracle)).  While later, on October 4, 2024, Procore requested that Mr. Mariano be allowed to "████████████████████████████████████████ ██████████" due to an alleged initial preservation (Ex. 52 (2024-10-4, Procore Letter to Oracle)), Oracle objected (Ex. 19 (2024-10-26, Oracle Letter to Procore)).  Thus, Procore's duty to preserve unambiguously applied, as expressly asserted by Oracle.  Worse yet, Procore did nothing to recover

the deleted data, despite the Google Drive data being recoverable for thirty days. Ex. 20. This further demonstrates that Procore failed to take "reasonable steps" to preserve the evidence, as the law requires affirmative steps to prevent deletion due to automatic deletion policies. *See Gregory*, 118 F.4th at 1078; *Youngevity*, 2020 WL 7048687, at *2.

Procore cannot escape responsibility by trying to distance itself from the actions of its employees. Of course, "an entity and employee defendant can both be culpable for spoliation of ESI, even if one or the other is directly responsible for the destruction of evidence." *Colonies Partners, L.P. v. County of San Bernardino*, No. 5:18-CV-00420JGBSHK, 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020), *R&R adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). Courts "apply the general principles of agency law to determine whether to impose sanctions against a party for spoliation by its employees." *WeRide*, 2020 WL 1967209, at *13; *Microvention, Inc. v. Balt USA, LLC*, No. 8:20-CV-02400-JLS-KES, 2023 WL 7476521, at *25 (C.D. Cal. Oct. 5, 2023), *R&R adopted,* 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023). Under agency law, "[a]n employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment," and "conduct" is "within the scope of employment when 'actuated, at least in part, by a purpose to serve the [employer],' even if it is forbidden by the employer." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998). In assessing spoliation, the key question is whether the spoliated device was used within the scope of employment. *GMS Indus. Supply, Inc. v. G&S Supply*, LLC, No. 2:19-CV-324 (RCY), 2022 WL 853626, at *8 (E.D. Va. Mar. 22, 2022) (employee "used [their ex-employer]-issued laptop for work related to [the new employer]," "in the course of his employment with [the new employer], and in 'furtherance of the master's business,'"); *Microvention*, 2023 WL 7476998, at *25; *In re Hitachi Television Optical Block Cases*, No. 08CV1746 DMS, 2010 WL 11748027, at *3 (S.D. Cal. Oct. 20, 2010); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 522 (D. Md. 2009). That is clearly the case here.

Mr. Mariano, in a Director position at Procore, used the Oracle MacBook, his iPhone, and his iCloud to leverage and use Oracle trade secrets and thereby advance Procore's creation of a competing software platform, alongside other Procore employees, including at least one Vice President, then

deleted evidence of that use. *Supra* § III.B.  The use of the spoliated devices was squarely in the scope of Mr. Mariano's employment.   He downloaded an Oracle file from his Google Drive then incorporated it into Procore work product, which was circulated to over sixty employees.  *Supra* §§ III.B, III.C.3.  Similarly, for the laptop and phone, Mr. Mariano and Mr. Lewis were engaged in work discussing pricing on company Slack when Mr. Marino opted to use his iPhone to capture and send an image of an Oracle trade secret displayed on the Oracle MacBook, and both Mr. Lewis and Mr. Mariano later circulated the same image to more Procore employees.  Supra §§ III.B, III.C.1.  These actions were "in the course of his employment with [Procore], and in 'furtherance of the master's business," such that Procore is "liable for [Mr. Mariano]'s spoliation."  *GMS*, 2022 WL 853626, at *8; *see also, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 507 (E.D. Va. 2011) (employer liable for spoliation where files were deleted from devices that were "used in the course of [employee's] employment and in furtherance of [the employer]'s business"); *Hitachi.* 2010 WL 11748027, at *3 (employee "acted in the course and scope of his employment when he copied company files, took them home, took them to Japan, and ultimately destroyed them."); *Goodman*, 632 F. Supp. 2d at 522.  Throughout Mr. Mariano's repeated sharing of his illegal activities with others at Procore, none of them instructed him to preserve evidence; to the contrary, they encouraged the misappropriation. Ex. 32; Ex. 35; Ex. 24.

