Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, California 92626
michael.devries@kirkland.com
Telephone: (714) 982-8822

Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

*Attorneys for Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation*

*[Additional counsel listed on signature page]*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ORACLE AMERICA, INC., ORACLE INTERNATIONAL CORPORATION, and TEXTURA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>PROCORE TECHNOLOGIES, INC., and PROCORE PAYMENT SERVICES, INC.<br><br>Defendants. | C.A. No. 4:24-cv-7457-JST<br><br>**PLAINTIFFS' OPPOSITION TO PROCORE'S MOTION TO EXCLUDE OPINIONS OF ANDREW CRAIN**<br><br>Date: August 20, 2026<br>Time: 2:00 pm<br>Location: Courtroom 6<br>Judge: Honorable Jon S. Tigar<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**PUBLIC REDACTED VERSION** |

# TABLE OF CONTENTS

Page

**I. INTRODUCTION .......... 1**

**II. FACTUAL BACKGROUND .......... 2**

**III. LEGAL STANDARD .......... 3**

**IV. ARGUMENT .......... 3**

A. Mr. Crain's File Counts Are Entirely Reliable, and Any Dispute Over His Reference to Stub Files at Best Goes to Weight, Not Admissibility .......... 3

B. Mr. Crain's Opinions Related to Mr. Mariano's Evidence Deletion and Pattern of Transferring and Using Oracle's Trade Secrets Are Not Intent Opinions .......... 6

1. Mr. Crain Does Not Opine on Mr. Mariano's Intent .......... 7

2. Any Dispute Regarding Alternative Explanations For The Forensic Evidence Are Classic Questions for the Fact Finder, Not a Basis to Exclude .......... 10

C. Mr. Crain Properly Concluded that The Forensic Evidence Shows That Procore Obtained and Used Oracle Trade Secrets .......... 13

**V. CONCLUSION .......... 15**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-CV-08787, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) ....................14

*Brennan v. Johnson & Johnson*,
No. 5:20-CV-01954-FWS-KK, 2022 WL 17219513 (C.D. Cal. Nov. 18, 2022)....................10

*Canty et al. v. DePuy Orthopaedics Inc.*,
No. 14-cv-5407, 2024 WL 2852213 (N.D. Cal. June 5, 2024)....................3

*Claar v. Burlington N. R. Co.*,
29 F.3d 499 (9th Cir. 1994) ....................12, 13

*Domingo ex rel. Domingo v. T.K.*,
289 F.3d 600 (9th Cir. 2002) ....................5, 6

*Elosu v. Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ....................3

*Engilis v. Monsanto Co.*,
151 F.4th 1040 (9th Cir. 2025) ....................12

*Est. of Elkins v. Pelayo*,
No. 1:13-CV-1483, 2022 WL 1123117 (E.D. Cal. Apr. 14, 2022) ....................9, 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018)....................14

*JH Kelly, LLC v. AECOM Technical Services, Inc.*,
605 F. Supp. 3d 1295 (N.D. Cal. 2022) ....................15

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ....................6, 10, 12

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
No. 19-MD-02913-WHO, 2022 WL 1814440 (N.D. Cal. June 2, 2022) ....................12

*Klein v. Meta Platforms, Inc.*,
766 F. Supp. 3d 956 (N.D. Cal. 2025) ....................5

*In re Korean Ramen*,
281 F. Supp. 3d at 931 ....................11, 12, 13, 14

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)....................5

*Mattel, Inc. v. MGA Ent., Inc.*,
No. CV049049, 2011 WL 13128409 (C.D. Cal. Jan. 26, 2011)....................10

*Min Prods. Pte. Ltd. v. FireForge, Inc.*,
No. CV 14-941 DSF, 2016 WL 11746288 (C.D. Cal. June 27, 2016)....................15

*Mitchell v. Geo Grp. Inc.*,
No. CV-19-04445-PHX-DWL, 2022 WL 874287 (D. Ariz. Mar. 24, 2022)....................9

*Newkirk v. ConAgra Foods, Inc.*
727 F. Supp. 2d 1006 (E.D. Wash. 2010)....................6

*Northrup v. Covidien, LP*,
No. EDCV2000355DDPSPX, 2021 WL 5507217 (C.D. Cal. Nov. 24, 2021)....................12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
No. 16-CV-01393-JST, 2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)....................9

*PACT XPP Techs., AG v. Xilinx, Inc.*,
No. 2:07-CV-563, 2012 WL 1432618 (E.D. Tex. Apr. 25, 2012)....................6

*Palmer v. Sanderson*,
9 F.3d 1433 (9th Cir. 1993)....................15

*Range Rd. Music Inc. v. E. Coast Foods, Inc.*,
No. CV092059CAS, 2010 WL 11527426 (C.D. Cal. Mar. 18, 2010)....................15

*Shtein v. Dignity Health*,
No. CV 20-9800-MWF, 2022 WL 22870180 (C.D. Cal. June 13, 2022)....................15

*United States v. Chang*,
No. 16-CR-00047-EJD-1, 2020 WL 5702131 (N.D. Cal. Sept. 24, 2020)....................5

*In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Products Liab. Litig.*,
424 F. Supp. 3d 781 (N.D. Cal. 2020)....................6