Procore also cannot avoid the consequences of its own employees' actions by arguing that they acted without other Procore employees' advanced knowledge or permission. Courts regularly reject that argument, particularly where, as here, the employer did not terminate or punish the employee for destroying evidence and did nothing else attempting to remedy the situation voluntarily.  *E.g.*, *Microvention*, 2023 WL 7476998, at *28.  Here, Procore not only did not discipline its employees or voluntarily remedy the situation (Ex. 5 at 144:2–145:3 (Mariano)), but rather facilitated concealment while business proceeded. *E.g.*, Ex. 3 ███████████████████████████████████ ███████").  Mr. Mariano's deletions are Procore's deletions, and Procore is responsible for them.

### 3. The ESI that Procore destroyed cannot be replaced.

"Rule 37(e) sanctions are available only where the ESI is 'lost' and 'cannot be restored or

replaced through additional discovery.'" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 506 (C.D. Cal. 2022) (quoting Rule 37(e)). "Evidence that is duplicative of other evidence in the record is not irreplaceable." *Id.* To satisfy the element, the "showing that ESI actually was lost, or likely lost, must be made through 'competent evidence, which could take the form of expert testimony or other evidence.'" *Id.* (citation omitted). Here, expert testimony and other evidence confirms that the Oracle MacBook, iPhone, and Google Drive contained highly relevant evidence that is now gone and unrecoverable. For each device, there can be "no real dispute that the ESI cannot be recovered," since "the data was destroyed and no longer exists" and there is no "point to reopening discovery into data which no longer exists." *Deerpoint Grp., Inc. v. Agrigenix, LLC*, No. 1:18-CV-00536AWI-BAM, 2022 WL 16551632, at *12 (E.D. Cal. Oct. 31, 2022).

*First*, for the Oracle MacBook, the factory reset permanently deleted almost all data stored. Ex. 17 ¶ 28.[6] While other sources show that Mr. Mariano had and used Oracle's trade secrets on that MacBook (*id.* ¶¶ 25, 71), no other source can replace evidence lost in the factory reset. There are forever lost records routinely relied on by forensic examiners to analyze "evidence related to the opening, copying, uploading, or transfer of" files. *Id.* ¶ 35. The unrecoverable evidence would help establish the full scope of misappropriation, including: (A) individual file metadata and Spotlight metadata, which can evidence when files were added, opened, accessed and from where; (B) alternative document opening artifacts from applications to further support evidence about file use; (C) FSevents logs on the creation, renaming, and deletions of files as well as evidence about USB insertions; (D) Apple's Unified Logs, which evidence history of synchronizations with iCloud and USB access; (E) browser records of items like search history, website visits, and file downloads; and (F) automatic snapshot backups that can retain what had been deleted. *Id.* ¶¶ 37-41. For these records, there can be "no real dispute that the ESI cannot be recovered," since "the data was destroyed and no longer exists." *Deerpoint*, 2022 WL 16551632, at *12.

---

[6] As Oracle's forensic expert explains, "[o]ne such exception where the operating system can retain specific information is, for example, related to wireless networks. The system may retain wireless network names and passwords in order to easily allow the post-reset device to connect to the internet . . . ." Ex. 17 ¶ 34 n.46.

*Second*, for Mr. Mariano's iPhone, the factory reset destroyed information before the reset date used in forensic analysis, including usage history, iCloud synchronization, text messages and other data stored on the phone, such as files and recordings. Ex. 17 ¶ 41. This precludes forensic analysis of the iPhone's use for known (and further) misappropriation, including evidence of how the photo of an Oracle trade secret taken on Mr. Mariano's iPhone and sent to one Procore employee ended up in a Procore Slack message sent to another Procore employee. Ex. 32; Ex. 34. Analyzing the forensic data would help determine how and when the Oracle trade secret spread and who was involved. Furthermore, the existing evidence shows the iPhone would have contained additional relevant text messages, such as with Mr. Moton. *Supra* § III.C(2). Mr. Mariano used his iPhone to ███████████ ███████████████████████████████████████████████ (Ex. 37; Ex. 3) and he was willing to delete messages relevant to the case even after receiving a litigation hold. Ex. 5 at 534:16-535:15. Mr. Moton's texts were also destroyed in 2024 (at best) under unusual circumstances. Ex. 39 at 61:2-62:20 (Moton). While the full scope of missing data is necessarily unknown, such a showing is not required by Rule 37(e), as "[i]t is impossible to know now what ESI was available, but which is now no longer available." *Deerpoint,* 2022 WL 16551632, at *12.