## I. INTRODUCTION

Like its other motions seeking to exclude opinions of every one of Oracle's four experts, Procore's request to exclude Mr. Crain's opinions asks the Court to exclude well supported and reliable expert opinions based on competing positions that are for the jury to decide (not a basis for exclusion), and relies on mischaracterizations of the evidence and Mr. Crain's opinions. ***First***, Procore incorrectly contends that Mr. Crain's counts of Asserted Trade Secret files that "existed on" Mr. Mariano's devices are purportedly "misleading" because they include iCloud "stub" files—that is, visual representations of files that exist in the cloud. There is nothing at all misleading about Mr. Crain's entirely accurate forensic analysis about these issues: he clearly explained that his counts include both substantive and stub files, and he expressly and repeatedly distinguished stub files from substantive files—in the text of his expert report, in Exhibit C to his report listing every single file, and again at his deposition. And neither Procore nor its forensic expert dispute that these stub files appear on Mr. Mariano's devices. Any alleged dispute over how this category of files should be counted or characterized goes squarely to weight and not admissibility, and Procore's preferred characterization certainly provides no basis for exclusion.

***Second***, Procore argues that Mr. Crain's forensic opinions regarding Mr. Mariano's factory reset of the Oracle MacBook he used at Procore to access Oracle trade secrets, and Mr. Mariano's forensically demonstrated pattern of transferring and using Oracle's trade secrets on electronic devices, improperly opine about Mr. Mariano's "intent." Not so. Mr. Crain offers no opinions about ***why*** Mr. Mariano acted or about his intent (as Procore's expert conceded); he simply analyzes and opines about the forensic evidence concerning Mr. Mariano's factory reset—a specific, multi-step operation that cannot occur accidentally—and documented, repeated course of conduct across the electronic devices and accounts that Mr. Mariano used while working at Procore. *See* Ex. 1, Vaughn Tr. 46:14-23. Both are entirely proper subjects of forensic expert testimony, and Procore's attempts to characterize them as "intent opinions" are inaccurate.

***Third***, Procore contends that Mr. Crain impermissibly ascribed Mr. Mariano's conduct to Procore as a legal matter. Again, not so. Mr. Crain properly provided forensic analysis, opining about the forensically ascertainable fact that Oracle's Asserted Trade Secret files arrived on Procore-issued

devices and were electronically disseminated by Mr. Mariano and other Procore employees to additional Procore employees. No authority or logic prohibits a forensic expert from relying on such evidence, nor is it improper for experts to describe an individual's role in the company—*e.g.*, Mr. Mariano's senior position as a Procore Director—when explaining the forensic activity undertaken by them. As Mr. Crain explains, the forensic evidence concerning Mr. Mariano's activities and the activities of additional Procore employees confirms that Procore obtained and used Oracle's information. Procore is free to test that conclusion through cross examination and its own expert, but again, any disagreement provides no basis for exclusion.

## II. FACTUAL BACKGROUND

Mr. Crain has 25 years of experience performing forensic imaging and analysis of computer hard drives and other electronic storage media, advising clients regarding e-discovery and forensics issues, and providing expert testimony. Ex. A, 4/8/2026 A. Crain Rep. (Dkt. 341-3, "Crain Rep."), ¶ 3. He holds private investigatory licensing and certifications for numerous forensics training courses. *Id.* ¶ 4. Previously, Mr. Crain served as the Vice President of Forensics at several forensics and electronic discovery consulting firms, Forensics Litigation Director at Bridge City Legal, and Computer Forensics Lab Director at a security consulting, investigative, and intelligence firm. *Id.* Mr. Crain has also served as a court-appointed neutral computer forensics examiner and spoken at seminars and lectures regarding computer forensics and the use of electronic evidence in legal proceedings and investigations. *Id.* ¶ 5. Mr. Crain is an active participant in the Sedona Conference Trade Secrets Working Group, which provides best practices for employees who switch jobs. *Id.* ¶ 6.

Over the course of his career, Mr. Crain has led and conducted hundreds of computer forensics investigations (often involving numerous computers, devices, and massive amounts of data in a single case). Crain Rep. ¶ 5. A significant portion of his work involves trade secrets cases, including matters alleging misappropriation involving departing employees. *Id.* ¶ 6. Mr. Crain has served as a consulting or testifying expert in hundreds of such disputes. *Id.* As such, Mr. Crain is intimately familiar with the myriad ways that departing employees exfiltrate data, the methods companies use to detect that activity, and the protections that companies commonly implement to mitigate this risk. *Id.*

As Mr. Crain explained in his report, his forensic analysis revealed that "Procore (via its

employees, and including via employee Mark Mariano) obtained and used Oracle's Asserted Trade Secret files in several ways in the United States." Specifically, Mr. Crain explains that "Mr. Mariano downloaded, copied, and retained Oracle's Asserted Trade Secret files from Oracle," and that he "downloaded, copied, opened, used, edited, and disseminated the files while working at Procore [], including to other Procore employees." *See, e.g.*, *id.* ¶¶ 14-16. In his report, Mr. Crain provided a detailed analysis of Mr. Mariano's file activities, based on evidence Mr. Crain uncovered from his own forensic analysis and his analysis of forensic data provided by the forensic neutral. *Id.*

## III. LEGAL STANDARD

"If the proposed testimony meets the thresholds of relevance and reliability," the jury should "decide upon its credibility, rather than the judge." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (cleaned up). Under the "flexible" inquiry into admissibility of expert opinion, "[t]he judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Canty et al. v. DePuy Orthopaedics Inc.*, No. 14-cv-5407, 2024 WL 2852213, at *2 (N.D. Cal. June 5, 2024). "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026.