*Third*, Mr. Mariano's deletion of at least seven Oracle trade secret files from his Google Drive resulted in unrecoverable loss of relevant metadata. Ex. 17 ¶¶ 50-51. The destroyed data could have helped establish the full scope of Procore's misappropriation, including modifications, downloads, and when each trade secret file was "last viewed." *Id.* With "no available alternative method to restore or replace the deleted ESI" (*Lopez*, 2024 WL 4561320 at *7), this requirement is readily met.

**B.     The Court should grant Oracle's requested relief under Rule 37(e).**

Procore's spoliation warrants the following relief under Rule 37(e): (1) a mandatory (or, at a minimum, a permissive) adverse inference instruction to the jury at trial; (2) precluding Procore from presenting evidence and argument at trial that could be contradicted by the spoliated records; and (3) awarding Oracle its reasonable attorneys' fees and costs associated with bringing this Motion.

**1.     An adverse inference instruction is warranted under Rule 37(e)(2).**

Where there is spoliation under Rule 37(e), the Court may issue an adverse inference jury

instruction if the culpable party "acted with the intent to deprive another party of the information's use in the litigation." Rule 37(e)(2). Intent may be shown "when the evidence shows or it is reasonable to infer, that . . . a party purposefully destroyed evidence to avoid its litigation obligations." *Skyline Advanced Tech. Servs. v. Shafer*, No. 18-CV-06641-CRB (RMI), 2020 WL 13093877, at *11-12 (N.D. Cal. July 14, 2020), *R&R adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020). Intent is "most naturally understood as involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-05944-JST, 2024 WL 4823938, at *11 (N.D. Cal. Nov. 15, 2024) (quoting *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024)). "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Jones*, 95 F.4th at 735. Common considerations include "the timing of destruction, affirmative steps taken to delete evidence, and selective preservation." *Id.* Courts consider "the totality of the circumstances" and find a "pattern of destroying discoverable material" suggests "spoliation was intentional." *WeRide*, 2020 WL 1967209, at *12; *Brewer v. Leprino Foods Co.*, No. CV-1:16-1091-SMM, 2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019). Here, Procore's destruction of evidence on the ***three*** devices show its intent to prevent Oracle from discovering the full extent of Procore's misappropriation, warranting an adverse inference instruction.

*First*, Procore's "pattern of conduct suggests intentional spoliation." *Brewer*, 2019 WL 356657, at *10. Mr. Mariano first factory reset his Oracle-issued MacBook, then factory reset his iPhone, and then, even after the July 2023 preservation letter, deleted text messages and data from his Google Drive in the summer of 2024. This repeated conduct shows intent. And along the way, Procore repeatedly acknowledged use and transmission of Oracle trade secrets was wrong, and they took steps to conceal its activities. For example, when using Oracle trade secrets to create derivative materials, Procore made sure to "███████████████████████." Ex. 21. As another example, a Procore employee also took photos of Oracle trade secrets and ████████████████ expressly avoiding using their corporate email and slack accounts. Ex. 24 ("█████████████████████████████████ ███████████████████████████████████"); Ex. 5 at 287:9-23 (Mariano)

(admitting he "███████████████████████████" the information.). Thus, considering this pattern and the "the totality of the circumstances," the evidence shows "spoliation was intentional." *WeRide*, 2020 WL 1967209, at *12; see also *SVF II Aggregator (DE) LLC v. Shafi,* No. 23-CV-03834-YGR, 2025 WL 2490447, at *16 (N.D. Cal. Feb. 27, 2025) (it was "unusual" for multiple devices to wiped within two months and finding "efforts at spoliation support an inference of scienter").