## IV. ARGUMENT

### A. Mr. Crain's File Counts Are Entirely Reliable, and Any Dispute Over His Reference to Stub Files at Best Goes to Weight, Not Admissibility

Procore incorrectly argues that Mr. Crain's report "has the potential for misleading the finder of fact" because it "inflates" the number of trade secret files that existed on Mariano's devices by including so-called "stub" files. Mot. at 6. There is nothing at all misleading about Mr. Crain's opinions concerning stub files. Mr. Crain's report makes abundantly clear which specific files he found, specifically indicating which files were stub files versus other types of files. Crain Rep. ¶ 62; Ex. C. Mr. Crain further explained what stub files are, how they differ from other files, and explained the implication of his findings as to stub files:

> The majority of the iCloud related files on the Procore MacBook A2251 are placeholder files, or '***stubs***'; these ***are small files automatically created by iCloud during synchronization and stored on the local computer***, indicating that Mr. Mariano indeed retained access to these Asserted Trade Secret files

> through the Procore MacBook A2251 computer. ***These stubs provide a visual representation of the files that exists in the cloud, such that the user can "browse" their iCloud files and folders just as if they were stored locally.*** By default, stubs mirror several metadata values from iCloud, ***but do not contain the file's content until the file is opened, previewed, copied, expressly chosen for download, etc***. In such an event, the computer will retrieve the file's contents from iCloud and the local 'stub' is replaced by the substantive file (lacking the prepended "." and the ".icloud" extension).

*Id*. Accordingly, as Mr. Crain explained, the existence of stub files on Mr. Mariano's devices is significant because it indicates that Mr. Mariano "***retained access*** to these Asserted Trade Secret files through" his Procore devices. *Id.* ¶¶ 62, 87. In other words, if a stub file was created on Mr. Mariano's device, it means that the trade secret file with contents was on his iCloud, that a visual representation of the file was provided on the device, and Mr. Mariano accessed his iCloud from that device. *Id.*

Mr. Crain in no way hid or minimized the fact that certain files that he found were stubs. *See, e.g.*, *id.* ¶ 62 ("[M]ost of the files on the Mariano Mac Mini are also stubs . . . ."); ¶ 87 ("[M]any of the Asserted Trade Secret files exist on the Mariano iPhone in the form of iCloud stubs . . . ."); ¶ 95 ("The majority of the files on the Procore MacBook A2251 are 'stubs' . . . ."); ¶ 113 (similar); *see also* Ex. 2, 5/22/2026 A. Crain Dep. Tr. ("Crain Tr.") at 65:2-6 ("I tried to be very, very precise in my report source by source saying which of the asserted trade secrets were actually fully downloaded and which were stubs. And my Exhibit C does that as well."). Procore acknowledges this in its motion. Mot. at 6 (noting that Mr. Crain "differentiates between 'stub' and 'downloaded' Asserted Trade Secret files"). Procore even acknowledges that Mr. Crain's Exhibit C identifies where trade secret files were found and specifically denotes ***stub files*** with an ***"X"*** mark and ***downloaded files*** with an ***"XX."*** Mot., n.6. ("Mr. Crain describes stub files as 'Present On Device as Placeholder File,' marking them with an 'X,' as opposed to the actual files, which are 'Present On Device' and marked with 'XX.'"). Procore's own forensic expert likewise acknowledged that Mr. Crain did not hide the ball with respect to stub files. Ex. 1, Vaughn Tr. 313:21-314:1 [redacted] Thus, far from conflating stub and substantive files, Mr. Crain's analysis is precise and reliable, such that there is no possibility of confusion as to which file is a stub. That Procore prefers a different characterization of these clearly described facts does not

support exclusion. *See United States v. Chang,* No. 16-CR-00047-EJD-1, 2020 WL 5702131, at *10–11 (N.D. Cal. Sept. 24, 2020) (rejecting claim that expert "combine[d] and conflate[d]" two entities).

Moreover, both parties' forensic experts agree that the stub files are "***saved locally***" on the devices at issue. Ex. 3, Vaughn Rep. ¶ 68 [redacted] There is also no dispute that when a user double clicks a stub file, it "opens just as if it was saved on disk." Ex. 2, Crain Tr. 62:15-18; *see id.* at 67:17-21 ("The content is not yet saved on the storage, but from the user's perspective, there's much less or no distinction that files are authenticated and they're fully available to the user."); Ex. 1, Vaughn Tr. 316:5-17 [redacted] Procore's criticism that Mr. Crain's counts include stub files is therefore at odds with the parties' shared view of the facts and, at best, is a matter for cross examination, certainly not a basis for exclusion. *See In re Lidoderm Antitrust Litig.*, No. 14-md-02521, 2017 WL 679367, at *28 (N.D. Cal. Feb. 21, 2017).

Procore's argument that a stub file establishes that Mr. Mariano "ha[d] not done anything with the file," Mot. at 6, is factually incorrect (and at odds with trade secret law's prohibition against improper acquisition), but in any case, could not reasonably support exclusion. Mr. Mariano had to authenticate into iCloud on his Procore or personal devices for the stub file to be locally present on those devices, the existence of the stub file would visually indicate the availability of the file's contents on his iCloud, and he had the corresponding files stored on his iCloud account at the time he logged into those devices. *See* Crain Rep. ¶ 62; Ex. 3, Vaughn Rep. ¶¶ 134, 135 (iCloud files and stubs available upon logging into iCloud). And even Procore's expert agrees that [redacted] and certain files were [redacted] Ex. 1, Vaughn Tr. 304:18-305:5.