*Second*, Procore's apparent strategy of having its employees "██" regarding Oracle's claims further evidences a Procore ethos supporting the inference that it intentionally spoliated evidence to conceal it from Oracle. Indeed, a Procore employee acknowledged that Procore's lawyers instructed her "████████████████████████." Ex. 3. And when Oracle suspected that Mr. Mariano improperly retained the Oracle MacBook, Mr. Mariano told Oracle that he was "█████████" he returned it, (Ex. 27), which he admitted was an untrue ruse to probe Oracle's record keeping. Ex. 5 at 240:6-8 ██████████████████████████████████████████; Ex. 28 (Mr. Mariano admitting "██████████"); Ex. 29 ("██████████████████████████████████████ "); Ex. 30 ("█████████████████████████████").

*Finally*, Procore's attempts to explain away the deletions are not credible, particularly where Procore understood that the evidence would be central to the dispute with Oracle. *Welter v. Hurt*, No. 2:23-CV-02627-SPG (MARX), 2025 WL 1843263, at *8 (C.D. Cal. Apr. 1, 2025), *R&R adopted*, 2025 WL 1843205 (C.D. Cal. May 28, 2025) (collecting cases) ("The fact that Defendant was on notice of the Google Workspace's relevance and centrality to this lawsuit, yet took no action to preserve the Workspace's contents, weighs toward a finding of intent."). For the Oracle MacBook, Procore claims that Mr. Mariano performed a factory reset so that ██████████████████████, but Mr. Mariano admitted the Oracle machine was never used for such purposes. Ex. 5 at 244:3-245:20 (Mariano) ██████████████████████. Nor is there any credible reason why Mr. Mariano would need to factory reset the laptop to use it for such purposes. Indeed, factory resetting a MacBook is a seldom used, deliberate process for permanent deletion of all machine activity (as opposed to merely freeing up some memory). Ex. 17 ¶¶ 33-34. And Mr. Mariano lied about using the laptop to access Oracle files at Procore even though █████████████████████████████████. Ex.

17 ¶¶ 44–48. Likewise, for the iPhone, Procore contends that Mr. Mariano innocently and justifiably wiped it when upgrading his cell phone at a Verizon store. Ex. 5 at 564:2-5. But even if true, that does not excuse that the phone was not backed up first or that all phone data—including his messages—was not transferred to his new phone. And even after Mr. Mariano got his new phone, he continued to delete incriminating messages with other Procore employees about this litigation, after receiving a litigation hold notice. *Supra* § III.C(2). As to the Google Drive, Procore has provided no justification, and the fact that the data was spoliated after Oracle expressly warned Procore not to delete evidence is essentially dispositive on Procore's intent. *See Welter*, 2025 WL 1843263, at *8 (explaining "the timing of the spoliation also suggests that Defendant acted intentionally" where defendant "failed to take any steps to preserve the Google Workspace months after this litigation began, and before fact discovery commenced"). It is clear under the governing preponderance of evidence standard that Procore's spoliation was intentional to conceal evidence from discovery.

In view of Procore's intentional spoliation, under Rule 37(e)(2), "the court may issue an adverse inference instruction to the jury, or even enter a default judgment." *Skyline*, 2020 WL 13093877, at *12. The requested mandatory adverse inference instruction is necessary because "lesser sanctions are insufficient to address the loss of the ESI." *Cathode Ray Tube*, 2024 WL 4823938, at *11 (quoting *Jones*, 95 F.4th at 735). While conduct like Procore's has merited entry of default judgement for plaintiffs in other cases (*see WeRide*, 2020 WL 1967209, at *16 (granting default judgment against defendants that wiped laptops and deleted files from multiple devices to conceal wrongdoing, despite plaintiffs' preservation demands)), the lesser relief of a mandatory adverse inference jury instruction can address the loss of the ESI in this case. Indeed, mandatory adverse inference instructions are often awarded in similar circumstances in trade secrets litigation. *See, e.g.*, *Microvention*, 2023 WL 7476998, at *29-30; *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-CV-04238-MMC-RMI, 2021 WL 11108111, at *7 (N.D. Cal. June 1, 2021); *Deerpoint*, 2022 WL 16551632, at *24. Lesser relief is insufficient, because Oracle has been completely deprived of evidence from three separate devices that would help show the full scope of Procore's misappropriation, including further accesses to, and dissemination of, Oracle's trade secrets, and Procore's use of those trade secrets to