Procore's authorities do not compel a different result. In *Klein v. Meta Platforms, Inc.*, the expert's opinion was excluded as *ipse dixit* because he relied on unrelated market research without explaining how that research supported his conclusion. 766 F. Supp. 3d 956, 965 (N.D. Cal. 2025). That is not at all the case here. Mr. Crain relied on reliable forensic data and explained his rationale. Further, in *Domingo*, the court excluded an opinion whose "conclusion simply did not follow from his

analysis." Here, by contrast, Mr. Crain's conclusion that stub files existed on the devices and reflect Mariano's retained access to the cloud-stored files follows directly from the forensic data he analyzed, identified and labeled. *See Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002). *Newkirk* and *In re Viagra* are likewise inapposite: each involved an expert who obscured or "conflate[d]" distinct concepts to downplay unfavorable data, whereas Mr. Crain expressly and repeatedly separated stub files from substantive files in his report, at his deposition, and in Exhibit C. *See Newkirk v. ConAgra Foods, Inc.* 727 F. Supp. 2d 1006, 1018 (E.D. Wash. 2010) (expert misrepresented scientific studies); *In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Products Liab. Litig.*, 424 F. Supp. 3d 781, 797 (N.D. Cal. 2020) (expert conflated consistency with strength of association). Mr. Crain's transparent, source-by-source disclosure is the opposite of the concealment those cases condemned. The Court should thus deny Procore's proposed exclusion.

### B. Mr. Crain's Opinions Related to Mr. Mariano's Evidence Deletion and Pattern of Transferring and Using Oracle's Trade Secrets Are Not Intent Opinions

Procore argues that "Mr. Crain steps beyond the forensic evidence to suggest a deletion 'decision' and 'pattern of transferring and using.'" Mot. at 7. Not so. Mr. Crain's opinion is grounded in forensic evidence, his expert experience, and reasonable inferences; it is not about intent. *See PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-CV-563, 2012 WL 1432618, at *2 (E.D. Tex. Apr. 25, 2012) (denying challenge where "it does not appear that [expert] intends to testify to . . . state of mind").

The Ninth Circuit has affirmed the admissibility of forensic opinions similar to Mr. Crain's. For example, in *Jones v. Riot Hosp. Grp. LLC*, a forensic expert opined that a party engaged in "an orchestrated effort to delete and/or hide evidence." 95 F.4th 730, 734 (9th Cir. 2024). The Ninth Circuit found that the expert "had extensive technical experience in computer forensics, including independent research in the type of [] spoliation analysis he conducted in this case." *Id.* at 737. It also found that although there was "no industry standard" for analyzing the deletions, there was "no plausible reason to doubt the reliability of [the expert's] opinions." *Id.*. So too here. Procore's forensic evidence—and Mr. Mariano's own testimony—both leave no reason to doubt Mr. Crain's opinion that Mr. Mariano's reset of his computer was not merely an accident, and Mr. Crain's forensic analysis demonstrates that Mr. Mariano engaged in a pattern of transferring and using the asserted trade secret files. And contrary

to Procore's claim, as further explained below, (1) Mr. Crain did not opine on Mr. Mariano's intent or state of mind, and (2) disputes regarding alternative explanations of the forensic evidence are classic fodder for cross examination to be determined by the jury, not grounds for exclusion.

**1. Mr. Crain Does Not Opine on Mr. Mariano's Intent**

Procore first argues that the Court should exclude Mr. Crain's purported "intent" opinions regarding Mr. Mariano's (1) decision to factory reset his computer and (2) engagement in a pattern of transferring and using the asserted trade secret files. Mot. at 7. Unlike Procore's own experts, who expressly opine on Mr. Mariano's intent and what Procore knew,[1] Mr. Crain does not. Mr. Crain does not opine on *why* Mr. Mariano factory reset his computer and destroy its data or *why* he engaged in a pattern of using Oracle's trade secret files. Instead, he draws reasonable inferences from his forensic analysis and forensic evidence he reviewed, using his 25 years of forensic experience, to explain his conclusions that (1) Mr. Mariano's factory reset was not inadvertent or accidental, and (2) Mariano engaged in a pattern of use and dissemination of the trade secrets. Crain Rep. ¶¶ 3, 16, 29-33.

***First***, no basis exists to exclude Mr. Crain's conclusion that the forensic evidence shows that Mr. Mariano's factory reset was deliberate and not inadvertent or accidental. Mr. Crain based this opinion on his forensic analysis of the Oracle MacBook and the forensic evidence provided by the forensic neutral, as further corroborated Mr. Mariano's testimony. Crain Rep. ¶¶ 29-33. Specifically, Mr. Crain explained that the forensic evidence showed that Mr. Mariano kept and used his Oracle MacBook while he was working at Procore, after he left Oracle. *See, e.g.*, Crain Rep. at 8-9, 17, 23-24. This opinion was based, in part, on the forensic evidence of a text message and photo that Mr. Mariano sent on March 22, 2022. *Id.* at 23-24 ("Mr. Mariano texted Mr. Lewis . . . on March 22, 2022" and "[t]he native copy of the live photo sent to Mr. Lewis shows what appears to be ***a photograph of a computer screen*** that is ***displaying a document*** within the Chrome web browser. . . . The browser appears to be displaying a document attachment while navigated to an email with subject line 'rate