build its competing business. Indeed, "a rebuttable jury instruction in favor of one party nevertheless leaves that party helpless—due to the very absence of the spoliated evidence—to rebut any material that the spoliating party might use to overcome the presumption." *Lee v. Cnty. of Los Angeles*, No. 2:23-CV-06875-GW-MAA, 2025 WL 2505484, at *21 (C.D. Cal. Aug. 29, 2025).

If the Court does not issue a mandatory instruction due to a lack of "intent," then alternatively, under Rule 37(e)(1), this Court should grant an instruction that permits an adverse inference upon the jury's own determination that the "intent" requirement is satisfied. *See Dish Network*, 2022 WL 11270394, at *4 (taking this approach); *Phan v. Costco Wholesale Corp.*, No. 19-CV-05713-YGR, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020) (same); *Lopez*, 2024 WL 4561320, at *9 (same). But to be clear, the Court can, and should, award a mandatory adverse inference instruction based on Procore's clearly intentional spoliation, satisfying Rule 37(e)(2).

### 2. The Court should order preclusion under Rule 37(e)(1).

Additionally, the Court should also preclude Procore under Rule 37(e)(1) from presenting evidence or argument (1) that Oracle has presented insufficient forensic evidence to establish trade secret misappropriation with respect to the spoliated evidence, or (2) that Procore did not use information on the spoliated devices to develop its competing platform and business. Under Rule 37(e)(1), the Court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." For purposes of the Rule, "prejudice exists where the spoliation impairs the other party's 'ability to go to trial' or threatens 'to interfere with the rightful decision of the case.'" *Vaxart*, 2025 WL 1865848, at *6. "If spoliation requires a party to go to trial and rely on 'incomplete and spotty' evidence, this has been held to constitute a sufficient showing of prejudice." *Skyline*, 2020 WL 13093877, at *10.

Here, Oracle has been prejudiced by Procore's repeated spoliation and the requested preclusion is no greater than necessary to cure the prejudice. To begin, each of the three spoliated devices contained evidence of Procore's misappropriation based on even the incomplete record. Ex. 17 ¶¶ 28, 41, 50. Procore's evidence destruction prevents Oracle from "discovering and understanding the full scope of [defendant's] trade secret misappropriation . . . and has impeded [plaintiffs'] ability to obtain

evidence relevant to the claims and defenses at issue in this case." *Philips Elecs. N. Am. Corp. v. BC Tech.*, 773 F. Supp. 2d 1149, 1199 (D. Utah 2011); *see also Nucor Corp. v. Bell*, 251 F.R.D. 191, 197 (D.S.C. 2008) ("[t]he presence of confidential . . . information on the laptop would tend to make it more probable that defendants misappropriated . . . trade secrets."); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *4 (N.D. Cal. May 23, 2016) ("The key problem here, as with spoliation in general, is that neither party can say with any certainty what the deleted communications would have shown."). Moreover, where, as here, the deleted evidence concerns key witnesses, the corresponding prejudice is exacerbated. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) ("the fact that the emails of key Samsung witnesses were among those destroyed permits the reasonable inference that Apple was prejudiced by Samsung's spoliation."); *Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071-SI (SVK), 2022 WL 2289067, at *11 (N.D. Cal. Mar. 28, 2022), *R&R adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) (finding prejudice where "[Defendants] claim they have mountains of exculpatory evidence, yet for all Plaintiffs or the Court may ever know, those 'mountains' may be dwarfed by the mountains of damning evidence Defendants deleted."). The spoliated evidence involves Mr. Mariano and Procore employees like Vice President Lewis, all at the center of Oracle's claims.