[1] Oracle agrees that no expert should opine on intent but notes that Procore's experts explicitly do so. *See, e.g.*, Ex. 3, Vaughn Rep ¶ 185 ("[I]t appears ***unlikely that Mr. Mariano <u>intended</u> anything nefarious*** by his resetting of his Oracle MacBook."), ¶ 199 ("I am informed that ***Procore did not know***, nor did they instruct Mr. Mariano to delete any files from his personal Google account . . . ."); Ex. 4, Hostettler Rebuttal Rep. ¶ 1738 ("***Procore did not know***, and had no reason to know, of any alleged impropriety by Mr. Mariano in connection with any Oracle materials.").

card' within Mr. Mariano's personal email. The photo shows that the operating system on the computer being viewed appears to be using macOS, which is the operating system that was ***on the Oracle MacBook Pro***.").[2] Mr. Crain also explained that Mr. Mariano performed a factory reset of his Oracle MacBook in August 2022, based on the forensic evidence as corroborated by Mariano's own testimony. Crain Rep. ¶¶ 29-33 (citing "Data partition" metadata on Oracle MacBook Pro, "the computer's Unified Logs," and Apple's support page); Ex. 5, 3/23/2026 Mariano Tr. 49:9-14 [redacted] 302:12-14 [redacted]

Mr. Crain further explained that in his opinion of the forensic evidence, the factory reset could not have been triggered by accident. Crain Rep. ¶¶ 32, 33. Instead, as he explained, a factory reset of the type shown by the forensic evidence requires affirmative steps taken by the user:

> [A] factory reset is a measure that completely and irreversibly erases all data stored on the machine—including documents, application data, user settings, browser history, system logs, and any other records of activity conducted on the machine. The macOS does not prompt users to perform this action ***without the user's initiation***. . . . . ***A factory reset [] requires a user to take multiple concrete steps*** as described above, ***and this process does not occur accidentally*** or as a byproduct of routine computer use.

Crain Rep. ¶ 33; *see* Ex. 2, Crain Tr. 245:24-246:2 ("[F]actory resetting a computer is ***not something that you would do as part of housekeeping***, you're making a deliberate decision to destroy everything on that computer."). In addition to the forensic evidence and testimony, Mr. Crain also cited Apple documentation, which sets forth "***eight steps to reset*** a Mac computer" with "prompts that may occur only in certain circumstances," and confirms that users must "***re-authenticat[e]*** to the computer and ***acknowledg[e] a pop-up*** that includes ***red text and a yellow caution symbol***, with the message '***Erase All Content & Settings***.'" Crain Rep. ¶ 32.

Critically, ***neither Procore nor Mr. Mariano disputes*** that Mr. Mariano deliberately factory reset his Oracle MacBook or that he took a series of affirmative steps to reset his Oracle MacBook

---

[2] Procore appears to concede that Mr. Mariano continued to use the Oracle MacBook after he started at Procore and before he reset that computer. *See* Ex. 6 (12/22/2025 Procore's Sixth Supplemental Response to Oracle's First Set of ROGs) at 39 (Procore admitting that "Mark Mariano sent a text message from his personal cell phone of a picture of Mr. Mariano's personal Google Drive (sic) ***on an Oracle device*** to the personal cell phone of Geoff Lewis[,]" a Procore employee).

after he left Oracle. *See, e.g.*, Ex. 3, Vaughn Rep. ¶ 40 [redacted] Ex. 5, 3/23/2026 Mariano Tr. 243:10-12 [redacted].[3] And neither Procore nor Mr. Mariano claims that Mr. Mariano reset this Oracle MacBook by mere accident.

***Second***, no basis exists to exclude Mr. Crain's opinion that his analysis of the forensic evidence shows that Mr. Mariano engaged in a "pattern" of transferring and using Oracle's trade secrets. Crain Rep. ¶ 16. This pattern is clearly borne out by the forensic evidence of Mr. Mariano's activities, as Mr. Crain laid out in his expert report showing that Mr. Mariano:

- Edited Oracle's Construction Accounting 101 Trade Secret File and used "this file at Procore continued consistently through at least March 2023";
- "[B]ooted and used both Oracle computers that were still in his possession";
- Downloaded multiple Oracle files from Google Drive and LinkedIn;
- "[A]ppears to have used the Oracle MacBook Pro he retained after employment to upload folders containing 53 Asserted Trade Secret files to his personal iCloud account,"
- "[F]actory reset his Oracle MacBook Pro";
- "[F]actory reset and traded in his iPhone";
- Deleted "at least seven [] Asserted Trade Secret files" from his google Drive;
- "[S]ynchronized his personal iCloud account to several other devices" and downloaded trade secret files; and
- "[A]ccessed his personal Google Drive, which also contained Asserted Trade Secrets from his time at Oracle, to download Asserted Trade Secret file(s) to both of his Procore work computers."

*Id.* These types of objective facts are "considerations on which persons in the field generally rely," and are thus appropriate for expert testimony. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018). Moreover, Mr. Crain determined that the forensic evidence showed a "pattern" by using "the common definition of that word in that it's a behavior that is repeated over and over." Ex. 2, Crain Tr. 58:20-22. Procore argues

[3] Procore's reliance on *Elkins* and *Mitchell* is misplaced. *Est. of Elkins v. Pelayo,* No. 1:13-CV-1483, 2022 WL 1123117, at *18 (E.D. Cal. Apr. 14, 2022); *Mitchell v. Geo Grp. Inc.*, No. CV-19-04445-PHX-DWL, 2022 WL 874287, at *5 (D. Ariz. Mar. 24, 2022). Unlike the cases, Mr. Crain never affirmatively disavowed his expert report. In fact, Mr. Mariano himself testified that he intended to factory reset the laptop and he followed through.

that Mr. Crain testified that he was "not aware of any forensic standard" for when activity becomes a pattern. Mot. at 8. But a forensic expert does not have to use a "forensic standard" for an opinion to be admissible, and Procore cites no reason to doubt the reliability of Mr. Crain's opinions regarding Mr. Mariano's pattern of behavior as shown by the forensic evidence. *See Jones*, 95 F.4th at 737 (refusing exclusion where challenge provides no plausible reason to doubt the reliability).

Procore's assertion that an expert may be "held to his deposition testimony" (Mot. at 7) is irrelevant. Mr. Crain consistently testified that he offers no opinion on Mr. Mariano's "psychology or intent" (unlike Procore's experts, *see supra* at n.2)—so there is no intent opinion to exclude, and the authorities precluding experts from advancing opinions they disavowed are therefore inapplicable. *See Est. of Elkins v. Pelayo*, 2022 WL 1123117, at *18. And unlike the expert in *Mattel*, Mr. Crain does not "comment on a party's *mens rea*"; he describes objective, forensically documented conduct and leaves any question of intent to the jury (and Procore's experts, if they present their full opinions at trial). *See Mattel, Inc. v. MGA Ent., Inc.*, No. CV049049, 2011 WL 13128409, at *4 (C.D. Cal. Jan. 26, 2011). Further, unlike the plaintiff in *Brennan v. Johnson & Johnson*, No. 5:20-CV-01954-FWS-KK, 2022 WL 17219513, at *17 (C.D. Cal. Nov. 18, 2022), Oracle is not relying on any expert opinions on intent to create a genuine issue of material fact.

#### 2. Any Dispute Regarding Alternative Explanations For The Forensic Evidence Are Classic Questions for the Fact Finder, Not a Basis to Exclude

Procore incorrectly argues that Mr. Crain's opinions should be excluded because they allegedly fail to consider alternative explanations. Mot. at 9. First, contrary to Procore's assertion, Mr. Crain expressly analyzed and opined on alternatives. For example, he found that Mr. Mariano's factory reset of his computer is not consistent with "any routine housekeeping or troubleshooting" based on objective forensic evidence. Crain Rep. ¶ 33. He explained that "this factory reset ***cannot be explained*** by any standard software update, system optimization, or disk management routine in the macOS environment. For instance, a user who simply wished to have more disk space, could accomplish that goal ***through far less destructive means***, such as clearing cached data, or utilizing built-in storage management tools accessible in the macOS." *Id.* Procore also claims that Mr. Mariano testified that he "wanted [a] computer to start fresh," but that very testimony is contradicted by other testimony Mr.

Mariano provided. *See* Ex. 5, 3/23/2026 Mariano Tr. 245:7-20 [redacted] To the extent Procore disagrees with these explanations, it is free to cross examine Mr. Crain to test his analysis of the likelihood of these alternative explanations, but they provide no reasonable grounds for exclusion.

Procore also improperly asks the Court to adopt its alternative explanations as a matter of law, arguing that the timing of the reset undermines Mr. Crain's opinion because the reset occurred nearly a year after Mr. Mariano left Oracle and four months before Oracle's follow-up. Mot. at 9. Nothing about that timing affects Mr. Crain's opinion that this reset was done deliberately. Moreover, although Mr. Crain does not opine on intent, Procore's apparent attempt to use the timing of the reset to suggest that Mariano's deletion was innocent should be rejected. Procore omits the fact that Mr. Mariano told Oracle as late as December 15, 2022 that [redacted] and that he testified that he knew that statement was inaccurate when he made it. Ex. 11 (ORC-PRC-02432421); Ex. 12 (ORC-PRC-02432424); Crain Rep. at 17, n.35; Ex. 7, 3/24/2026 Mariano Tr. 556:18-22 [redacted] Ex. 5, 3/23/2026 Mariano Tr. 240:6-8 [redacted] Mr. Mariano's lie to Oracle when they requested the laptops in December casts serious doubt on the veracity of Mr. Mariano's prior justification for the reset, as does the screenshot showing Mr. Mariano using the reset device to access Oracle trade secrets for purposes of his work at Procore just a few months before the reset, and is part of the evidence the jury should consider. *See* Ex. 8, MARIANO 022459 (screenshot); Ex. 9, MARIANO 021999 (live photo Oracle's rate card); Ex. 10, MARIANO 021998 (still image of the same).

Procore's complaint that Mr. Crain did not perform virtual-machine analysis (like its expert, Mr. Vaughn) or otherwise "test" Mr. Vaughn's auto-sync theory (Mot. at 10) fares no better. An expert need not affirmatively test and disprove every competing hypothesis to offer a reliable opinion grounded in the forensic record. *See In re Korean Ramen*, 281 F. Supp. 3d at 931. Mr. Crain based his opinions on the objective forensic artifacts he analyzed and his decades of experience, and that analysis was more than reliable and sufficient for him to render the opinions he did. *See, e.g.*, Crain Rep. ¶¶

16, 33. Further, Mr. Crain's acknowledgment that he could not "conclusively prove" Mariano's intent in downloading the files (Mot. at 10) is not a failing of Mr. Crain's opinion, but rather a confirmation that he did ***not*** opine on intent and instead (unlike Procore's experts) limited his opinions to reasonable inferences drawn from the forensic analysis that he performed. Procore also ignores Mr. Crain's criticism of Mr. Vaughn's testing theory—namely, that Mr. Vaughn did not test the correct operating system—and Mr. Crain's explanation that he did not need to perform the same analysis because he had "tested [zipping] numerous times previously over the course of [his] career." *See* Ex. 2, Crain Tr. 329:6-12, 322:14-323:3. At bottom, whether automatic iCloud syncing offers a competing explanation is precisely the purpose of cross-examination, not a basis for exclusion. *See Jones*, 95 F.4th at 737.

Second, experts are not required to address all the alternative hypotheticals that a defendant can think up. *In re Korean Ramen*, 281 F. Supp. 3d at 931 ("That [the expert] did not address (or review) deposition testimony . . . that purportedly undermine some of his opinions or assumptions does not make his testimony excludable."); *In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 19-MD-02913-WHO, 2022 WL 1814440, at *4, *21 (N.D. Cal. June 2, 2022) (plaintiff "may cross-examine [expert] on . . . alternate or contributory causes."). Procore's criticisms should be raised during cross examination, and the fact finders can make up their own mind. *Id.*

Procore's case law is similarly inapposite. Procore cites three cases involving experts opining on medical diagnoses without considering other possible causes. Two of those cases involved a "differential diagnosis" where "[f]ailure to consider even a rare potentially explanatory hypothesis may be indicative of unreliability." *See Northrup v. Covidien, LP*, No. EDCV2000355DDPSPX, 2021 WL 5507217, at *3 (C.D. Cal. Nov. 24, 2021); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1045 (9th Cir. 2025) (expert testimony unreliable for "fail[ure] to reliably rule out obesity as a potential cause of Peter Engilis's cancer."). In the other case, the court "required plaintiffs to submit affidavits describing their exposure to the chemicals they claim harmed them, and affidavits from physicians listing each plaintiff's specific injuries, the particular chemical(s) that in the physician's opinion caused each injury, and the scientific basis for the physician's conclusions." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 500 (9th Cir. 1994). That was because the physicians did not make "any effort to rule out other possible causes . . . even though they admitted that this step would be standard procedure

before arriving at a diagnosis." *Id.* at 502. The court eventually excluded the affidavits after giving plaintiff two opportunities to explain the basis for their opinion. *Id.* This is not a medical case requiring experts to rule out other potential causes for a diagnosis, and in any event, Mr. Crain did consider alternate explanations, as explained above. Procore's criticisms to the extent it wishes to make them at trial are properly addressed on cross examination. *See In re Korean Ramen*, 281 F. Supp. 3d at 931.

### C. Mr. Crain Properly Concluded that The Forensic Evidence Shows That Procore Obtained and Used Oracle Trade Secrets

Procore's next argument—that Mr. Crain improperly renders legal opinions regarding Procore's actions as opposed to Mariano's—is without merit. Mr. Crain makes clear that he is only providing an expert opinion on forensic issues, not legal issues. *See* Ex. 2, Crain Tr. 26:13-19 ("Q. I just want to know your basis for saying that Mr. Mariano's actions are attributable to Procore. Is it forensic or is it a legal conclusion? A. ***Anything I'm opining on is forensics, not legal***."). Here, Mr. Crain properly uses the forensic evidence and his 25 years of forensic analysis experience to provide his opinion as to the forensic issues, and he is entitled to consider the relevant facts to provide context around the forensic evidence. Among the facts Mr. Crain noted as part of his forensic analysis include the uncontroversial fact that one of the individuals whose electronic devices and accounts were forensically analyzed (Mr. Mariano) was a Procore Director show transferred Oracle's documents to his Procore computer and disseminated Oracle's documents to his Procore coworkers. *See id.* 24:12-17 (his opinions are "based on Mr. Mariano being a director-level employee at Procore, Oracle's asserted trade secrets arriving ***on to Procore-issued devices*** and also ***being disseminated*** to other Procore employees."); *see also* Crain Rep. ¶¶ 23-53 (analyzing documents deleted by Mr. Mariano and other Procore employees); ¶ 91 (Mr. Mariano sent a photo of a trade secret shown on the Oracle MacBook that was reset to Nolan Frazier (Procore Head of Sales)).

Additional evidence of dissemination of Oracle's trade secrets at Procore also supports Mr. Crain's opinions. Ex. 2, Crain Tr. 27:23-28:2 ("[o]nce those asserted trade secrets make it on to the new company's devices, ***get used on those devices*** and ***get disseminated to other employees***, that's what supports my opinion."); Crain Rep. at 49 n.160. Mr. Crain concludes that the forensic evidence shows that a Procore Vice President (Geoff Lewis) received Oracle pricing information on the

MacBook and photographed with the iPhone from Mariano multiple times, transmitting it further at Procore where contemporaneous communications between Mariano and Lewis acknowledge that data was Oracle confidential. Crain Rep. ¶¶ 44-48, 105, 122. This is consistent with forensic evidence of additional trade secret usage by Procore's ***Product Enablement Specialist***, Ms. Rast. *Id.* ¶ 55 ("Megan Rast admitted that [redacted]

Thus, consistent with the forensic evidence of access, download, and dissemination he analyzed—including by Procore's VP and Director—Mr. Crain properly noted that Procore obtained and used Oracle's information. *See In re Korean Ramen*, 281 F. Supp. 3d at 931 (denying exclusion of opinions based on "numerous documents produced"); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 606 (N.D. Cal. 2018) (denying exclusion of opinions "tethered to the facts of their case and their theory of liability"); *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787, 2024 WL 5483606, at *3 (N.D. Cal. Oct. 22, 2024) (similar). To the extent Procore disagrees with Mr. Crain, that is a criticism it can raise on cross, but it provides no basis for exclusion.

Procore's contention that Mr. Crain disavowed his opinion regarding Procore's conduct in his report is incorrect and relies on an improper characterization of Mr. Crain's actual opinions. Mot. at 11. Procore points to a typographic error in Mr. Crain's Table of Contents to argue that there are alleged "***portions***" of his report that Mr. Crain had never seen. *Id.* That is simply inaccurate. In fact, what Mr. Crain stated in his deposition was that this was the first time he ***noticed*** that his ***table of contents header*** did not match the header in the body of his report. Ex. 2, Crain Tr. 258:24-259:1 ("I'm just ***seeing*** that now for the first time, but ***something got messed up with the table of contents***."). Contrary to Procore's portrayal, Mr. Crain never questioned or withdrew the actual heading of the underlying section of his expert report. Rather, he confirmed that the header in the body of his report—"Mr. Mariano, While Employed as a Director at Procore, Permanently Destroyed Forensic Evidence" (Crain Rep. at 14)—is correct and should have been used in the Table of Contents. Ex. 2, Crain Tr. 259:7-10 ("I would use Heading 6, Mr. Mariano . . . while employed as a director at Procore."). Procore cites no case law demonstrating that a typographical error in the Table of Contents constitutes reason for exclusion where the underlying header is correct, and Procore's attempt to frame this obvious typographical error as allegedly unseen "***portions*** of his report" is highly misleading and inaccurate,

and should be rejected. *Compare* Crain Rep. at 2 (Table of Contents) *with id.* at 14 (actual section header); *see JH Kelly, LLC*, 605 F. Supp. 3d at 1314 (refusing to exclude opinion for inadvertent error).

Procore also contends that Mr. Crain "acknowledged" that any attribution to Procore (including misappropriation) "is unsupported and outside the bounds of a forensic expert's report." Mot. at 11. Not so. Rather, Mr. Crain made clear that he did not ascribe Mr. Mariano's deletions to Procore as a matter of law based on the forensic evidence, *see* Ex. 2, Crain Tr. 259:2-10, 26:13-19, but it is up to the fact finder to decide whether Mariano's deletions should be imputed to Procore under the law.

Lastly, Procore argues that Mr. Crain's report should be stricken because it opines on "legal questions" like "vicarious liability" or "*respondeat superior*." Mot. at 11. Mr. Crain did no such thing: as he clearly explained, he was only providing testimony on the forensic evidence, not on legal questions, which are for the fact finder to determine with guidance from the Court's instructions on the law. *See* Ex. 2, Crain Tr. 26:13-19, 29:2-8. Procore's cases are inapposite. *See Palmer v. Sanderson*, 9 F.3d 1433, 1437 (9th Cir. 1993) (stating the standard for *respondeat superior* for summary judgement, not excluding expert opinion); *Range Rd. Music Inc. v. E. Coast Foods, Inc.*, No. CV092059CAS, 2010 WL 11527426, at *4 (C.D. Cal. Mar. 18, 2010) (the court, not an expert, determined who was responsible for the infringing conduct on summary judgment); *Shtein v. Dignity Health*, No. CV 20-9800-MWF, 2022 WL 22870180, at *4 (C.D. Cal. June 13, 2022) (excluding expert opinion interpreting a statute for expert had no such expertise); *Min Prods. Pte. Ltd. v. FireForge, Inc.*, No. CV 14-941 DSF, 2016 WL 11746288, at *3 (C.D. Cal. June 27, 2016) (striking engineer's opinion on lost profits). Here, by contrast, Mr. Crain confines his opinions to the facts and records in this case and within his forensic area of expertise—rather than reaching any ultimate legal opinion. No reasons exist to exclude his opinions. On the other hand, and in direct contravention of Procore's position on this issue here, Procore's expert Mr. Vaughn ***expressly opined on whether Mr. Mariano's actions should be*** [redacted] *See* Ex. 3, Vaughn Rep., § VIII.A, ¶ 199.

## V. CONCLUSION

For the foregoing reasons, Oracle respectfully requests that the Court deny Procore's motion to exclude portions of Mr. Crain's opinion in its entirety.

DATED: July 9, 2026

Respectfully submitted,

/s/ Akshay S. Deoras

Adam R. Alper (SBN 196834)
Akshay S. Deoras (SBN 301962)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
adam.alper@kirkland.com
akshay.deoras@kirkland.com
Telephone: (415) 439-1400

Michael W. De Vries (SBN 211001)
Yimeng Dou (SBN 285248)
Ingrid Petersen (SBN 313927)
Kevin X. Wang (SBN 318024)
KIRKLAND & ELLIS LLP
695 Town Center Drive, Suite 1700
Costa Mesa, California 92626
michael.devries@kirkland.com
yimeng.dou@kirkland.com
ingrid.petersen@kirkland.com
kevin.wang@kirkland.com
Telephone: (714) 982-8822

Leslie M. Schmidt (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
leslie.schmidt@kirkland.com
Telephone: (212) 446-4800

Christopher M. Lawless (SBN 268952)
Kendra Delaney (SBN 339102)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
christopher.lawless@kirkland.com
kendra.delaney@kirkland.com
Telephone: (310) 552-4200

*Attorneys for Plaintiffs Oracle America, Inc., Oracle International Corporation, and Textura Corporation*