The requested preclusion is necessary and "no greater than necessary to cure the prejudice." Rule 37(e)(1); *Microvention*, 2023 WL 7476521, at *12 (issuing order "precluding Balt from arguing at trial that the lack of evidence from the laptops is proof that (a) Tran and Katayama took no documents from MVI, or (b) any documents Tran and Katayama took from MVI were not used by Balt"). This is particularly important here, where Procore has contended there is insufficient evidence of misappropriation based on insufficient forensic records, which is the very evidence that Procore spoliated, multiple times. Indeed, Procore submitted expert reports premised on the contention that "the forensic record contains no evidence" of misappropriation. *See, e.g.*, Ex. 40 (A. Hotstettler Report) ¶ 384. Where an ex-employee "took many [of the plaintiffs] documents with her when she left," on "personal" devices and storage, and the defendant's "main defense to the misappropriation claims is that, despite this, [the employee] never used the documents for a competitive purpose in ways

that caused damages," the loss of ESI causes prejudice as "forensics" on the devices "might have 'show[n] additional instances of misappropriation.'" *Microvention* at \*11-12; *Lopez*, 2024 WL 4561320, at \*9 ("To alleviate the prejudice from Apple's spoliation of the Siri data, Apple should be precluded from affirmatively arguing or otherwise using Plaintiffs' failure to make certain showings that they could have made [with] the deleted Siri data."). Procore should not benefit from its evidence destruction by arguing that Oracle is unable to present the forensic records that Procore itself deleted.

> **3.    Oracle should be awarded its costs and fees associated with the spoliation.**

Finally, Procore should be ordered to pay Oracle's costs and fees associated with the spoliation. "[C]ourts may award costs and fees associated with spoliation as a sanction under Rule 37(e)(1)." *Dish Network*, 2022 WL 11270394, at \*2 (quoting *Colonies Partners*, 2020 WL 1496444, at \*12-13). Here, Procore's spoliation multiplied discovery, forcing Oracle to engage in written discovery, depositions, and extensive expert analyses to expose, understand, and confirm the scope of spoliation, the spoliation's impact on Oracle's case, and to engage in additional discovery and expert analysis to solidify Oracle's claims despite the destroyed evidence.  Courts award attorneys' fees and costs for these purposes, including (1) fees for bringing the Motion, and fact discovery (including depositions) and expert analysis associated with the spoliation, and (2) costs incurred in completing the same. *Matthew Enter., Inc.*, No. 13-CV-04236-BLF, 2016 WL 2957133, at \*5 (N.D. Cal. May 23, 2016) (awarding "reasonable attorney's fees it incurred in bringing this motion."); *Skyline Adv. Tech. Servs. v. Shafer*, No. 18CV06641CRBRMI, 2020 WL 7025081, at \*3 (N.D. Cal. Nov. 30, 2020) (awarding "expert costs" "depositions" and "preparation and filing of the spoliation motion itself, the reply brief, and oral argument"); *Microvention*, 2023 WL 7476998, at \*29 (awarding attorney's and expert fees). Oracle will submit an itemization of its corresponding fees and costs based on reasonable time spent, prevailing attorney hourly rates for major firms as reflected in industry reporting, and the standard rates of Oracle's retained experts to the extent this relief is granted.  *See Skyline* at \*2-5.  Respectfully, the Court should order Procore to pay Oracle's requested fees and costs.

## VI.    CONCLUSION

Based on the foregoing, Oracle respectfully requests that the Court grant the requested relief.

DATED: May 15, 2026

Respectfully submitted,

/s/ Christopher M. Lawless
Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone:  (415) 439-1400

Michael W. De Vries (SBN 211001)
Ingrid Petersen (SBN 313927)
Kevin X. Wang (SBN 318024)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, California 92626
michael.devries@kirkland.com
ingrid.petersen@kirkland.com
kevin.wang@kirkland.com
Telephone:  (714) 982-8822

Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone:  (212) 446-4800

Christopher M. Lawless (SBN 268952)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
christopher.lawless@kirkland.com
Telephone: (310) 552-4200

*Attorneys for Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation*